**GIRARD SHARP LLP**
Adam E. Polk (State Bar No. 273000)
apolk@girardsharp.com
Simon S. Grille (State Bar No. 294914)
sgrille@girardsharp.com
Nina R. Gliozzo (State Bar No. 333569)
ngliozzo@girardsharp.com
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYRONE HAZEL, ROXANE EVANS, VALERIE TORRES, and RHONDA HYMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>PRUDENTIAL FINANCIAL, INC. and ACTIVEPROSPECT, INC.<br><br>Defendants. | Case No. 3:22-cv-07465-CRB<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

**NATURE OF THE ACTION**

1.     Prudential Financial Inc. ("Prudential") offers consumers a quote for life insurance in minutes if they fill out a form online at Prudential.com. To obtain the quote, consumers must enter private information about themselves and their health history.

2.     ActiveProspect Inc. ("ActiveProspect") sells software that records consumer interactions with a website in real time. Website owners can use this software by adding ActiveProspect's javascript[1] into the source code of their webpage. Doing so permits both ActiveProspect and the website owner to record a visitor's keystrokes and other actions on the website.

3.     Prudential embedded ActiveProspect's software in the computer code on its website to optimize its lead generation efforts. Prudential benefits financially from collecting information provided by potential customers, or "leads," who indicate an interest in purchasing life insurance or other financial products. Adding ActiveProspect's software allowed both companies to surreptitiously observe and record visitors' keystrokes, mouse clicks, and other electronic communications, including their entry of Personally Identifiable Information ("PII") and Protected Health Information ("PHI").

4.     When users seeking a life insurance quote enter private information on Prudential.com, Prudential shares those communications with ActiveProspect in real time, without notifying users and without first obtaining their consent. The communications Prudential shares with ActiveProspect include users' geolocation and answers regarding their private, personal and medical information, such as age, height, weight, information regarding medical conditions, prescribed medications, and hospitalization history. ActiveProspect's software purports to increase the value of Prudential's leads by harvesting extra information about each person and independently documenting the information the person provided.

5.     By intercepting website users' communications, Prudential and ActiveProspect violate the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631, and invade Plaintiffs' and class members' privacy rights in violation of the California Constitution.

---

[1] JavaScript is a programming language commonly used in website development to add features and functions to a website.

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:22-cv-07465-CRB

6.      Plaintiffs Roxane Evans, Valerie Torres, Rhonda Hyman, and Tyrone Hazel each used the Prudential website to search for an insurance quote, entering private information into the online form at Prudential.com. During each visit, Defendants Prudential and ActiveProspect recorded Plaintiffs' electronic communications in real time, and used the intercepted data to learn their identity, zip code, date of birth, height, weight, medical and psychiatric conditions and treatment history, use of prescription medications and tobacco products, or other PII and PHI without their consent.

7.      Plaintiffs bring this action on behalf of themselves and a class of all other Californians whose electronic communications were intercepted through Prudential's use of ActiveProspect software on its website.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and at least one member of the proposed class is citizen of state different from at least one Defendant.

9.      This Court has personal jurisdiction over Defendants because each of the Defendants purposefully availed itself of the laws and benefits of doing business in California, and Plaintiffs' claims arise out of each of the Defendants' forum-related activities. A substantial portion of the events giving rise to Plaintiffs' claims occurred in this District.

10.      Pursuant to 28 U.S.C. § 1391, this Court is a proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District.

## DIVISIONAL ASSIGNMENT

11.      Assignment to the San Francisco or Oakland Division is appropriate under Local Rule 3-2(c) and (d) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Alameda County.

## PARTIES

12.      Plaintiff Tyrone Hazel is a citizen of the State of California and resides in Oakland, California.

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:22-cv-07465-CRB

13.     Plaintiff Roxane Evans is a citizen of the State of California and resides in Oroville, California.

14.     Plaintiff Valerie Torres is a citizen of the State of California and resides in Los Angeles, California.

15.     Plaintiff Rhonda Hyman is a citizen of the State of California and resides in Los Angeles, California.

16.     Defendant Prudential Financial Inc. is a New Jersey company with its principal place of business at 751 Broad Street, Newark, NJ 07102.

17.     Prudential is a global financial services provider and active global investment manager. Among other services, Prudential "matches buyers with products such as life and health insurance and auto insurance, enabling them to make purchases online or through an agent."[2]

18.     Prudential does business throughout California and the entire United States.

19.     Prudential owns and operates Prudential.com.

20.     Defendant ActiveProspect Inc. is a Nevada corporation with its principal place of business at 4009 Marathon Boulevard, Austin, TX 78756.

