1  Adam E. Polk (SBN 273000)
2  Simon Grille (SBN 294914)
   Nina R. Gliozzo (SBN 333569)
3  **GIRARD SHARP LLP**
   601 California Street, Suite 1400
4  San Francisco, CA 94108
   Telephone: (415) 981-4800
5  Facsimile: (415) 981-4846
6  apolk@girardsharp.com
   sgrille@girardsharp.com
7  ngliozzo@girardsharp.com

8  *Attorneys for Plaintiffs*
9
10
11
12
13
14              **UNITED STATES DISTRICT COURT**
15             **NORTHERN DISTRICT OF CALIFORNIA**
16

17  TYRONE HAZEL, ROXANE EVANS,           Case No. 3:22-cv-07465-CRB
    VALERIE TORRES, and RHONDA HYMAN,
18  individually and on behalf of all others similarly   **PLAINTIFFS' MEMORANDUM OF**
    situated,                             **POINTS AND AUTHORITIES IN**
19                                         **OPPOSITION TO DEFENDANTS' MOTION**
                                           **TO DISMISS THE FIRST AMENDED**
20              Plaintiffs,                **COMPLAINT**
21         v.
                                           Judge: Hon. Charles R. Breyer
22  PRUDENTIAL FINANCIAL, INC. and        Date: June 9, 2023
    ACTIVEPROSPECT, INC.,                 Time: 10:00 a.m.
23                                         Courtroom: 6 – 17th Floor
24              Defendants.
25
26
27
28

## TABLE OF CONTENTS

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ..........................................................1

II.   STATEMENT OF FACTS ...........................................................................................................2

III.  ARGUMENT .................................................................................................................................3

    A.    Plaintiffs Sufficiently Plead a Section 631 Claim. ..........................................................3

        1.    Plaintiffs' Communications Were Sent From California and Intercepted While "In Transit." .......................................................................................................4

        2.    ActiveProspect Is an Unauthorized Third Party. ..................................................8

    B.    Plaintiffs Adequately Allege Invasion of Privacy. ........................................................11

    C.    Plaintiffs' UCL Claims Should Be Sustained. ...............................................................13

IV.   CONCLUSION ...........................................................................................................................14

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adler v. Community.com, Inc.*,
   2021 WL 4805435 (C.D. Cal. Aug. 2, 2021)...................................................................6

*Alhadeff v. Experian Info. Sols., Inc.*,
   541 F. Supp. 3d 1041 (C.D. Cal. 2021) ......................................................................5

*Baird v. Samsung Elecs. Am., Inc.*,
   522 F. Supp. 3d 679 (N.D. Cal. 2021).......................................................................7

*Baron v. Hyrecar Inc.*,
   2022 WL 17413562 (C.D. Cal. Dec. 5, 2022) ...........................................................7

*Brahmana v. Lembo*,
   2009 WL 1424438 (N.D. Cal. May 20, 2009) ............................................................5

*Brown v. Google LLC*,
   525 F. Supp. 3d 1049 (N.D. Cal. 2021)....................................................................12

*Bruton v. Gerber Prod. Co.*,
   703 F. App'x 468 (9th Cir. 2017) .............................................................................13

*Bushy v. Green*,
   2022 WL 2442739 (C.D. Cal. Apr. 6, 2022) ...............................................................8

*Byars v. Goodyear Tire & Rubber Co.*,
   2023 WL 1788553 (C.D. Cal. Feb. 3, 2023) ................................................................5

*Byrd v. Aaron's, Inc.*,
   2012 WL 12887775 (W.D. Pa. Feb. 17, 2012) ...........................................................5

*Calhoun v. Google LLC*,
   526 F. Supp. 3d 605 (N.D. Cal. 2021)...........................................................11, 13, 14

*Campbell v. Facebook Inc.*,
   77 F. Supp. 3d 836 (N.D. Cal. 2014)..........................................................................5

*Cline v. Reetz-Laiolo*,
   329 F. Supp. 3d 1000 (N.D. Cal. 2018)....................................................................11

*Eastman v. Apple, Inc.*,
   2019 WL 3934805 (N.D. Cal. Aug. 20, 2019) ............................................................8

*Five Star Gourmet Foods, Inc. v. Fresh Express, Inc.*,
   2020 WL 1250802 (N.D. Cal. Mar. 16, 2020).............................................................8

*Folgelstrom v. Lamps Plus, Inc.*,
   195 Cal. App. 4th 986 (2011) ..................................................................................12

*Garcia v. Haskett*,
   2006 WL 1821232 (N.D. Cal. June 30, 2006).............................................................7

*Gianino v. Alacer Corp.*,
   2010 WL 11468710 (C.D. Cal. Aug. 4, 2010)............................................................14

*Hammerling v. Google LLC*,
   2022 WL 17365255 (N.D. Cal. Dec. 1, 2022)......................................................................12

*In re Adobe Sys., Inc. Privacy Litig.*,
   66 F. Supp. 3d 1197 (N.D. Cal. 2014)..............................................................................14

*In re Anthem, Inc. Data Breach Litig.*,
   162 F. Supp. 3d 953 (N.D. Cal. 2016)..............................................................................14

*In re Anthem, Inc. Data Breach Litig.*,
   2016 WL 3029783 (N.D. Cal. May 27, 2016)...................................................................13

*In re Carrier IQ, Inc.*,
   78 F. Supp. 3d 1051 (N.D. Cal. 2015)................................................................................6

