KELLY M. KLAUS (State Bar No. 161091)
kelly.klaus@mto.com
JONATHAN H. BLAVIN (State Bar No. 230269)
jonathan.blavin@mto.com
VIRGINIA GRACE DAVIS (State Bar No. 336732)
grace.davisfisher@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, California  94105-2907
Telephone:     (415) 512-4000
Facsimile:      (415) 512-4077

Attorneys for Defendants
PRUDENTIAL FINANCIAL, INC. and
ACTIVEPROSPECT, INC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| TYRONE HAZEL, ROXANE EVANS, VALERIE TORRES, and RHONDA HYMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>PRUDENTIAL FINANCIAL, INC. and ACTIVEPROSPECT, INC.,<br><br>Defendants. | Case No. 3:22-cv-07465-CRB<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date: June 9, 2023<br>Time: 10:00 a.m.<br>Judge: Hon. Charles R. Breyer<br>Ctrm: 6 – 17th Floor<br><br>[Filed Concurrently:  Request for Judicial Notice in Support of Reply] |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ............................................................................................................1

II. PLAINTIFFS' SECTION 631 CLAIM FAILS ................................................................2

    A. Plaintiffs Have Not Plausibly Alleged Their Communications Were Intercepted Contemporaneous With Their Transmission To Prudential ....................2

    B. Plaintiffs Do Not Plausibly Allege Facts Showing ActiveProspect Was A "Third Party" Rather Than An Extension Of Prudential .............................................6

III. PLAINTIFFS' CONSTITUTIONAL PRIVACY CLAIM FAILS ........................................8

IV. PLAINTIFFS FAIL TO STATE A VALID UCL CLAIM ...................................................10

    A. Plaintiffs' Opposition Confirms That They Lack UCL Standing ............................10

    B. Plaintiffs Independently Fail To State A Claim Under The UCL's "Unlawful" And "Unfair" Prongs ..............................................................................11

V. PLAINTIFFS HAVE AMENDED ONCE, AND ANY FURTHER AMENDMENT WOULD BE FUTILE .........................................................................................................12

VI. CONCLUSION ...................................................................................................................12

**TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Adler v. Community.com, Inc.*,
  No. 2:21-cv-02416-SB-JPR, 2021 WL 4805435 (C.D. Cal. Aug. 2, 2021)..............................1, 3

*Alhadeff v. Experian Info. Sols., Inc.*,
  541 F. Supp. 3d 1041 (C.D. Cal. 2021)................................................................................4

*Brahmana v. Lembo*,
  No. C-09-00106 RMW, 2009 WL 1424438 (N.D. Cal. May 20, 2009) .....................................4

*Byrd v. Aaron's, Inc.*,
  No. C.A. 11-101, 2012 WL 12887775 (W.D. Pa. Feb. 17, 2012)..............................................4

*Coto Settlement v. Eisenberg*,
  593 F.3d 1031 (9th Cir. 2010)..............................................................................................4

*El Dorado Cmty. Serv. Ctr. v. Cnty. of L.A.*,
  No. CV 15-7998-JFW, 2017 WL 6017297 (C.D. Cal. Jan. 3, 2017).........................................12

*Exec. Sec. Mgmt., Inc. v. Dahl*,
  830 F. Supp. 2d 883 (C.D. Cal. 2011)...................................................................................4

*In re Facebook, Inc., Consumer Privacy User Profile Litig.*,
  402 F. Supp. 3d 767 (N.D. Cal. 2019) .................................................................................11

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020)........................................................................................8, 10, 11

*Gonzales v. Uber Techs., Inc.*,
  305 F. Supp. 3d 1078 (N.D. Cal. 2018) ................................................................................10

*In re Google Assistant Priv. Litig.*,
  457 F. Supp. 3d 797 (N.D. Cal. 2020) ..................................................................................11

*In re Google RTB Consumer Priv. Litig.*,
  606 F. Supp. 3d 935 (N.D. Cal. 2022) ...................................................................................8

*Graham v. Noom, Inc.*,
  533 F. Supp. 3d 823 (N.D. Cal. 2021) ...................................................................................6

*Hammerling v. Google LLC*,
  No. 21-cv-09004-CRB, 2022 WL 17365255 (N.D. Cal. Dec. 1, 2022) ...................................12

*Hammerling v. Google LLC*,
  No. 21-CV-09004-CRB, 2022 WL 2812188 (N.D. Cal. July 18, 2022) ..................................11