21.     ActiveProspect is a software-as-a-service ("SaaS") company. In connection with its services to website operators, ActiveProspect provides a software product called "TrustedForm," which monitors and records a website user's activity on a webpage. TrustedForm purports to increase the value of leads generated on third party websites by capturing the information each lead provides and recording other information about them such as their IP address and geolocation.

## FACTUAL ALLEGATIONS

### I.     ActiveProspect Offers "TrustedForm" Lead Generation Software

22.     Defendant ActiveProspect provides a variety of "real time" products for companies that generate online leads for products or services or that engage in telemarketing.

23.     As a patent obtained by ActiveProspect explains, "'Lead generation' generally refers to the creation or generation of prospective consumer interest or inquiry into products or services of a

---

[2] https://www.prudential.com/about.

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:22-cv-07465-CRB

business. . . . In a typical lead generation scenario, a consumer completes an online request form on a website."[3] In such a scenario, the owner of the website with the form is the lead seller, and a separate party who purchases the consumer's data is the lead buyer.

24.     One of ActiveProspect's products is called "TrustedForm," which it touts as a "lead certification product" that purports to help businesses authenticate user interactions with a website, including, for example, by recording a user's responses to questions. TrustedForm provides a "means for a lead buyer to verify when and where an Internet lead was collected by a lead seller."[4]

25.     On its website, ActiveProspect states that one of the "key features and benefits" of TrustedForm is the "VideoReplay" feature, which records, in real time, a website visitor's keystrokes, mouse clicks and other interactions with a website. The video provides a "moment-by-moment replay of exactly what happened on the page in the order it happened. . . . **Whatever the user does on the page is captured, including changes and corrections to the information entered in the form**."[5]

26.     ActiveProspect also advertises other data that TrustedForm can acquire, including the "time on page," "lead age," and geographic location of user[6]:

## Benefits of TrustedForm Insights

Savvy marketers then use that data to make purchase decisions, determine pricing strategies, and set routing rules.

**TrustedForm Insights data includes:**

**Originating Domain** Identify the best lead sources for your business by tracking leads back to the site that generated them, regardless of where you bought them.

 **Lead Age** Timing is critical for all real-time leads. Lead Age ensures the leads you're purchasing are actively shopping for your product or service so you can determine purchasing and pricing strategies.

**Time on Page** Understand intent – a longer time on page can indicate higher intent to purchase and a higher-value lead.

 **Browser, Device and Operating System** Hone in on the characteristics of your target prospect using attributes to help ensure you pay the right price for the right leads.

**Geolocation & IP Address** Only purchase the leads that are generated in your geographic footprint (and are most likely to become customers).

Hi, Need

---

[3] System and Method for Electronic Lead Verification, U.S. Patent No. 20120290491 A1 ("ActiveProspect Patent").

[4] *Supra* n.3, ActiveProspect Patent.

[5] https://community.activeprospect.com/questions/4180654 (emphasis added).

[6] https://activeprospect.com/trustedform/insights/.

27.    ActiveProspect instructs prospective partners to add the "javascript to their form and start capturing lead certificates."[7] As soon as the TrustedForm Script is added to a webpage, ActiveProspect will automatically start to capture the data submitted in the form.[8]

28.    The code allows ActiveProspect to record the keystrokes, mouse clicks, data entry, and other electronic communications of visitors to websites where the code is installed. It also allows ActiveProspect to track the "website of origin" (the website from which a user navigated to the website using TrustedForm, i.e., part of the visitor's internet browsing history), amount of time spent on the website, geographic location of the visitor, and other information. ActiveProspect, in turn, provides this data to its clients.

29.    The recording of keystrokes, mouse clicks, data entry, and other electronic communications begins the moment a user accesses or interacts with a webpage using TrustedForm.[9]

30.    According to ActiveProspect's patent, this user data collection occurs in real time: "[T]he verification server collects information about the visitor and the lead generator during the communication session during which the lead generator receives contact information and other relevant information (i.e. lead data) submitted by the visitor."[10]

31.    The patent further states that ActiveProspect's software transmits the information captured to ActiveProspect's server: "At this point, [ActiveProspect's] server is 'aware' of the URL of the form and begins to monitor the web page for any changes . . . From there on, the verification server monitors the web page . . . [F]or each change detected, snapshots of the web page are captured including at least one of the HTML, image files, and a high-resolution, full-length image of the web page."

32.    In a 2017 study by Princeton University researchers concerning similar technology, the researchers noted that "the extent of data collected by these services far exceeds user expectations; text

---

[7] https://activeprospect.com/blog/video-ease-of-implementing-trustedform/;
https://www.youtube.com/watch?v=Y5F4EjmG4CM.