*In re Facebook, Inc. Internet Tracking Litig.*,
   956 F.3d 589 (9th Cir. 2020) ...........................................................................11, 12, 13

*In re Google RTB Consumer Privacy Litig.*,
   606 F. Supp. 3d 935 (N.D. Cal. 2022)..............................................................................11

*In re Google, Inc. Privacy Policy Litig.*,
   58 F. Supp. 3d 968 (N.D. Cal. 2014)................................................................................13

*In re iPhone Application Litig.*,
   844 F. Supp. 2d 1040 (N.D. Cal. 2012)............................................................................12

*In re Meta Pixel Healthcare Litig.*,
   2022 WL 17869218 (N.D. Cal. Dec. 22, 2022)...........................................................11, 12

*In re Vizio, Inc., Consumer Privacy Litig.*,
   238 F. Supp. 3d 1204 (C.D. Cal. 2017)..............................................................................6

*In re Yahoo Mail Litig.*,
   7 F. Supp. 3d 1016 (N.D. Cal. 2014)..................................................................................5

*Javier v. Assurance IQ, LLC ("Javier I")*,
   2022 WL 1744107 (9th Cir. May 31, 2022).............................................................3, 5, 10

*Javier v. Assurance IQ, LLC ("Javier II")*,
   — F. Supp. 3d —, 2023 WL 114225 (N.D. Cal. Jan. 5, 2023) ......................................9, 10

*Katz-Lacabe v. Oracle America, Inc.*,
   2023 WL 2838118 (N.D. Cal. Apr. 6, 2023) ....................................................................11

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) .............................................................................................7

*Konop v. Hawaiian Airlines, Inc.*,
   302 F.3d 868 (9th Cir. 2002) .............................................................................................6

*Luis v. Zang*,
   833 F.3d 619 (6th Cir. 2016) .........................................................................................5, 6

*Matera v. Google Inc.*,
   2016 WL 5339806 (N.D. Cal. Sept. 23, 2016) ..................................................................9

*McKell v. Wash. Mut., Inc.*,
   142 Cal. App. 4th 1457 (2006) .......................................................................................14

iii

*NovelPoster v. Javitch Canfield Grp.*,
   140 F. Supp. 3d 938 (N.D. Cal. 2014) ........................................................................7

*Overstock.com v. Gradient Analytics, Inc.*,
   151 Cal. App. 4th 688 (2007) ..................................................................................13

*Pallen v. Twin Hill Acquisition Co.*,
   2013 WL 12130033 (C.D. Cal. Apr. 26, 2013) .......................................................14

*Pollock v. Fed. Ins. Co.*,
   2022 WL 912893 (N.D. Cal. Mar. 29, 2022) .............................................................8

*Produce Pay, Inc. v. Izguerra Produce, Inc.*,
   39 F.4th 1158 (9th Cir. 2022) ....................................................................................8

*Revitch v. New Moosejaw, LLC*,
   2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ........................................................4, 9

*Ribas v. Clark*,
   38 Cal. 3d 355 (1985) .................................................................................................4

*Rogers v. Ulrich*,
   52 Cal. App. 3d 894 (1975) ......................................................................................10

*Royal 4 Sys., Inc. v. RLI Ins. Co.*,
   2022 WL 19263327 (C.D. Cal. Dec. 9, 2022) ..........................................................8

*Saleh v. Nike, Inc.*,
   562 F. Supp. 3d 503 (C.D. Cal. 2021) ..................................................................4, 10

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011) ................................................................................5, 8

*Tripharma, LLC v. First Fruits Bus. Ministry LLC*,
   2023 WL 2695476 (C.D. Cal. Feb. 15, 2023) ...........................................................7

*Williams v. What If Holdings, LLC*,
   2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) .....................................................9, 10

*Yoon v. Lululemon USA, Inc.*,
   549 F. Supp. 3d 1073 (C.D. Cal. 2021) ...................................................................10

*Yunker v. Pandora Media, Inc.*,
   2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) ........................................................12

*Zeller v. Optavia, LLC*,
   2022 WL 17858032 (S.D. Cal. Dec. 22, 2022) .........................................................7

**Statutes**

Cal. Penal Code § 631 ....................................................................................................1, 9

Cal. Penal Code § 631(a) .................................................................................................3

**Rules**

Fed. R. Civ. P. 12(b)(6) ...................................................................................................7

Fed. R. Civ. P. 15 ..........................................................................................................14

iv

1

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

2

3          Plaintiffs Roxane Evans, Valerie Torres, Rhonda Hyman, and Tyrone Hazel visited Prudential's

4  website to obtain life insurance quotes. They answered sensitive, personal questions about their health,

5  divulging their age, height and weight, medical and psychological conditions, prescriptions, and history

6  of hospitalization. Plaintiffs did not know that Prudential was using ActiveProspect's "TrustedForm"

7  software to intercept and record their keystrokes and interactions with Prudential's website, including all

8  the sensitive information they typed when answering the queries on the form. Prudential gave

9  ActiveProspect access to these communications, permitting ActiveProspect to look over people's

10 shoulders without first notifying them or obtaining their consent. ActiveProspect's interceptions using

11 TrustedForm, a form of wiretapping, violates the California Invasion of Privacy Act, Cal. Penal Code

   § 631 ("CIPA"). Prudential is also liable under CIPA, for enabling this violation.