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Hart v. TWC Prod. & Tech. LLC*,
    526 F. Supp. 3d 592 (N.D. Cal. 2021) ...................................................................................10

*In re Google Inc.*,
    No. 13-MD-02430-LHK, 2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ...............................8, 9

*Katz-Lacabe v. Oracle America, Inc.*,
    No. 22-cv-04792-RS, 2023 WL 2838118 (N.D. Cal. Apr. 6, 2023) ........................................8, 9

*Konop v. Hawaiian Airlines, Inc.*,
    302 F.3d 868 (9th Cir. 2002) ..........................................................................................2, 3, 4, 6

*Luis v. Zang*,
    833 F.3d 619 (6th Cir. 2016) ....................................................................................................5

*Mitchell v. Regional Serv. Corp.*,
    No. C 13-04212 JSW, 2014 WL 12607809 (N.D. Cal. Apr. 23, 2014) ......................................9

*NovelPoster v. Javitch Canfield Grp.*,
    140 F. Supp. 3d 938 (N.D. Cal. 2014) ..............................................................................2, 4, 5

*Pena v. GameStop, Inc.*,
    No. 22-CV-1635 JLS (MDD), 2023 WL 3170047 (S.D. Cal. Apr. 27, 2023) ........................2, 4

*Revitch v. New Moosejaw, LLC*,
    No. 18-cv-06827-VC, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) (Opp. ) ...........................3

*Snapkeys, Ltd v. Google LLC*,
    No. 19-CV-02658-LHK, 2020 WL 6381354 (N.D. Cal. Oct. 30, 2020) ..................................12

*Sunbelt Rentals, Inc. v. Victor*,
    43 F. Supp. 3d 1026 (N.D. Cal. 2014) ......................................................................................9

*In re Vizio, Inc., Consumer Privacy Litig.*,
    238 F. Supp. 3d 1204 (C.D. Cal. 2017) ................................................................................2, 4

*Williams v. What If Holdings, LLC*,
    No. C 22-03780 WHA, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ...................................6

*X One, Inc. v. Uber Techs., Inc.*,
    239 F. Supp. 3d 1174 (N.D. Cal. 2017) ....................................................................................5

*Yoon v. Lululemon USA, Inc.*,
    549 F. Supp. 3d 1073 (C.D. Cal. 2021) ....................................................................................7

*Yunker v. Pandora Media, Inc.*,
    No. 11-CV-03113 JSW, 2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) ....................................8

# TABLE OF AUTHORITIES
### (continued)
**Page(s)**

*Zadrozny v. Bank of N.Y. Mellon*,
  720 F.3d 1163 (9th Cir. 2013) .............................................................................................. 12

**STATE CASES**

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999) ........................................................................................................... 12

*Folgelstrom v. Lamps Plus, Inc.*,
  195 Cal. App. 4th 986 (2011) ........................................................................................ 1, 8, 9

*Ribas v. Clark*,
  38 Cal. 3d 355 (1985) .............................................................................................................. 3

*Rogers v. Ulrich*,
  52 Cal. App. 3d 894 (1975) ..................................................................................................... 7

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
  No. 16-MD-02752-LHK, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) .......................... 1, 10

**STATE STATUTES**

Cal. Bus. & Prof. Code § 17200 ................................................................................................ 10, 11

Cal. Penal Code § 631 ............................................................................................................ 1, passim

## I. INTRODUCTION

Plaintiffs seek to hold Defendants liable for maintaining an accurate record of (1) information Plaintiffs voluntarily submitted that was necessary to provide the insurance quotes they requested and (2) their consent to be contacted under the TCPA. Plaintiffs' Opposition ("Opp.") confirms they do not and cannot state a plausible claim for relief. The operative complaint, Dkt. 18 ("FAC"), which Plaintiffs already have amended, should be dismissed with prejudice.

Plaintiffs' Section 631 claim fails because they do not plausibly allege that ActiveProspect intercepted their communications contemporaneously with those communications being "*in transit*" to their intended recipient, i.e., Prudential. Cal. Penal Code § 631(a) (emphasis added). Plaintiffs argue that Section 631 does not require such a contemporaneous interception, but rather that they need only allege interception of communications that "were sent from California, where [Plaintiffs] were typing and clicking." Opp. at 4. That argument would read "*being* sent" out of the statute and improperly transform Section 631 into a statute of "extraordinary breadth." *Adler v. Community.com, Inc.*, No. 2:21-cv-02416-SB-JPR, 2021 WL 4805435, at *4 (C.D. Cal. Aug. 2, 2021). Plaintiffs must plausibly allege that Defendants "acted to learn the contents of the messages while they were, in a technical sense, in transit or in the process of being" sent. *Id*. Plaintiffs' failure to make any such allegation requires dismissal of their Section 631 claim.