[8] https://developers.activeprospect.com/docs/trustedform/implementing-trustedform-s-script/.

[9] https://community.activeprospect.com/posts/4078773-trustedform-s-session-replay.

[10] System and Method for Electronic Lead Verification, U.S. Patent No. 20120290491 A1.

typed into forms is collected before the user submits the form, and precise mouse movements are saved, all without any visual indication to the user."[11]

33.    All videos of customer data are hosted on Active Prospect's servers, as opposed to the servers or computers of ActiveProspect's clients. Accessing the video of a website visitor's interactions requires a unique URL link provided by ActiveProspect, which directs visitors to a web server on trustedform.com, where the video can be viewed. The link corresponds to a unique ID and a "certificate" that ActiveProspect generates and issues.

34.    ActiveProspect also acknowledges on its website that "TrustedForm independently collects and stores information about who filled out a form, when, and where."

35.    Several provisions in ActiveProspect's standard form End User License Agreement ("EULA") with its website-operator clients confirm that ActiveProspect records and receives data from website visitors:

- The EULA provides that "when a site visitor visits the [client's website], the TrustedForm Script contacts the Trusted Form Server, which then collects information about that site visit."

- The EULA requires website owners to agree that ActiveProspect "cannot and does not guarantee that Your Content and Data will not be accessed by unauthorized persons." The term "Content and Data" is defined to include "information pertaining to Leads [i.e., website visitors] that may contain individual, personally identifiable information."

- The EULA expressly gives ActiveProspect the right to use aggregate data collected from website visitors for any activity it deems to have a legitimate business purpose, including tracking and reporting on industry trends.

- The model language for privacy policies contained in the EULA states that TrustedForm "collects" information and "independently document[s] users' consent to be contacted."

---

[11] https://freedom-to-tinker.com/2017/11/15/no-boundaries-exfiltration-of-personal-data-by-session-replay-scripts/.

36.     ActiveProspect's business model involves entering into partnerships with various companies, to which it furnishes its software. One of ActiveProspect's partners is Prudential.

37.     ActiveProspect benefits financially when lead generators like Prudential purchase its services associated with TrustedForm. And lead generators like Prudential who use TrustedForm benefit financially from sharing users' data with ActiveProspect, including because "certifying" leads and harvesting extra data about the users increases the value of the leads, which lead generators sell to lead buyers. Thus, both ActiveProspect and Prudential benefit from Prudential's use of TrustedForm.

## II.     Prudential Uses ActiveProspect's TrustedForm Software

38.     Prudential provides life insurance, retirement, mutual fund, annuities, and investment management services. To obtain a quote on a Prudential life insurance plan, consumers fill out a form online at Prudential.com. Users are prompted to select the "get an instant quote" button, shown below, to "get a quote in minutes."



39.     After selecting the "get an instant quote" button, users are required to answer multiple questions, including questions about their medical health. Users must communicate to Prudential the following facts, among others:

        a.  Name, zip code, and date of birth;

        b.  Height and weight;

        c.  The use of prescription medications and tobacco products;

d.  Whether they have medical conditions, such as cancer, chronic pain, diabetes, heart or circulatory disorders, or respiratory disorders;

e.  Whether they have mental or psychological conditions, such as anxiety, depression, or bipolar syndrome;

f.  Treatment history for identified medical and psychological conditions and other PHI.

40.  Prudential uses TrustedForm on Prudential.com and has done so since approximately March 2022.

41.  TrustedForm's code is embedded into the source code of Prudential's website, as shown in the red box below:

```html
<html lang="en">
▶<head>..</head>
▼<body class="prudential" id="customer-body-id-for-css" onload>
  ▶<noscript>..</noscript>
  ▶<div id="header-of-plate" role="banner">..</div>
  ▶<div class="content-wrapper">..</div>
  ▶<div class="content-wrapper">..</div>
  ▶<div class="content-wrapper">..</div>
  ▶<main class="content-wrapper" id="content-wrapper" role="main">..</main>
  ▶<div id="footer-of-plate">..</div>
  ▶<div id="modal-wrapper">..</div>
  <script src="https://cdnjs.cloudflare.com/ajax/libs/loadCSS/2.1.0/cssrelpreload.min.js"></script>
  <script src="https://cdnjs.cloudflare.com/ajax/libs/loadCSS/2.1.0/onloadCSS.min.js"></script>
  <link as="style" href="https://fonts.googleapis.com/css?family=Open+Sans:300,400,600,700" onload="this.rel='stylesheet'" rel="stylesheet">
  <script src="//cdn.assurance.com/insurance/public/assets/customer-8293335....js" data-turbolinks-track="true"></script>
  <script>$(document).ready(function(){ initFingerprint(); initPlateHashes(true); });</script>
  ▶<script>..</script>
  <script>$(document).ready(function () { $(window).unbind('beforeunload'); });</script>
  <input id="leadid_token" name="universal_leadid" type="hidden" value data-testid="universal_leadid">
  <script id="LeadiDscript_campaign" type="text/javascript" async src="//create.lidstatic.com/campaign/cf934278-b099-eb50-bf86-105a165fcb4e.js?snippet_version=2"></script>
  <script src="//cdn.assurance.com/insurance/public/assets/leadid-e55ab46....js" id="LeadiDscript"></script>
  ▶<noscript>..</noscript>
  <form id="trustedFormFormElement"></form>
  <script src="//cdn.assurance.com/insurance/public/assets/trustedForm-4a12057....js"></script>
  <noscript><img src="http://api.trustedform.com/ns.gif" /></noscript>
  ▶<style type="text/css">..</style>
  <script src="https://www.datadoghq-browser-agent.com/datadog-rum.js"></script>
  ▶<script>..</script>
  ▶<div>..</div>
  ▶<div id="LeadiD-wrapper-element" class=" LeadiD-ignore-mutation" style="width: 1px; height: 1px; overflow: hidden; position: fixed; left: -1px; top: 0px;">..</div>
</body>
</html>
```