12          The Court should deny the Defendants' motion to dismiss. Their attempts to distinguish a similar

13 wiretap case against ActiveProspect that involves the same technology, *Javier v. Assurance IQ, LLC*,

14 No. 3:20-cv-02860-CRB, demonstrate only that this Court's wiretap rulings are well founded. The Court

15 rejected the substantive challenges to the *Javier* plaintiff's section 631 claim, arguments which are

16 repeated again here, granting dismissal only on timeliness grounds. In this case, Plaintiffs' amended

17 complaint (filed February 21st) satisfies the Court's reasoning in its January 5th *Javier* Order unrelated to

18 the statute of limitations. Defendants admit raising various arguments solely to preserve them and ask

19 the Court to invert the pleading standard, denying they intercepted Plaintiffs' communications "in

20 transit" and demanding factual inferences in their favor. These denials are also at odds with

21 ActiveProspect's own software patent and website, which disclose that the technology intercepts the

22 data the moment a user enters it. Defendants' competing factual explanations of how this software

23 functions are not suitable for resolution at this stage.

24          In addition to their wiretap claims Plaintiffs bring two claims that were not at issue in the second

25 *Javier* motion to dismiss: invasion of privacy under California's Constitution and violations of the

26 Unfair Competition Law. Defendants contend there was no constitutional privacy violation because the

27 challenged conduct is not highly offensive to a reasonable person, implying that surreptitiously

28 capturing consumers' medical facts is just routine commercial conduct. These questions require

1  evidence to resolve and courts have held that intercepting a person's private facts without their

2  knowledge or prior consent may be sufficiently egregious to qualify as a constitutional invasion of

3  privacy. Regarding the UCL, many courts have recognized that lost money or property may consist of

4  the reduced economic value of personal facts that results from their exposure. Defendants themselves

5  exploit the tangible value of Plaintiffs' data, abridging Plaintiffs' property right in controlling their own

6  private information. Hence, its collection and disclosure without their consent gives them standing.

7         For the reasons discussed further below, the motion should be denied.

8  **II.   STATEMENT OF FACTS**

9         Prudential offers life insurance quotes to consumers on its website, Prudential.com. ¶¶ 1, 38.[1] To

10  obtain a life insurance quote from Prudential's website, consumers must fill out a form that requires

11  them to list their personal information and answer a series of detailed questions about their health,

12  including their age, height, weight, prescribed medications, medical conditions such as diabetes, cancer,

13  or heart problems as well as any psychological diagnoses and treatment history. ¶¶ 38-39. Only after

14  answering these questions can a consumer view Prudential's insurance quote. ¶ 44.

15         ActiveProspect sells software that allows companies to generate leads for their products and

16  services. ¶ 22. Prudential uses software made by ActiveProspect called "TrustedForm." ¶¶ 2-3, 24.

17  According to ActiveProspect's website, TrustedForm contains a "VideoReplay" feature that records a

18  website visitor's keystrokes, mouse clicks, and other website interactions as they occur. ¶ 25. Once its

19  script is added to a webpage, TrustedForm automatically begins capturing data the moment a user

20  accesses the webpage, recording their entry of information, clicks, and other activities on the website. ¶¶

21  27-32. The user information ActiveProspect captures is then hosted on its own servers, and it shares that

22  data with clients like Prudential. ¶ 28.

23         Since at least March 2022, Prudential has used TrustedForm on its website and this software is

24  embedded into the source code of Prudential's website. ¶¶ 41-42. As a result, ActiveProspect is able to

25  monitor, intercept, and record a consumer's activity on the site and their responses to personal questions,

26  such as whether they have type 2 diabetes or if they have been treated for depression or bipolar disorder.

27  ¶ 43. Not until the user answered multiple personal questions, at which point they were prompted to

28

---

[1] "¶" references are to the First Amended Class Action Complaint, dkt. 18.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
**CASE NO. 3:22-cv-07465-CRB**

consent to its Terms of Use, did Prudential disclose that their responses were being recorded and intercepted by a third party. ¶ 45. Consumers must affirmatively click to pull up Prudential's privacy notice just to learn that Prudential may share their information with other companies. ¶¶ 46-47. Hence by the time consumers are presented with Prudential's legal documents, their communications already have been intercepted by ActiveProspect without their knowledge and regardless of whether they consent. ¶¶ 48, 76. In early January 2023, after the filing of this class action and around the time the Court issued its second motion to dismiss order in *Javier*, Prudential modified its website to add an inconspicuous, fine-print disclosure that purports to obtain consumer consent to record their inputs. ¶¶ 50-52. The new disclaimer evidences Prudential's awareness that it has been intercepting and recording users' communications without their knowledge or prior consent. *Id*.

Plaintiffs are California residents in the market for life insurance who visited Prudential's website and, responding to the personal questions asked of them, typed in their personal information to obtain a quote. ¶¶ 57-73. No Plaintiff was aware during their visits that Prudential and ActiveProspect were recording their electronic communications in real time. No Plaintiff consented to sharing their private information with ActiveProspect or any other third party. ¶¶ 59-60, 63-64, 67-78, 71-72.

Plaintiffs' personal information and web-browsing activities have value. ¶¶ 55-56. Prudential sells "leads" containing information intercepted by ActiveProspect, and it uses TrustedForm to increase the value of these leads. ¶¶ 37, 55-56.