Plaintiffs' constitutional privacy claim fails because they do not allege, as they must, that Defendants' collection and "*use* of plaintiff's information was highly offensive." *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 993 (2011). Collecting responses to webform questions to provide a life insurance quote *that each Plaintiff requested* and verifying TCPA consent are not highly offensive, egregious breaches of the social norms. On the contrary, Defendants' use of TrustedForm benefits consumers, website owners, and the courts by deterring frivolous TCPA claims.

Plaintiffs' UCL claims fail because Plaintiffs do not allege, as they must to have UCL standing, that they "personally lost money or property as a result of" Defendants' conduct. *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2017 WL 3727318, at

*20 (N.D. Cal. Aug. 30, 2017) (quotations omitted).  Plaintiffs allege that the verification of their consent to be contacted increased the value of the leads *to Prudential*, but that alleged increase in value did not correspond to any loss to Plaintiffs of money or property.  Even if Plaintiffs could plead UCL standing (which they cannot), their failure to plead a predicate violation of law or an impact on competition means they have no claim under the UCL's "unlawful" and "unfair" prongs.

Plaintiffs already amended their complaint in response to Defendants' arguments, and Plaintiffs have not identified any new allegations that would save their claims.  Defendants respectfully request that the Court dismiss the FAC with prejudice.

## II. PLAINTIFFS' SECTION 631 CLAIM FAILS

### A. Plaintiffs Have Not Plausibly Alleged Their Communications Were Intercepted Contemporaneous With Their Transmission To Prudential

To state a claim under Section 631(a)'s second prong, Plaintiffs must plausibly allege the interception of a communication "in transit" to the intended recipient—here, Prudential.  Cal. Penal Code § 631(a).  An interception under Section 631(a), as under the federal Wiretap Act (with which Section 631(a) is construed "coextensive[ly]")*,* requires "acquisition *contemporaneous* with transmission."  *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (emphasis added); *In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1227–28 n.9  (C.D. Cal. 2017); *Pena v. GameStop, Inc.*, No. 22-CV-1635 JLS (MDD), 2023 WL 3170047, at *5 (S.D. Cal. Apr. 27, 2023).  As "[c]ourts have explained … the defendants' actions must 'halt the transmission of the messages to their intended recipients."  *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 952 (N.D. Cal. 2014) (quotations omitted); *id*. at 954 ("The analysis for a violation of CIPA is the same as that under the federal Wiretap Act.").

Plaintiffs argue that Section 631 sets a different test, Opp. at 4–7, but their argument would rewrite the statute.  Specifically, Plaintiffs argue they "need not show that their communications were captured while 'in transit,'" but only that their communications "*were sent from* California, where they were typing and clicking."  *Id*. at 4 (emphasis added).  But Plaintiffs' position omits a critical word:  Section 631 does not refer to the interception of a "sent" (or "received")

communication, but to the interception of a communication that is "*in transit*" or is "*being sent from*" California. *Ribas v. Clark*, 38 Cal. 3d 355, 360 (1985) (quoting Cal. Penal Code § 631(a)). Eliminating the word "being" before "sent" would radically expand Section 631 to apply so long as Plaintiffs typed their messages in California.

*Adler* properly rejected a similar attempt to rewrite Section 631(a). The plaintiffs there argued it was sufficient for Section 631 to allege "nonconsensual access of communications '*received* at any place within this state.'" 2021 WL 4805435, at *4. But the court held that reading "section 631 to prohibit access to any communications received in California . . . would be an interpretation of extraordinary breadth." *Id*. at *4. The court emphasized that Section 631(a) only "imposes liability for accessing a message '*being* sent from, or received' in California." *Id.* (quoting § 631(a)). The court dismissed the Section 631 claim because "there [was] no plausible allegation that Defendant acted to learn the contents of the messages while they were, *in a technical sense*, *in transit or in the process of being* received." *Id*. (emphasis added)

The cases Plaintiffs cite do not support rewriting Section 631 to eliminate the word "being" or the statute's requirement of an interception contemporaneous with the message's transmission to its intended source. *See* Opp. at 4–5. The discussion that Plaintiffs quote in *Revitch v. New Moosejaw, LLC*, No. 18-cv-06827-VC, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) (Opp. at 4), dealt with the defendant's argument that it was a party to the plaintiffs' communication, not the question whether a communication was halted in transit to the website operator. *Id.* at *2.