42.  An ordinary consumer would not know that their answers in the life insurance form are being recorded or shared with a third party.

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:22-cv-07465-CRB

43.     Without the consent of the user, Prudential enables ActiveProspect to monitor, intercept, and record a user's interactions with the site as it asks questions including the following:

    a.  "What is your gender?"

    b.  "Have you used Tobacco Products within the last 12 months?"

    c.  "Are you currently married?"

    d.  "Do you have children?"

    e.  "What is your date of birth?"

    f.  "Why are you looking for life insurance?"

    g.  "What is your height?"

    h.  "What is your weight?"

    i.  "Are you currently taking any prescription medications?"

    j.  "In the past 5 years have you been treated or prescribed medication for any of the following conditions: anxiety/depression/bipolar; cancer; chronic pain; diabetes; heart or circulatory disorder; respiratory disorder; other medical condition?"



    k.  "Have you been hospitalized or missed more than 1 week of work due to anxiety, depression, or bipolar disorder?"

    l.  "Are you currently employed?"

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:22-cv-07465-CRB

1          m.  "Is your heart or circulatory disorder ONLY high blood pressure?"



11         n.  "Do you have an amount of coverage in mind?"

12         o.  "What is your zip code?"

13         p.  "What is your email?"

14         q.  "Please enter your mobile number"

15     44.  After answering these questions, users can view a quote. From there, the user may

16 continue filling out the form to apply for life insurance, after being prompted to answer additional

17 questions under the heading "Eligibility."

18     45.  Only after the consumer has already answered multiple personal questions, including the

19 ones described above, *all of which have already been recorded in real time*, does Prudential ask

20 consumers to consent to its Terms, as shown below.

46.    Only if they click through to Prudential's privacy notice (the second of four fine-print links) would a consumer learn that Prudential "may share your personal information, including information about your transactions and experiences, among Prudential companies and with other non-Prudential companies who perform services for us or on our behalf, for our everyday business purposes."[12]

47.    Only if they click through to "Important Notice About Your Application" (the fourth fine-print link) would a consumer learn that Prudential "may disclose information we have collected as follows: to affiliates or third parties that perform services for us, or on our behalf."[13]

48.    By the time consumers are presented with the screen shown above in paragraph 45, the interception has already occurred—their personal information has already been captured without their

---

[12] https://assets.assurance.com/files/life/prudential/forms/privacy_notice/Privacy_Notice_2022.pdf.
[13]
https://assets.assurance.com/files/life/prudential/forms/Important_Notice_About_Your_Application/Other_States/NXU-IMPN+ED+05-2018+00+ZZ.pdf.

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:22-cv-07465-CRB

knowledge or consent. In other words, even if a user reaches the point in the process at which Prudential asks for consent, if the user does not agree, and leaves the website, their information has already been captured and intercepted in real time.

49. Prudential's consent disclosures do not adequately notify consumers that their responses to that point have been intercepted.

50. In early January 2023, less than two months after the filing of Plaintiffs' initial complaint, and well after they visited Prudential's website, Prudential altered its website to add a small and inconspicuous disclosure to the life insurance quote form purporting to obtain user consent to record their inputs.

51. The changes to Prudential's website acknowledge and demonstrate that before January 2023, the Defendants did intercept and record users' communications and personal information without their knowledge or prior consent.

52. Prudential knows that TrustedForm captures the keystrokes, mouse clicks and other communications of visitors to its website. Prudential pays ActiveProspect to supply that information.