### III.   ARGUMENT

#### A.   Plaintiffs Sufficiently Plead a Section 631 Claim.

"Though written in terms of wiretapping, Section 631(a) applies to Internet communications." *Javier v. Assurance IQ, LLC ("Javier I")*, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022) (unpublished disposition). That provision "makes liable anyone who 'reads, or attempts to read, or to learn the contents' of a communication 'without the consent of all parties to the communication.'" *Id.* (quoting Cal. Penal Code § 631(a)). The California Supreme Court "also emphasized that all CIPA provisions are to be interpreted in light of the broad privacy-protecting statutory purposes of CIPA." *Id.* at *2.

Plaintiffs allege that ActiveProspect, as a third party that eavesdropped on their communications, is liable for violating section 631(a) (¶ 96) and that Prudential is liable because it substantially aided ActiveProspect's illegal eavesdropping by coding TrustedForm onto Prudential's site (¶ 95). *See Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019) (preserving similar claims); *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 521 (C.D. Cal. 2021) (same). Defendants dispute their liability on the grounds that (1) Plaintiffs do not sufficiently allege that their communications were intercepted "in transit" and (2) ActiveProspect is not an unauthorized third party but rather an extension of Prudential. These arguments should be rejected for the reasons explained below.

### 1. Plaintiffs' Communications Were Sent From California and Intercepted While "In Transit."

Section 631(a) of the California Penal Code provides in pertinent part that a party lacking consent cannot "read, or attempt to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state[.]" Thus, the "plain language of section 631" makes a defendant liable for eavesdropping "communication while the same is *in transit . . . , or is being sent from, or received* at any place within this state[.]" *Ribas v. Clark*, 38 Cal. 3d 355, 360 (1985) (emphasis in original).

As an initial matter, Defendants' singular focus on the "in transit" requirement disregards the plain text of section 631. The defendant in *Ribas* was liable for eavesdropping on the plaintiff's conversation "either" while the information was "in transit" *or* when the communication was "being sent from" and received at a place in California. *Id.* As Judge Chhabria noted, "Section 631's protections extend explicitly to the beginnings and ends of communications, so there is no reason to consider the first part of an electronic communication beyond the statute's reach." *Revitch*, 2019 WL 5485330, at *6. The California Plaintiffs in this case allege that Defendants intercepted their communications not only "in transit" but the moment these communications were sent from California. ¶¶ 95-96. By focusing solely on the "in transit" aspect of section 631, Defendants ignore that Plaintiffs need not show that their communications were captured while "in transit" to prevail under section 631. Instead, Plaintiffs' claim stands independently on the fact that their communications at issue were sent from California, where they were typing and clicking.

4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendants' challenges to the "in transit" allegations are meritless. They make technical arguments about how TrustedForm functions (Mot. at 6-7), but Rule 8 does not impose a probability requirement and Plaintiffs' detailed allegations of real-time intercepts are plausible. *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (a "complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *im*plausible.") (emphasis in original); *see, e.g.*, *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 848 (N.D. Cal. 2014) ("Moreover, the complaint's allegation that users' messages were intercepted in transit is to be taken as true at this stage of the case."); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1028 (N.D. Cal. 2014) ("[U]ntil the Court can determine when and how Yahoo intercepted users' emails, the Court must accept as true Plaintiffs' allegation that they were accessed while 'in transit.'"); *Byars v. Goodyear Tire & Rubber Co.*, 2023 WL 1788553, at *4 (C.D. Cal. Feb. 3, 2023) (upholding section 631 claim where defendant allegedly used a third-party service to intercept chats in real time).

Relying entirely on federal Wiretap Act cases, Defendants contend that the nature and speed of internet communications makes it impossible for Plaintiffs' communications to be intercepted while "in transit." Mot. at 6-7. But courts construe CIPA broadly, *Javier I*, 2022 WL 1744107, at *2, and have found it plausible that programs capturing keystrokes intercept communications "in flight" or upon their being sent or received. For instance, in *Luis v. Zang*, the Sixth Circuit held that allegations that a program called "WebWatcher immediately and instantaneously rout[e]s the intercepted communications to" the defendant's servers were sufficient to plead that the plaintiff's communications were intercepted contemporaneously for Wiretap Act purposes. 833 F.3d 619, 630 (6th Cir. 2016); *see also, e.g.*, *Byrd v. Aaron's, Inc.*, 2012 WL 12887775, at *7 (W.D. Pa. Feb. 17, 2012) (allegation that the plaintiff's keystrokes were captured and sent to a third-party server plausibly constituted "interception" under Wiretap Act); *Alhadeff v. Experian Info. Sols., Inc.*, 541 F. Supp. 3d 1041, 1044 (C.D. Cal. 2021) (plaintiff sufficiently alleged violation of Florida's "analog to the federal Wiretap Act" through defendant's use of similar "session replay" software to capture his mouse clicks and keystrokes); *Brahmana v. Lembo*, 2009 WL 1424438, at *3 (N.D. Cal. May 20, 2009) (Judge Whyte finding it plausible that use of key loggers to capture plaintiff's data violated Wiretap Act).

1    In *Luis*, the defendant's marketing supported the allegation the plaintiff's communications were

2    captured "in flight" because, among other things, the advertising stated that the program at issue could

3    record even if the document was never saved. 833 F.3d at 630-31. Here too, ActiveProspect's website

4    and patent demonstrate TrustedForm intercepts Plaintiffs' information while it is "in flight." That

5    website states that TrustedForm records a visitor's keystrokes, mouse clicks, and other website

6    interactions in real time because it provides a "moment-by-moment replay" of what occurred on the

7    page and in what order, down to the changes and corrections a user makes to the form. ¶ 25.