Citing *Konop*, Plaintiffs argue their communications were "in transit," and could be intercepted, at any point before those communications were "in storage" with Prudential. Opp. at 6. *Konop* does not say that. *Konop* says that for a communication to be "intercepted," "it must be acquired *during* transmission, not while it is in electronic storage." *Konop*, 302 F.3d at 878 (emphasis added). Contrary to Plaintiffs' argument, *Konop* did not say a communication is in transit up until the point when it has been received and stored by the intended recipient. The court actually said the language and structure of the federal statute made clear that electronic

communications accessed while in "en route storage"—which is before they reach their final destination—are not "intercept[ed]" under the Wiretap Act. *Id.* at 879 n.6 (emphasis added).[1]

Plaintiffs do not allege facts showing their communications were intercepted contemporaneously with those communications being "in transit" or "being sent" to their intended recipient (Prudential). Citing ActiveProspect's patent, Plaintiffs allege that ActiveProspect recorded their communications "during the communication session." FAC ¶ 30. But the "communication session" covers the entire period from the time Plaintiffs accessed Prudential's webform to the time they completed it. The allegation that ActiveProspect recorded Plaintiffs' communications at some point "during" that session does not show a contemporaneous acquisition of those communications while they were "in transit" or "being sent" to Prudential. *See, e.g., In re Vizio*, 238 F. Supp. 3d at 1228 & n.9; *Garcia*, 2006 WL 1821232, at *4; *Pena*, 2023 WL 3170047, at *6 (granting motion to dismiss Section 631 claim where plaintiff did not "state facts to plausibly support … that the communications in question were acquired 'in transit' such that they were 'intercepted' under CIPA").

While Plaintiffs selectively quote from ActiveProspect's patent, they fail to refute that the patent's illustration of the patented technology (alleged to be TrustedForm) does not show the technology "halt[ing] the transmission of" a website visitor's communications. *NovelPoster*, 140 F. Supp. 3d at 952 (quoting *Exec. Sec. Mgmt., Inc. v. Dahl*, 830 F. Supp. 2d 883, 904 (C.D. Cal. 2011)).[2] Section 631(a) applies only if the interception occurs during the exceedingly "narrow

---

[1] Other cases Plaintiffs cite likewise are inapposite. *See* Opp. at 5. For example, in *Alhadeff v. Experian Info. Sols., Inc.*, 541 F. Supp. 3d 1041, 1044 (C.D. Cal. 2021), the defendant did not dispute that the communications had been intercepted while in transit. In *Brahmana v. Lembo*, No. C-09-00106 RMW, 2009 WL 1424438, at *3 (N.D. Cal. May 20, 2009), the court considered only whether the defendant's use of a key logger "affect[ed] interstate commerce," not whether it intercepted the plaintiff's communications. And in *Byrd v. Aaron's, Inc.*, No. C.A. 11-101, 2012 WL 12887775, at *7 (W.D. Pa. Feb. 17, 2012), the plaintiff alleged that the defendant installed monitoring software on his rent-to-own computer that secretly "captured and sent" to the defendant's server the keystrokes he entered "while [he was] communicating with" another website, an allegation of contemporaneity that Plaintiffs do not make here.

[2] Plaintiffs are wrong that they, but not Defendants, are permitted to rely on the patent. *See* Opp. at 7–8. As explained in Defendants' unopposed Request for Judicial Notice (Dkt. 22), the patent is subject to judicial notice both because Plaintiffs "incorporated [it] into the" FAC, *Coto*

window" in which the communication is "in transit" to the recipient, *NovelPoster*, 140 F. Supp. 3d at 951–52, which the patent does not show happening.

Plaintiffs also cite pages from ActiveProspect's website, but those pages do not make plausible an allegation of a contemporaneous interception. For example, Plaintiffs say that ActiveProspect has described the end result of TrustedForm's recording as providing a "'moment-by-moment replay' of what occurred on" the lead generator's (here, Prudential's) website. Opp. at 6. What TrustedForm allegedly shows during a *replay* of the user's website visit does not make it plausible that the recording was contemporaneous with a communication being sent from California or in transit to the lead generator.