53. Pursuant to an agreement with ActiveProspect, Prudential voluntarily embedded ActiveProspect's software code on Prudential.com.

54. As currently deployed, TrustedForm, as used by Prudential, operates as a wiretap.

55. Prudential and ActiveProspect, and each of them, intercepted, recorded and monetized valuable personal information without the consent of website users. Prudential recognizes the value and market for this information on its website: "We sell or share Personal Information for the purpose of advertising." Prudential sells "leads" containing the intercepted information, and ActiveProspect's TrustedForm product is designed to facilitate and increase the value of those sales.

56. An older study values users' web-browsing histories at $52 per year. The Organization for Economic Cooperation and Development likewise estimated the prices for various elements of personal data: $0.50 for an address, $2 for birthdate, $8 for a Social Security number, $3 for a driver's

1     license number, and $35 for a military record.[14] More recent estimates suggests higher values for

2     personal data: a personal email can be worth $89, a complete health care record $250, and a hacked

3     Facebook account can sell for $65 on the dark web.[15] Similarly, a 2019 report found that data generated

4     from an adult is worth roughly $35 per month.[16]

5     **III.    Defendants Wiretapped Plaintiffs' Electronic Communications**

6          57.    **Tyrone Hazel.** Between March 2022 and January 2023, Tyrone Hazel used the

7     Prudential Financial website to search for an insurance quote.

8          58.    Hazel was in either Oakland or Sacramento, California when he visited the website.

9          59.    During his visit to the Prudential Financial website, Prudential and ActiveProspect

10    recorded Hazel's electronic communications in real time, used the intercepted data to attempt to learn

11    the identity, zip code, date of birth, height, weight, use of prescription medications and tobacco

12    products, and other PII and PHI of Hazel's family members for whom he sought an insurance quote.

13         60.    Hazel was unaware at the time that his keystrokes, mouse clicks, and other electronic

14    communications, including the information described above, were being intercepted in real time and

15    would be disclosed to ActiveProspect. At no point did Hazel consent to share that private information

16    with ActiveProspect.

17         61.    **Roxane Evans.** Between March 2022 and January 2023, Roxane Evans used the

18    Prudential Financial website to search for an insurance quote.

19         62.    Evans was in Oroville, California when she visited the Prudential Financial website.

20         63.    During her visit, Prudential and ActiveProspect recorded Evans' electronic

21    communications in real time, used the intercepted data to attempt to learn her identity, zip code, date of

22    birth, height, weight, use of prescription medications and tobacco products, and other PII and PHI.

23

24

25    [14] Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary
      Value, OECD DIGITAL ECONOMY PAPERS, No. 220 (Apr. 2, 2013),
26    https://www.oecdilibrary.org/docserver/5k486qtxldmq-en.pdf.

27    [15] https://www.invisibly.com/learn-blog/how-much-is-data-worth/ (last accessed Jan. 30, 2023).

28    [16] https://www.vox.com/recode/2019/6/24/18715421/internet-free-data-ads-cost (last accessed Jan. 30,
      2023).

64.     Evans was unaware at the time that her keystrokes, mouse clicks, and other electronic communications, including the information described above, were being intercepted in real time and would be disclosed to ActiveProspect. At no point did Evans consent to share that private information with ActiveProspect.

65.     **Valerie Torres.** Between March 2022 and January 2023, Valerie Torres used the Prudential Financial website to search for an insurance quote.

66.     Torres was in Los Angeles, California when she visited the website.

67.     During her visit, Prudential and ActiveProspect recorded Torres's electronic communications in real time, used the intercepted data to attempt to learn her identity, zip code, date of birth, height, weight, use of prescription medications and tobacco products, and other PII and PHI.

68.     Torres was unaware at the time that her keystrokes, mouse clicks, and other electronic communications, including the information described above, were being intercepted in real time and would be disclosed to ActiveProspect. At no point did Torres consent to share that private information with ActiveProspect.

69.     **Rhonda Hyman.** Between March 2022 and January 2023, Rhonda Hyman used the Prudential Financial website to search for an insurance quote.

70.     Hyman was in Los Angeles, California when she visited the website.

71.     During her visit, Prudential and ActiveProspect recorded Hyman's electronic communications in real time, used the intercepted data to attempt to learn her identity, zip code, date of birth, height, weight, use of prescription medications and tobacco products, and other PII and PHI.

72.     Hyman was unaware at the time that her keystrokes, mouse clicks, and other electronic communications, including the information described above, were being intercepted in real time and would be disclosed to ActiveProspect. At no point did Hyman consent to share that private information with ActiveProspect.