8    ActiveProspect's website also admits that the "recording of keystrokes, mouse clicks, data entry, and

9    other electronic communications begins the moment a user accesses or interacts with a webpage using

10   TrustedForm." ¶ 29 (citing website). The allegation that TrustedForm captures user communications "in

11   transit" are thus plausible; ActiveProspect records this information regardless of whether a user

12   ultimately completes or submits the form. *E.g.*, ¶ 94 (TrustedForm intercepts communications by

13   recording them when and as the user enters information, even before they click a button to submit the

14   completed form to Prudential though its website). Therefore, instead of being "conclusory" (Mot. at 8),

15   Plaintiffs' allegations that their communications were intercepted "in transit" are well founded. *In re*

16   *Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1078 (N.D. Cal. 2015) (allegations that communications were

17   intercepted during the "transmission process" found sufficient).

18       Defendants' Wiretap Act cases are inapposite by virtue of the Ninth Circuit's holding that "in

19   transit" means during transmission as contrasted with in storage. *Konop v. Hawaiian Airlines, Inc.*, 302

20   F.3d 868, 878 & n.6 (9th Cir. 2002). Unlike the software here, which captures communications sent

21   during transmission, "[t]he common thread in th[o]se cases is that the challenged acquisition occurred

22   after the transmission was completed—the e-mail messages at issue were received by the destination

23   server and no further 'movement' of the message was necessary." *In re Carrier IQ.*, 78 F. Supp. 3d at

24   1078; *see also, e.g.*, *Adler v. Community.com, Inc.*, 2021 WL 4805435, at *4 (C.D. Cal. Aug. 2, 2021)

25   ("Defendant's alleged access of that communication upon the completion of its transmission to the

26   proper number is not the sort of act contemplated by federal law."); *In re Vizio, Inc., Consumer Privacy*

27   *Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) (allegations indicated defendant transmitted

28   information "significantly after the data arrive at the[] Smart TVs"); *NovelPoster v. Javitch Canfield*

6

*Grp.*, 140 F. Supp. 3d 938, 952 (N.D. Cal. 2014) (plaintiff only alleged that defendants prevented it from accessing accounts, and their "subsequent reading or forwarding" of emails once received did not occur during the transmission); *Garcia v. Haskett*, 2006 WL 1821232, at *4 (N.D. Cal. June 30, 2006) (instead of suggesting her email was intercepted while in transit, plaintiff's allegations showed "that the reverse is true: that the unread email was accessed while it was on the Partnership's server, and that the server permanently stored all email."). In this case, by contrast, TrustedForm "intercepts Class members' communications in transit while passing over the lines of internet communication by recording them in real time as the user enters information, even before the user clicks a button to submit the completed form . . . ." ¶ 94.

Defendants contest Plaintiffs' allegations by pointing to ActiveProspect's TrustedForm patent even though "district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). The Ninth Circuit cautioned that "[t]he overuse and improper application of judicial notice and the incorporation-by-reference doctrine . . . can lead to unintended and harmful results." *Id.* In short, the Court may take judicial notice of the existence of the patent but not its claims or substance. *See Tripharma, LLC v. First Fruits Bus. Ministry LLC*, 2023 WL 2695476, at *1 (C.D. Cal. Feb. 15, 2023) (taking judicial notice of patent documents "but not the truth of the matters asserted therein."); *Baird v. Samsung Elecs. Am., Inc.*, 522 F. Supp. 3d 679, 684 (N.D. Cal. 2021) (declining to take judicial of notice of documents where the "import of those documents is disputed").

Defendants insist the patent "shows that the communications to the lead generator and the verification server occur at different times and via separate channels." Mot. at 9. This is not a summary judgment motion, and the Court should not take judicial notice "to resolve disputed factual issues[.]" *Baron v. Hyrecar Inc.*, 2022 WL 17413562, at *5 (C.D. Cal. Dec. 5, 2022); *Khoja*, 899 F.3d at 1003 (noting "prohibition against resolving factual disputes at the pleading stage."); *see, e.g.*, *Zeller v. Optavia, LLC*, 2022 WL 17858032, at *3 (S.D. Cal. Dec. 22, 2022) (declining to rely on website to disprove plaintiff's claims). A court "may not judicially notice a fact that is subject to reasonable dispute" especially when it goes to "the heart of the dispute." *Bushy v. Green*, 2022 WL 2442739, at *1

7

1   (C.D. Cal. Apr. 6, 2022); *Pollock v. Fed. Ins. Co.*, 2022 WL 912893, at *6 (N.D. Cal. Mar. 29, 2022)

2   ("hotly disputed facts . . . are more appropriately resolved on summary judgment"); *Royal 4 Sys., Inc. v.*

3   *RLI Ins. Co.*, 2022 WL 19263327, at *4 (C.D. Cal. Dec. 9, 2022) (rejecting request to consider contents

4   of email to refute allegations).

5          It is not apparent either from Defendants' explanation or by examining the diagram identified as

6   "Figure 1" whether TrustedForm intercepts communications "in transit." Mot. at 9; *see Eastman v.*

7   *Apple, Inc.*, 2019 WL 3934805, at *4 (N.D. Cal. Aug. 20, 2019) (rejecting request to take judicial notice

8   of patents to "do what *Khoja* forbids—ask the Court to take judicial notice of documents that they then

9   use as a basis to challenge the factual averments in the complaint."). As a result, the Court should

10  decline the Defendants' invitation to scrutinize the patent's factual assertions or their Figure 1. *Cf. Five*

11  *Star Gourmet Foods, Inc. v. Fresh Express, Inc.*, 2020 WL 1250802, at *4 (N.D. Cal. Mar. 16, 2020)

12  (refusing to take judicial notice of photographs of product at issue in patent dispute because they had

13  "several possible interpretations").