Plaintiffs also allege that ActiveProspect's website says TrustedForm's "recording … begins *the moment* a user accesses or interacts with a webpage using TrustedForm." Opp. at 6 (quoting FAC ¶ 29 (emphasis added)). The webpage, which the Court may judicially notice, does not say that, much less that ActiveProspect's TrustedForm software "halt[s] the transmission of" a website visitor's communications to Prudential. *NovelPoster*, 140 F. Supp. 3d at 952. *See* Request for Judicial Notice in Support of Reply ("RJN ISO Reply"), Ex. A.

Plaintiffs' reliance on the Sixth Circuit's decision in *Luis v. Zang*, 833 F.3d 619 (6th Cir. 2016), also is misplaced. *See* Opp. at 5–6. The court there purported to agree with the Ninth Circuit and other courts that, for there to be an "interception," "the acquisition of a communication must be contemporaneous with its transmission" and "must … *catch the communication 'in flight'* before the communication comes to rest[.]" *Luis*, 833 F.3d at 628–29 (emphasis added). The court found sufficient allegations that the alleged third party could review communications "in near real-time, even while the person [in plaintiff's position] is still using the computer," and "without regard for whether a copy is ever placed in the storage of the [intended recipient's] computer." *Id.* at 631. Neither of these allegations, however, nor Plaintiffs' allegations here, plausibly allege that the claimed interceptor "caught" or "halted" a communication on its path

---

*Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010), and because patents generally are "'matter[s] of public record and the proper subject of judicial notice.'" *X One, Inc. v. Uber Techs., Inc.*, 239 F. Supp. 3d 1174, 1182 n.1 (N.D. Cal. 2017).

from the plaintiff to the intended recipient. *See Konop*, 302 F.3d at 878 (construction of "intercept" in Wiretap Act "is consistent with the ordinary meaning of 'intercept,' which is 'to stop, seize, or interrupt in progress or course before arrival'" (quoting Webster's Ninth New Collegiate Dictionary 630 (1985))).

In sum, Plaintiffs have failed to plausibly allege that ActiveProspect intercepted their communications with Prudential contemporaneous with those communications being "in transit" or "being sent" to Prudential. Plaintiffs' failure to plead these critical facts requires dismissal of their Section 631 claim.

### B. Plaintiffs Do Not Plausibly Allege Facts Showing ActiveProspect Was A "Third Party" Rather Than An Extension Of Prudential

Plaintiffs argue that Defendants provide no grounds for the Court to reach a different conclusion on the "third party" issue than it did on the motion to dismiss the *Javier* complaint. Opp. at 9–10. Defendants acknowledged this Court's ruling, but in order to present arguments not resolved in *Javier* (and in all events to preserve this issue), Defendants asked the Court to consider their arguments afresh. Mot. to Dismiss FAC at 10–11. Plaintiffs fail to refute these arguments.

First, finding ActiveProspect to be an extension of Prudential would not "read[] a use requirement into [Section 631(a)'s] second prong," *Javier*, Dkt. 75 at 10, because the question is not whether ActiveProspect actually used Plaintiffs' information, but whether it undertook the alleged *recording* of the data on its own or on Prudential's behalf. *See Williams v. What If Holdings, LLC*, No. C 22-03780 WHA, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022) ("Plaintiff makes no allegation that ActiveProspect used her information in any way, so the third clause of Section 631(a) is inapplicable here."). Plaintiffs are wrong that Defendants' argument adds an extra-textual "intent" element to Section 631(a). *See* Opp. at 9–10. Determining whether ActiveProspect was acting as an extension of Prudential or as a third party is inherent in determining whether the alleged "eavesdropping" was undertaken by a covered "person." *See Williams*, 2022 WL 17869275, at *3; *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832 (N.D. Cal. 2021).