73.     During each Plaintiff's visit, the TrustedForm VideoReplay feature recorded a video capturing Plaintiffs' keystrokes and mouse clicks on the website as Plaintiffs were entering them. TrustedForm also captured the date and time of each visit, the duration of the visit, Plaintiffs' IP address, their location at the time of the visit, browser type, and the operating system on their device.

74.    Users, including Plaintiffs, did not receive notice of Prudential's Privacy Policy when they clicked "Get an instant quote," which initiates the interception of their responses on the form.

75.    Users, including Plaintiffs, do not provide informed consent when, after providing some personal information that has already been intercepted, they are presented with a series of links to Prudential's Privacy Policy and other terms. Even if the consumer were to click through to the terms, the disclosures do not adequately inform consumers that their activity is being intercepted. Moreover, by the time consumers reach the point where they must click purportedly to assent to the terms, the interception has already occurred, and their personal information has already been captured without their knowledge or consent.

76.    Prudential did not inform visitors to its websites that their keystrokes, mouse clicks and other communications were being recorded and shared with ActiveProspect. The limited disclosures Prudential does provide are given *after* Active Prospect and Prudential have already intercepted and recorded users' keystrokes and PII.

77.    No Plaintiff or Class member consented to being wiretapped on a Prudential website or to the recording and sharing of their communications with ActiveProspect. Moreover, any purported consent was ineffective because (i) the wiretapping began from the moment Plaintiffs and Class members accessed the web page; and (ii) even the later-linked Privacy Policy did not disclose the wiretapping, ActiveProspect's interception and recording of their PII, or its sharing of this sensitive information.

78.    In addition, at no time before or during a user's browsing of its websites does Prudential disclose that it will be recording users' activities in real time. Prudential's Privacy Policy does not disclose that it records a user's activities in real time. Even if Prudential had disclosed its wiretapping in its Privacy Policy, Prudential still acted without Plaintiffs' consent because Prudential does not ask its users' consent until after it has already begun wiretapping them.

79.    When ActiveProspect and its website-owner clients wish to disclose ActiveProspect's technology, they do so explicitly. Model language, included in ActiveProspect's standard form EULA, states as follows:

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:22-cv-07465-CRB

We use ActiveProspect's TrustedForm Script to independently document users' consent to be contacted. The TrustedForm Script is embedded on our website and collects the following information when you interact with the page(s) where the script is present: page URL, mouse movements and clicks, contact information inputted by the user, a snapshot of the page, including IP address of the user's computer, time on the page, date and time that the TrustedForm Script was loaded, as well as the date and time of the various user interactions with the page, and HTTP headers from the user's browser.

80.     Plaintiffs and Class members were never shown this disclosure or any link to such a disclosure. Prudential's Privacy Policy contains no such provision.

## CLASS ACTION ALLEGATIONS

81.     Plaintiffs bring this lawsuit under Federal Rules of Civil Procedure 23(a) and (b)(3) as representatives of a Class of all California residents who visited Prudential.com and provided personal information on Prudential's form to receive a quote for life insurance.

82.     Excluded from the Class are Defendants, their employees, agents and assigns, and any members of the judiciary to whom this case is assigned, their respective court staff, the members of their immediate families, and Plaintiffs' counsel.

83.     The "Class Period" is from March 1, 2022 to January 2023.[17] Plaintiffs reserve the right to modify, change, or expand the class definition as appropriate based on further investigation and discovery obtained in the case.

84.     **Numerosity**: The Class consists of at least thousands of individuals, making joinder impractical.

---

[17] Plaintiffs currently propose that the class period end at the time Prudential changed its website to add a disclosure purporting to secure visitors' consent to use of TrustedForm. Plaintiffs nonetheless do not concede that users after that change provide informed consent before their communications are intercepted.

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:22-cv-07465-CRB

85.    **Commonality and predominance**: Common questions of law and fact exist with regard to each of the claims and predominate over questions affecting only individual Class members. Questions common to the Class include:

    a.    Whether Defendants violate the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631;

    b.    Whether Defendants invaded Plaintiffs' privacy rights in violation of the California Constitution;

    c.    Whether Defendants were unjustly enriched as a result of obtaining users' private and personal information; and

    d.    Whether Plaintiffs and Class members are entitled to actual and/or statutory damages for the aforementioned violations.

86.    **Typicality**: The claims of the Plaintiffs are typical of the claims of the Class because the Plaintiffs, like all other Class members, visited Prudential's website and input personal information, which was intercepted and disclosed to ActiveProspect through Prudential's use of TrustedForm.