14         Furthermore, even if the Court were to consider the patent, it corroborates Plaintiffs' allegation

15  that the data collection occurs in real time by stating that the "server collects information . . . during the

16  communication session." ¶ 30. Defendants, splitting hairs, assert that gathering a user's information

17  "during" the session is not necessarily the same thing as intercepting the information while it is in

18  transit. Mot. at 7. Regardless, the patent also states that the software captures snapshots of the webpage

19  *each time a change is detected*. ¶ 31. Considered together with ActiveProspect's website representation

20  that TrustedForm provides a "moment-by-moment replay" of events—including the sequence of

21  changes to the form, whether or not it is submitted (¶ 25)—the patent further confirms the plausibility of

22  Plaintiffs' allegation of in-transit intercepts. *Starr*, 652 F.3d at 1216 (dismissal only justified if a

23  defendant's contrary explanation renders the plaintiff's explanation implausible); *see also Produce Pay,*

24  *Inc. v. Izguerra Produce, Inc.*, 39 F.4th 1158, 1166 (9th Cir. 2022) (even if some portions of attached

25  exhibits supported a competing interpretation, dismissal was unwarranted because the documents did not

26  "uniformly or directly contradict" the plaintiff's allegations).

27              **2.       ActiveProspect Is an Unauthorized Third Party.**

28         Section 631 prohibits accessing communications without the consent of all parties. *Matera v.*

1  *Google Inc.*, 2016 WL 5339806, at *16 (N.D. Cal. Sept. 23, 2016) ("To establish a consent defense

2  under CIPA, both parties—the sender and the recipient of the communication—must consent").

3  Defendants claim that section 631 only prohibits eavesdropping by third parties and that because

4  ActiveProspect acted entirely as an extension of Prudential, it cannot be considered a third-party

5  eavesdropper under CIPA. Mot. at 9. Defendants acknowledge the Court considered and rejected this

6  argument in *Javier*, 2023 WL 114225, at *3-6, but "include the argument here to preserve it, and also to

7  explain . . . the bases upon which the Court held ActiveProspect was not a third party." Mot. at 10.

8  Defendants' repackaging of their unsuccessful argument offers no cogent reason to depart from *Javier*.

9         The Court noted section 631 "creates four avenues for relief" and the second prong makes a

10  defendant liable when it "willfully and without consent of all parties to the communication, or in any

11  unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message,

12  report, or communication while the same is in transit" whereas the third prong applies when a defendant

13  "uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any

14  information so obtained[.]" *Javier v. Assurance IQ, LLC ("Javier II")*, No. 20-CV-02860-CRB, — F.

15  Supp. 3d —, 2023 WL 114225, at *6 (N.D. Cal. Jan. 5, 2023). The Court further observed that other

16  courts have taken two different approaches with respect to section 631 and software providers like

17  ActiveProspect. Some courts have held that such companies can be considered unauthorized third

18  parties, 2023 WL 114225, at *5 (citing, *inter alia*, *Revitch*, 2019 WL 5485330, at *1), while other courts

19  have treated software providers as mere extensions of the companies that engage them. *See, e.g.*,

20  *Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *1 (N.D. Cal. Dec. 22, 2022). This Court

21  declined to adopt the reasoning in the latter cases because interpreting the second prong of section

22  631(a) "based on the intentions and usage of the prospective third party . . . would add requirements that

23  are not present (and swallow the third prong in the process)." *Javier II*, 2023 WL 114225, at *6.

24         Although Defendants disagree, they cite no additional authority for their interpretation that the

25  second prong of section 631 turns on whether the third party "intended to use the collected data for its

26  own purposes." Mot. at 10. Nor do they explain why reading an intent requirement into the second prong

27  would not impose a new requirement that is absent from the statutory text. 2023 WL 114225, at *6.

28  Defendants suggest their reading would give effect to both the second and third prongs (Mot. at 10

9

1   (citing *Williams*, 2022 WL 17869275, at *2)), but the Court already considered *Williams* and declined to

2   adopt that interpretation.[2] Defendants' reading of the second prong of section 631, as permitting web

3   businesses to hire third parties to secretly record their customers' communications, is not only extra-

4   textual but contradicts the mandate of interpreting the statute "in light of [its] broad privacy-protecting"

5   objective. *Javier I*, 2022 WL 1744107, at *2; *cf. Saleh*, 562 F. Supp. 3d at 520 (rejecting interpretation

6   "that would vitiate the statute's protections.").

7          In *Javier II*, the Court also rejected two additional arguments for why ActiveProspect should not

8   be considered a third-party eavesdropper: (1) because ActiveProspect does not have the capability of

9   using its recording of the website interaction for any other purpose and (2) because "the ubiquity of

10  services like ActiveProspect on the internet effectively renders it party to the 'firsthand dissemination'

11  of [plaintiff's] information to [the website owner]." 2023 WL 114225, at *6. As to the first argument,

12  Defendants contend that Plaintiffs do not allege facts suggesting ActiveProspect had the right or

13  capability to use TrustedForm for an independent purpose. Yet Defendants concede that Plaintiffs do

14  allege that ActiveProspect's EULA allows it to use data for other purposes. Mot. at 11; ¶ 35. While

15  Defendants claim that Plaintiffs do not allege that the EULA applies to its relationship with Prudential or

16  permits ActiveProspect to use Plaintiffs' individual information, the Court cited similar allegations when

17  rejecting a substantially identical argument. *See Javier II*, 2023 WL 114225, at *6 (noting that the

18  plaintiff did allege that ActiveProspect can use the information it collects "for other purposes, even if

19  [he] has not alleged that they have done so in this case").[3]

20         Thus, Defendants provide no basis for the Court to revisit its ruling on the third-party issue.

21

22  ---

    [2] Defendants also maintain that TrustedForm is like the tape recorder in *Rogers v. Ulrich*, 52 Cal. App.