Second, Plaintiffs do not plead facts distinguishing TrustedForm from a tape recorder used by an indisputable party to the communication (Prudential).  Mot. to Dismiss FAC at 10 (citing *Rogers v. Ulrich*, 52 Cal. App. 3d 894 (1975)).  Plaintiffs argue their allegations match those in *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1081 (C.D. Cal. 2021), which this Court cited in *Javier* as grounds for rejecting the tape recorder analogy in that case.  Opp. at 10 n.2; *Javier*, Dkt. 75 at 11.  But in *Yoon*, the plaintiff alleged not only that the software provider "capture[d]" and "store[d]" "her real-time data," but that it "*interpret[ed]*" that data, "which extend[ed] beyond the ordinary function of a tape recorder."  *Yoon*, 549 F. Supp. 3d at 1081.  Plaintiffs do not allege that ActiveProspect interpreted or analyzed their information or did anything with it other than record and store it.  *See, e.g.*, FAC ¶¶ 2 ("adding ActiveProspect's javascript … permits both ActiveProspect and the website owner *to record* a visitor's keystrokes and other actions") (emphasis added); *id.* ¶ 6 ("ActiveProspect recorded Plaintiffs' electronic communications"); *id.* ¶ 21 (TrustedForm "records a website user's activity"); *id.* ¶ 24 (TrustedForm "help[s] businesses authenticate user interactions … including, for example, by recording a user's responses"); *id.* ¶ 26 (describing "data that TrustedForm can acquire"); *id.* ¶ 27 (TrustedForm "capture[s] the data submitted in the form"); *id.* ¶ 28 (the TrustedForm "code allows ActiveProspect to record" users' communications); *id.* ¶ 29 (allegations regarding ActiveProspect's "recording"); *id.* ¶ 34 (TrustedForm "collects and stores information").  Plaintiffs allege that ActiveProspect functions as the internet equivalent of a tape recorder held by Prudential, and not as a third party collecting and storing information for its own purposes.

Third, Plaintiffs do not dispute that they plead no facts showing that ActiveProspect had the "right" or "capability" to use their information for any independent purpose.  Opp. at 10; *see Javier*, Dkt. 75 at 10–11.  Plaintiffs point to their allegation that ActiveProspect's "standard form End User License Agreement ('EULA')" would allow ActiveProspect "to use *aggregate* data" for some purposes.  FAC ¶ 35 (emphasis added); Opp. at 10.  But Plaintiffs do not allege the EULA applied here, or even if it did, that this would show that ActiveProspect made any use of Plaintiffs' individual information for its own benefit.

Defendants respectfully submit that the Court should find that ActiveProspect is alleged here to do no more than function as an extension of Prudential, and therefore that Plaintiffs have failed to plead a Section 631(a) claim.

## III. PLAINTIFFS' CONSTITUTIONAL PRIVACY CLAIM FAILS

Plaintiffs' Opposition confirms they do not and cannot plead conduct "'so serious . . . as to constitute an egregious breach of the social norms' such that the alleged breach" of their right to privacy is "'highly offensive.'"  Mot. to Dismiss FAC at 11 (quoting *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020)).

First, Plaintiffs have failed to identify any highly offensive *use* of their information that would support their constitutional privacy claim.  *See Folgelstrom*, 195 Cal. App. 4th at 993 ("[W]e have found no case which imposes liability based on the defendant obtaining unwanted access to the plaintiff's private information which did not also allege that the *use* of plaintiff's information was highly offensive.").  Plaintiffs' cited authorities all involved allegations that defendants sold plaintiffs' sensitive information for use in advertising.  Opp. at 12–13; *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (plaintiffs alleged the defendant used plug-ins to track logged-out users' browsing histories when they visited third-party websites and then compiled the browsing histories into personal profiles that were sold to advertisers); *Yunker v. Pandora Media, Inc.*, No. 11-CV-03113 JSW, 2013 WL 1282980, at *1 (N.D. Cal. Mar. 26, 2013) (plaintiffs alleged the defendant's mobile app was integrated with advertising libraries that collected information that was "later packaged and sold by the advertising libraries"); *In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 948 (N.D. Cal. 2022) (plaintiffs alleged that "Google sold and disclosed confidential information such as the content of [plaintiffs'] internet communications"); *Katz-Lacabe v. Oracle America, Inc.*, No. 22-cv-04792-RS, 2023 WL 2838118, at *5 (N.D. Cal. Apr. 6, 2023) (plaintiffs alleged Oracle "amass[ed] 'vast amounts of personal data . . . the result of which is the creation of a 'cradle-to-grave' profile . . . which 'can be used to further invade Plaintiffs' privacy' by 'allowing third parties to learn intimate details of [Plaintiffs'] lives, and target them for advertising"); *In re Google Inc.*, No. 13-MD-02430-LHK,

2013 WL 5423918, at *14 (N.D. Cal. Sept. 26, 2013) (plaintiffs alleged Google had intercepted their email communications to create user profiles and provide targeted advertising).