87.    **Adequacy of representation**: Plaintiffs and their counsel will fairly and adequately protect and advance the interests of Class members. Plaintiffs' interests align with the interests of the Class members they seek to represent. Plaintiffs have retained competent counsel experienced in prosecuting class actions, including consumer privacy cases, and will prosecute this action vigorously.

88.    **Superiority**: The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members. The claims of each individual Class member are too small to make individual litigation realistic or feasible. The class action device also presents far fewer management difficulties and provides the benefits of unitary adjudication, economy of scale, and comprehensive supervision by a single court.

## <u>COUNT I</u>

### Violation of the California Invasion of Privacy Act ("CIPA")
### Cal. Penal Code § 631

89.    Plaintiffs repeat the factual allegations contained in the foregoing paragraphs as if fully set forth herein.

90. Plaintiffs bring this claim individually and on behalf of the members of the Class against Defendants.

91. To establish liability under section 631(a), a plaintiff need only show that the defendant, "by means of any machine, instrument, contrivance, or in any other manner," does any of the following:

> Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,
>
> *Or*
>
> Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,
>
> *Or*
>
> Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,
>
> *Or*
>
> Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

92. Section 631(a) is not limited to phone lines but also applies to newer technologies such as computers, the Internet, and email.

93. ActiveProspect's TrustedForm product is a "machine, instrument, contrivance, or . . . other manner" used to engage in the prohibited conduct at issue in this action.

94. ActiveProspect's TrustedForm product intercepts Class members' communications in transit while passing over the lines of internet communication by recording them in real time as the user enters information, even before the user clicks a button to submit the completed form to Prudential though its website.

95. **Prudential's CIPA Violations**: At all relevant times, by using ActiveProspect's TrustedForm technology, Prudential:

    a. substantially aided, agreed with, employed, and conspired with ActiveProspect to implement ActiveProspect's technology and to accomplish the wrongful conduct at issue here; and

    b. acted intentionally, as it purposefully contracted with ActiveProspect and programmed the relevant software into its website code.

96. **ActiveProspect's CIPA Violations**: At all relevant times, by providing TrustedForm's service to Prudential, ActiveProspect:

    a. intentionally tapped, electronically or otherwise, the lines of internet communication between Plaintiffs and Class members on the one hand, and Prudential's website on the other hand; and

    b. willfully and without the consent of all parties to the communication, read or attempted to read or learn the contents or meaning of electronic communications of Plaintiffs and Class members, while the electronic communications were in transit or passing over any wire, line or cable or were being sent from or received at any place within California.

97. Plaintiffs and Class members did not consent to any of Defendants' actions connected with ActiveProspect's wiretaps on Prudential's website. Nor did Plaintiffs or Class members consent to Defendants' intentional access, interception, reading, learning, recording, and collection of Plaintiffs' and Class members' electronic communications.

98. Defendants' violation of section 631(a) constitutes an invasion of privacy.

99. Plaintiffs and Class members seek all relief available under Cal. Penal Code § 637.2, including statutory damages of $5,000 per violation.

## COUNT II

**Violation of California Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code § 17200 *et seq*.**

100. Plaintiffs repeat the factual allegations contained in the foregoing paragraphs as if fully set forth herein.

101.    Plaintiffs bring this claim individually and on behalf of the members of the Class against Defendants.

102.    Defendants are each a "person" under Cal. Bus. & Prof. Code § 17201.

103.    The UCL proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

**Unlawful Conduct**

104.    Defendants' conduct is unlawful in violation of the UCL because it violates CIPA, Cal. Penal Code § 631, and Plaintiffs' and Class members' privacy rights under the California Constitution.

**Unfair Conduct**

105.    Defendants' conduct is unfair because it violates California's constitutionally and legislatively declared public policy in favor of protection of consumer privacy, a policy furthered by CIPA and the California Constitution. Moreover, Defendants acted in an unethical, unscrupulous, and substantially injurious manner by knowingly wiretapping Plaintiffs' and Class members' communications of their private personal information without their consent.

106.    The gravity of the harm resulting from Defendants' unfair conduct outweighs any potential utility of the conduct. The practice of wiretapping private communications, including confidential PII and PHI, harms the public at large and is part of a common and uniform course of wrongful conduct. There are reasonably available alternatives that would further Defendants' business interests. For example, Prudential could obtain a user's fully informed prior consent to share their data with a third party. Similarly, ActiveProspect could require informed user consent before recording consumer communications via TrustedForm.

107.    The harm from Defendants' unfair conduct was not reasonably avoidable by consumers. Plaintiffs and Class members had no reasonable means of discovering that Defendants were wiretapping Plaintiffs' and Class members' communications of their private information on Prudential.com.