23  3d 894 (1975), but the Court considered and rejected this same analogy in *Javier II*, consistent with case
    law. *See, e.g.*, *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1081 (C.D. Cal. 2021) ("Yoon's first

24  claim for relief survives Quantum Metric's participant exception challenge because she alleges that QM
    captures, stores, and interprets her real-time data—which extends beyond the ordinary function of a tape

25  recorder."); *Saleh*, 562 F. Supp. 3d at 520 ("Unlike the recorders in *Rogers* . . . FullStory is a separate
    legal entity that offers 'software-as-a-service' and not merely a passive device.").

26

27  [3] Defendants do not dispute that the second additional argument fails because, as in *Javier II*, Plaintiffs
    were "unaware . . . that [their] keystrokes, mouse clicks, and other electronic communications . . . would

28  be disclosed to ActiveProspect[.]" 2023 WL 114225, at *6; ¶¶ 60, 64, 68, 72.

1

**B.      Plaintiffs Adequately Allege Invasion of Privacy.**

2        An invasion of privacy claim under the California Constitution requires Plaintiffs to show (1)

3  they have a legally protected privacy interest, (2) they maintain a reasonable expectation of privacy, and

4  (3) the invasive act is highly offensive and an egregious breach of social norms. *In re Facebook, Inc.*

5  *Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020). Defendants do not dispute that first two

6  elements are met but assert that intercepting the sensitive health information of people who visit

7  Prudential's website is not egregious. Mot. at 12. But that is a question for the fact finder. As such,

8  "determinations of the egregiousness of the privacy intrusion are not usually resolved at the pleading

9  stage." *Katz-Lacabe v. Oracle America, Inc.*, 2023 WL 2838118, at *7 (N.D. Cal. Apr. 6, 2023);

10 *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 631 (N.D. Cal. 2021).

11       In Defendants' self-serving conception, collecting "information about Plaintiffs' devices, their

12 geolocation, and the amount of time they spent on Prudential's website" is routine commercial conduct

13 and therefore inoffensive. "But that is not the kind of information at issue here." *In re Meta Pixel*

14 *Healthcare Litig.*, 2022 WL 17869218, at *16 (N.D. Cal. Dec. 22, 2022). Defendants not only intercept

15 and collect device settings, physical location, and the duration of sessions without prior consent; they

16 also intercept and collect the answers to questions about people's medical and psychological issues, the

17 medications they take, and whether they have been hospitalized. ¶¶ 4, 39, 43(j) (quoting website prompt:

18 "have you been treated or prescribed medication for . . . anxiety/depression/bipolar; cancer; chronic

19 pain; diabetes; heart or circulatory disorder; respiratory disorder"). The private health information

20 Defendants acquire is different in kind from the commercial information that courts in other cases have

21 held insufficiently sensitive to form the basis for an invasion of privacy. In *Katz-Lacabe*, the court

22 concluded that the defendant's alleged collection of "sensitive health" and other personal information

23 went "well beyond" routine commercial behavior and was sufficiently egregious to allow an invasion of

24 privacy claim to proceed. 2023 WL 2838118, at *7; *see also In re Google RTB Consumer Privacy Litig.*,

25 606 F. Supp. 3d 935, 947 (N.D. Cal. 2022) (denying motion to dismiss constitutional privacy claim

26 involving disclosure of health and other personal information); *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d

27 1000, 1051 (N.D. Cal. 2018) (intrusion upon emails containing private information including "medical

28 conditions and needs" supported privacy claim under California Constitution). The extensive federal and

state statutory schemes protecting private health details confirm that their unauthorized disclosure breaches societal norms: "By enacting criminal and civil statutes forbidding the disclosure of protected health information without proper authorization, Congress has made policy decisions regarding the importance of safekeeping this information." *In re Meta*, 2022 WL 17869218, at *16.

Defendants argue that Plaintiffs' medical information was relevant to a life insurance quote and was collected and preserved only for verification purposes, despite Plaintiffs' allegations that it was used for monetary gain. Mot. at 12-13. Whether there is a legitimate use for intercepted data does not resolve the question of whether the intrusion is highly offensive. *See Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1079-80 (N.D. Cal. 2021) (rejecting argument that interceptions were not highly offensive because they "served a legitimate commercial purpose" given that the analysis involves a "holistic consideration of a multitude of factors") (citing *In re Facebook*, 956 F.3d at 606 (these factors include "the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive")).