Plaintiffs, in contrast, do not and cannot allege that ActiveProspect sold their data for advertising purposes or otherwise monetized it.  Opp. at 12–13.  ActiveProspect's TrustedForm tool simply verified Plaintiffs' responses on Prudential's website, including their acceptance of Prudential's Privacy Notice and their consent to be contacted.  Mot. to Dismiss FAC at 12–13.  Plaintiffs' allegations reflect that Prudential transferred the information they submitted only for purposes of providing Plaintiffs with the life insurance quotes they requested.  *Id.* at 1–2.  As a matter of law, Defendants' alleged use of Plaintiffs' information was not highly offensive or an egregious breach of the social norms.  *See Folgelstrom*, 195 Cal. App. 4th at 993; *see also Sunbelt Rentals, Inc. v. Victor*, 43 F. Supp. 3d 1026, 1036 (N.D. Cal. 2014) (dismissing constitutional privacy claim where the plaintiff did not plead facts showing that the defendant's "*use* of the intercepted communications was highly offensive" (emphasis added)); *Mitchell v. Regional Serv. Corp.*, No. C 13-04212 JSW, 2014 WL 12607809, at *5 (N.D. Cal. Apr. 23, 2014) (defendant's physical trespass onto plaintiff's property while taking photos of occupants was not an egregious breach of social norms where defendant used the information for legitimate business purposes (to remove the occupants because of a mortgage default)).

Plaintiffs also are wrong that the alleged collection of their information was itself "egregious."  *See* Opp. at 11–12.  Plaintiffs' reliance on *Katz-Lacabe* is misplaced.  The court there said it was a "close question" whether defendants' purported collection of "sensitive health" information stated a privacy claim.  *Katz-Lacabe*, 2023 WL 2838118, at *7.  But in that case, Oracle allegedly extracted information about plaintiffs' "health and wellness" from their online activities.  *Id.*  Here, in contrast, Plaintiffs *voluntarily provided* information regarding their medical history because that information was necessary to generate the life insurance quote they requested.  Mot. to Dismiss FAC at 12.  Without that information, Plaintiffs' insurance quotes would be inaccurate.  There is nothing offensive or egregious about obtaining the information that is necessary to provide a party the life insurance it requests.  *See id.*

Because Plaintiffs have failed to plead facts showing that Defendants' collection and use of the information Plaintiffs voluntarily provided constituted an egregious or highly offensive breach of the social norms, their constitutional privacy claim fails.

## IV. PLAINTIFFS FAIL TO STATE A VALID UCL CLAIM

### A. Plaintiffs' Opposition Confirms That They Lack UCL Standing

To establish UCL standing, "Plaintiffs must show that they *personally* lost money or property as a result of the unfair competition." *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 WL 3727318, at *20 (emphasis added) (quotations omitted). Plaintiffs' bald allegation that they suffered a "dimin[ution of] the value of" their information, Opp. at 13–14 (citing FAC ¶ 108), is a legal conclusion unsupported by any well-pleaded fact. *Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 604 (N.D. Cal. 2021) (alleged "diminution in the value of the plaintiff's personal location data" was insufficient to establish UCL standing); *see Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1093 (N.D. Cal. 2018) ("[T]he sharing of names, user IDs, location and other personal information does not constitute lost money or property for UCL standing purposes."). Plaintiffs' allegation that their information has value to Prudential because it provides an insurance lead, Opp. at 13, ignores that *that is exactly why Plaintiffs visited Prudential's website*: to get an insurance quote. In any event, Plaintiffs' allegation does not show that Prudential's use of their information to provide the requested insurance quotes diminished the value of their information, as UCL standing requires. *See In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2017 WL 3727318, at *20.