108.    Plaintiffs and Class members have suffered an economic loss in the value of their personal and private information. The personal information that Defendants intercepted and exploited has concrete monetary value, as demonstrated by the fact that Prudential uses and sells this information

as "leads," and ActiveProspect's TrustedForm product is designed to facilitate and increase the value of those sales. Plaintiffs accordingly have suffered harm in the form of diminution of the value of their private and personally identifiable data and content, and Defendants have been unjustly enriched through their collection and monetization of that information.

109.    Plaintiffs and Class members therefore seek all monetary and non-monetary relief permitted by law, including civil penalties, as well as a reasonable attorney fee and costs of suit under Code of Civil Procedure section 1021.5.

## COUNT III

### Invasion of Privacy
### California Constitution, Art. 1, § 1

110.    Plaintiffs repeat the factual allegations contained in the foregoing paragraphs as if fully set forth herein.

111.    Plaintiffs bring this claim individually and on behalf of the members of the Class against Defendants.

112.    Plaintiffs and Class members have a strong interest in: (1) precluding the dissemination and/or misuse of their sensitive, confidential PII and PHI; and (2) making personal decisions and/or conducting personal activities without observation, intrusion or interference, including the right to visit and interact with various Internet sites without being subjected to wiretaps without Plaintiffs' and Class members' knowledge or consent.

113.    Defendants wrongfully intruded upon Plaintiffs' and Class members' seclusion in violation of California law. Plaintiffs and Class members reasonably expected that the private personal information, including sensitive, confidential PII and PHI, they entrusted to Prudential would be kept private and secure, and would not be disclosed to any unauthorized third party or for any unauthorized purpose.

114.    At all relevant times, by implementing ActiveProspect's wiretaps on Prudential's Website, each Defendant intentionally invaded Plaintiffs' and Class Members' privacy rights protected by the California Constitution, and procured the other Defendant to do the same.

115.    Defendants unlawfully invaded Plaintiffs' and Class members' privacy rights by:

a.   harvesting their personal information, including sensitive, confidential PII and PHI, and transmitting it to unauthorized third parties or for improper purposes;

b.   enabling the disclosure of personal and sensitive facts about them in a manner highly offensive to a reasonable person; and

c.   enabling the disclosure of personal and sensitive facts about them without their informed, voluntary, affirmative, and clear consent.

116.   Plaintiffs and Class members did not consent to any of Defendants' actions in implementing ActiveProspect's wiretaps on Prudential's website.

117.   A reasonable person would find it extremely offensive that Defendants received, collected, and stored private personal information of this nature from Californians without their consent.

118.   In failing to adequately protect Plaintiffs' and Class members' personal information, Defendants acted knowingly and in reckless disregard of their privacy rights. Defendants were aware that using TrustedForm on Prudential.com would share user's private information with an ActiveProspect, an unauthorized third party. Nevertheless, Prudential chose to, and did, use TrustedForm without users' consent and ActiveProspect chose to, and did, offer TrustedForm for use by Prudential without users' consent. Defendants also knew that their conduct would be highly offensive to a reasonable person in Plaintiffs' position given the sensitivity of the information being communicated.

119.   Defendants' unlawful invasions of privacy damaged Plaintiffs and Class members. As a direct and proximate result of these invasions, Plaintiffs and Class members suffered mental distress, and their reasonable expectations of privacy were frustrated and defeated.

120.   Defendants' invasion of privacy is serious in nature, scope, and impact, breaching the social norms underlying the privacy rights that our state Constitution enshrines for all Californians.

121.   As such, Plaintiffs and Class members seek all relief available for invasion of privacy in violation of Article I, Section 1 of California's Constitution.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request the Court enter judgment against Defendants through an order:

a.     Certifying the Class under Rule 23 and appointing Plaintiffs as the representatives of the Class and Plaintiffs' attorneys as Class Counsel;

b.     Finding in favor of Plaintiffs and the Class on all counts asserted herein;

c.     Granting Plaintiffs and the Class compensatory, statutory, and/or punitive damages and/or civil penalties or restitution;

d.     Awarding prejudgment interest on all amounts awarded;

e.     Awarding Plaintiffs and the Class a reasonable attorney fee and costs of suit; and

f.     Such other and further relief as the Court deems necessary or appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rules of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all claims and issues so triable.

Dated: February 21, 2023        Respectfully submitted,

**GIRARD SHARP LLP**

*/s/ Nina R. Gliozzo*
Adam E. Polk (State Bar No. 273000)
apolk@girardsharp.com
Simon S. Grille (State Bar No. 294914)
sgrille@girardsharp.com
Nina R. Gliozzo (State Bar No. 333569)
ngliozzo@girardsharp.com
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

*Attorneys for Plaintiffs*

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:22-cv-07465-CRB