While Defendants deny that their conduct is highly offensive, they do "not point to a single case where a court found that the collection of the kinds of information at issue here did not constitute a highly offensive invasion of privacy." *In re Meta*, 2022 WL 17869218, at *16. They cite this Court's decision in *Hammerling v. Google LLC*, but, in contrast to the sensitive medical facts intercepted in this case, the plaintiff in *Hammerling* alleged Google collected information about "searches of a foot massager, slippers, meal subscriptions, coconut oil" and other consumer products. 2022 WL 17365255, at *9 (N.D. Cal. Dec. 1, 2022). Defendants also rely on *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 991 (2011), but the conduct at issue there, too, was "routine commercial behavior" because the defendant merely obtained the plaintiff's address without his permission "to mail him coupons and other advertisements." In Defendants' remaining cases, the plaintiffs did not allege that the defendant tracked or disclosed "any type of sensitive financial information, medical information, or passwords." *Yunker v. Pandora Media, Inc.*, 2013 WL 1282980, at *15 (N.D. Cal. Mar. 26, 2013); *see also, e.g.*, *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) ("information allegedly disclosed to third parties included the unique device identifier number, personal data, and geolocation information");

1   *In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 987 (N.D. Cal. 2014) (similar). Thus,

2   because Plaintiffs allege the unauthorized disclosure of sensitive medical and other highly confidential

3   facts, their invasion of privacy claim is viable. *See In re Facebook*, 956 F.3d at 606 ("The ultimate

4   question of whether Facebook's tracking and collection practices could highly offend a reasonable

5   individual is an issue that cannot be resolved at the pleading stage.").

6         **C.     Plaintiffs' UCL Claims Should Be Sustained.**

7          Defendants also contest Plaintiffs' UCL claim. Defendants first contend that Plaintiffs lack

8   statutory standing on the grounds they did not lose money or property as a result of the alleged

9   misconduct. Mot. at 13-14. But Plaintiffs allege that Defendants' interception and use of their personal

10  information diminished its value (¶ 108), which is a recognized form of economic injury under the UCL.

11  *Overstock.com v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688, 716 (2007). Plaintiffs cite several

12  studies that show that the information Defendants intercepted has value. ¶¶ 55-56; *cf. In re Facebook*,

13  956 F.3d at 600 ("Because California law recognizes a legal interest in unjustly earned profits, Plaintiffs

14  have adequately pleaded an entitlement to Facebook's profits from users' personal data sufficient to

15  confer Article III standing. Plaintiffs allege that their browsing histories carry financial value. They

16  point to the existence of a study that values users' browsing histories at $52 per year . . . ."). In fact,

17  Defendants themselves concede (and exploit) the value of users' personal information. Prudential states

18  on its website that it sells such information for advertising. ¶ 55. It also sells "leads" based on

19  information intercepted by ActiveProspect and relies on TrustedForm because it is designed to increase

20  the value of leads generated through user information. ¶¶ 37, 55, 108. Defendants' unauthorized

21  interception and use of Plaintiffs' valuable data therefore confers standing under the UCL. *See Calhoun*,

22  526 F. Supp. 3d at 636 ("[T]he Ninth Circuit and a number of district courts, including this Court, have

23  concluded that plaintiffs who suffered a loss of their personal information suffered economic injury and

24  had standing."); *accord In re Anthem, Inc. Data Breach Litig.*, 2016 WL 3029783, at *15 (N.D. Cal.

25  May 27, 2016).

26         Further, because Plaintiffs have adequately alleged a CIPA violation, they state a UCL claim for

27  unlawful conduct. *See Bruton v. Gerber Prod. Co.*, 703 F. App'x 468, 472 (9th Cir. 2017). Defendants'

28  only challenge to Plaintiffs' "unfair" claim is that it rests entirely on the unlawful prong. Mot. at 14-15.

1  But CIPA, among other enactments, embodies the legislatively declared policy against the unauthorized

2  interception of private communications. Plaintiffs' claims accordingly meet the "tethering" test used in

3  determining whether a business practice is "unfair." *See In re Adobe Sys., Inc. Privacy Litig.*, 66 F.

4  Supp. 3d 1197, 1226 (N.D. Cal. 2014); *Pallen v. Twin Hill Acquisition Co.*, 2013 WL 12130033, at *4

5  (C.D. Cal. Apr. 26, 2013). Defendants do not address the alternative "balancing" test often used in

6  consumer cases, which is "'fact intensive and is not conducive to resolution' at the motion to dismiss

7  phase." *Gianino v. Alacer Corp.*, 2010 WL 11468710, at *4 (C.D. Cal. Aug. 4, 2010) (citation omitted);

8  *see McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1473 (2006). Defendants' interception of

9  Plaintiffs' private facts without their knowledge or consent satisfies the UCL's consumer balancing test.

10  *See Calhoun*, 526 F. Supp. 3d at 636; *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 990

11  (N.D. Cal. 2016).

12  **IV.    CONCLUSION**

13        For the foregoing reasons, Defendants' motion should be denied. If the Court grants the motion

14  in whole or part, Plaintiffs respectfully request leave to amend under Rule 15.

15

16  Dated: May 3, 2023                                    Respectfully submitted,

17                                                        */s/   Adam E. Polk*
                                                          Adam E. Polk (SBN 273000)
18                                                        Simon Grille (SBN 294914)
                                                          Nina R. Gliozzo (SBN 333569)
19                                                        Nina R. Gliozzo (SBN 333569)
                                                          **GIRARD SHARP LLP**
20                                                        601 California Street, Suite 1400
                                                          San Francisco, CA 94108
21                                                        Telephone: (415) 981-4800
                                                          Facsimile: (415) 981-4846
22                                                        apolk@girardsharp.com
                                                          sgrille@girardsharp.com
23                                                        ngliozzo@girardsharp.com
24
25                                                        *Attorneys for Plaintiffs*
26
27
28