Plaintiff's reliance on *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 600, does not cure their failure to plead facts showing UCL standing. *See* Opp. at 13. That case did not involve UCL claims, and the court never considered the question of UCL standing. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 600. Plaintiffs' quotation of language from that case regarding "unjustly earned profits" likewise is inapposite. *See* Opp. at 13 (quoting *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 600). That language referred to the plaintiffs' claim that they had Article III standing, which is distinct from UCL standing, based on allegations that Facebook had appropriated the value of their browsing history. *In re Facebook, Inc. Internet*

*Tracking Litig.*, 956 F.3d at 600 (plaintiffs had "a legal interest in unjustly earned profits" solely for purposes of Article III standing). The *Facebook* court never considered whether the plaintiffs' allegations regarding "unjustly earned profits" showed that they had personally lost money or property, as required for UCL standing. *Id.* In any event, a plaintiff's browsing history is in no way similar to the webform information Plaintiffs here voluntarily provided, and there is nothing unjust about Prudential using Plaintiffs' information for exactly the purpose for which Plaintiffs provided it. *See id.*

Plaintiffs' conclusory argument that Prudential "relies on TrustedForm because it is designed to increase the value of leads generated through user information," Opp. at 13, also is a non-sequitur. ActiveProspect's TrustedForm tool provides Prudential value by providing proof of consent and a defense to baseless TCPA claims. TrustedForm makes a lead "more valuable" to Prudential because it guarantees the lead buyer will not have to respond to false TCPA claims. The value *that* service provides takes nothing away from Plaintiffs, who provided their information voluntarily to get an insurance quote. "[C]laiming that a defendant 'may have gained money through its sharing or use of the plaintiffs' information' is 'different from saying the plaintiffs lost money.'" *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 840 (N.D. Cal. 2020) (quoting *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 804 (N.D. Cal. 2019)). Alleging that Prudential derives value from selling leads who have consented to be contacted does not show that Plaintiffs lost any money or property. *See id.* Because Plaintiffs fail to allege facts showing that they personally suffered any economic loss, their UCL claims must be dismissed for lack of standing.

### B. Plaintiffs Independently Fail To State A Claim Under The UCL's "Unlawful" And "Unfair" Prongs

Plaintiffs' claim under the UCL's "unlawful" prong is based on their Section 631 and constitutional privacy claims. FAC ¶ 104. As explained above and in the Motion to Dismiss, both of those claims fail. *See* Mot. to Dismiss FAC at 14–15. And "[s]ince those claims fail, Plaintiffs do not," and cannot, "allege a claim under UCL's unlawful prong." *Hammerling v. Google LLC*, No. 21-CV-09004-CRB, 2022 WL 2812188, at *15 (N.D. Cal. July 18, 2022) (Breyer, J.); *see also*

*Hammerling v. Google LLC*, No. 21-cv-09004-CRB, 2022 WL 17365255, at *12 (N.D. Cal. Dec. 1, 2022) (Breyer, J.) (dismissing with prejudice amended claim under the UCL's "unlawful" prong).

Plaintiffs next assert that their claim under the UCL's "unfair" prong meets the "tethering" test used to determine whether a business practice is "unfair." Opp. at 14. Under this test, conduct is "unfair" under the UCL *only* if tethered to "some actual or threatened impact on competition." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 186–87 (1999). But Plaintiffs do not allege anything resembling a competitive harm. "[D]istrict courts have dismissed UCL claims where the plaintiff pled conclusory allegations of significant harm to competition," just as Plaintiffs have done here. *See Snapkeys, Ltd v. Google LLC*, No. 19-CV-02658-LHK, 2020 WL 6381354, at *4 (N.D. Cal. Oct. 30, 2020). Plaintiffs' claims under the UCL's "unlawful" and "unfair" prongs are independently subject to dismissal.

## V. PLAINTIFFS HAVE AMENDED ONCE, AND ANY FURTHER AMENDMENT WOULD BE FUTILE

"A party is not entitled to an opportunity to amend his complaint if any potential amendment would be futile." *Zadrozny v. Bank of N.Y. Mellon*, 720 F.3d 1163, 1173 (9th Cir. 2013) (alteration omitted). Plaintiffs have already amended after Defendants explained the deficiencies in their original complaint. Plaintiffs do not explain what they would add to their already amended complaint to save their claims. Opp. at 14; *see El Dorado Cmty. Serv. Ctr. v. Cnty. of L.A.*, No. CV 15-7998-JFW (MRWx), 2017 WL 6017297, at *3 (C.D. Cal. Jan. 3, 2017) ("Plaintiff has already amended his Complaint once and has failed to provide the Court with any facts or argument that indicate leave to amend would not be futile."). The Court should dismiss the FAC with prejudice.

## VI. CONCLUSION

Defendants respectfully request that the Court dismiss Plaintiffs' FAC with prejudice.

DATED: May 17, 2023

MUNGER, TOLLES & OLSON LLP

By: */s/ Kelly M. Klaus*
   KELLY M. KLAUS

*Attorneys for Defendants*