1    Dena C. Sharp (State Bar No. 245869)
     dsharp@girardsharp.com
2    Simon S. Grille (State Bar No. 294914)
     sgrille@girardsharp.com
3    Nina R. Gliozzo (State Bar No. 333569)
     ngliozzo@girardsharp.com
4    Jordan Isern (State Bar No. 343159)
     jisern@girardsharp.com
5
     **GIRARD SHARP LLP**
6    601 California Street, Suite 1400
     San Francisco, CA 94108
7    Telephone: (415) 981-4800
     Facsimile: (415) 981-4846
8

9    *Attorneys for Plaintiffs*

10

11

12                      UNITED STATES DISTRICT COURT

13                     NORTHERN DISTRICT OF CALIFORNIA

14                         SAN FRANCISCO DIVISION

15

16   VALERIE TORRES and RHONDA            Case No. 3:22-cv-07465-CRB
     HYMAN, individually and on behalf of all
17   others similarly situated,           **PLAINTIFFS' NOTICE OF MOTION AND
                                           MOTION FOR CLASS CERTIFICATION,**
18              Plaintiffs,                **AND MEMORANDUM OF LAW IN
                                           SUPPORT THEREOF**
19   v.
                                           **Judge:**   **Hon. Charles R. Breyer**
20   PRUDENTIAL FINANCIAL, INC.,           **Date:**    **Oct. 18, 2024**
     ACTIVEPROSPECT, INC., and             **Time:**    **10:00 am**
21   ASSURANCE IQ, LLC,                    **Ctrm.:**   **6**

22              Defendants.

23

24                  __PROVISIONALLY FILED UNDER SEAL__

25                        __REDACTED VERSION__

26

27

28

1

## TABLE OF CONTENTS

2
**Page**

3  TABLE OF CONTENTS .................................................................................................. I

4  TABLE OF AUTHORITIES ............................................................................................ II

   NOTICE OF MOTION AND MOTION .......................................................................... V

5  I.      INTRODUCTION ................................................................................................ 1

6  II.     STATEMENT OF FACTS .................................................................................... 2

7          A.      The TrustedForm Software. ....................................................................... 2

8          B.      Defendants' Use the TrustedForm Software on Prudential's Website to
                   Intercept Visitors' Communications Without Their Consent. ................... 3

9  III.    LEGAL STANDARD ........................................................................................... 5

10 IV.     ARGUMENT ......................................................................................................... 5

11         A.      Plaintiffs Meet the Requirements of Rule 23(a). ...................................... 5

12                 1.      The Class is Sufficiently Numerous. ............................................. 5

                   2.      The Commonality Requirement is Met. ......................................... 6
13
                   3.      Plaintiffs' CIPA Claims Are Typical. ............................................ 6
14
                   4.      Plaintiffs and Their Counsel Satisfy the Adequacy Requirement. .............. 7
15         B.      The Predominance and Superiority Requirements of Rule 23(b)(3) Are
                   Met. ............................................................................................................. 8
16
                   1.      Common Issues Predominate. ........................................................ 8
17
                   2.      A Class Action Is the Superior Method of Adjudicating the Claims
18                         of the Proposed Class. ................................................................. 14

19 V.      CONCLUSION .................................................................................................... 15

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

**Page**

**Cases**

3

4

*A. B. v. Hawaii State Dep't of Educ.*,
   30 F.4th 828 (9th Cir. 2022) ...................................................................6

*Akaosugi v. Benihana Nat'l Corp.*,
   282 F.R.D. 241 (N.D. Cal. 2012)...............................................................5

5

6

*Alcazar v. Fashion Nova, Inc.*,
   2022 WL 19975445 (N.D. Cal. Sept. 6, 2022) ...................................13, 15

7

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013)...................................................................................5

8

9

*Bellinghausen v. Tractor Supply Co.*,
   303 F.R.D. 611 (N.D. Cal. 2014)...............................................................14

10

*Bergstrom v. Zions Bancorporation, N.A.*,
   78 Cal. App. 5th 387 (2022) .....................................................................12

11

12

*Briseno v. ConAgra Foods, Inc.*,
   844 F.3d 1121 (9th Cir. 2017) ...................................................................15

13

*Campbell v. Facebook, Inc.*,
   951 F.3d 1106 (9th Cir. 2020) ...................................................................14

14

15

*Castro v. ABM Indus., Inc.*,
   325 F.R.D. 332 (N.D. Cal. 2018)................................................................7

16

*Chapman College v. Wagener*,
   45 Cal.2d 796 (1955) ................................................................................12

17

18

*Chinitz v. Intero Real Est. Servs.*,
   2020 WL 7391299 (N.D. Cal. July 22, 2020)............................................6

19

*D'Angelo v. FCA US, LLC*,
   2024 WL 1625771 (S.D. Cal. Mar. 28, 2024)............................................9

20

*Doe v. Mindgeek USA Inc.*,
   2023 WL 8126845 (C.D. Cal. Nov. 17, 2023) ...........................................14

21

22

*DZ Rsrv. v. Meta Platforms, Inc.*,
   96 F.4th 1223 (9th Cir. 2024) ....................................................................8

23

*Flowers v. Twilio, Inc.*,
   2018 WL 10758024 (Cal. Super. Jan. 02, 2018)...................................9, 11

24

25

*Gold v. Midland Credit Mgmt., Inc.*,
   306 F.R.D. 623 (N.D. Cal. 2014)...............................................................13

26

*Gutierrez v. Converse Inc.*,
   2023 WL 8939221 (C.D. Cal. Oct. 27, 2023) ............................................12

27

*Hodges v. Akeena Solar, Inc.*,
   274 F.R.D. 259 (N.D. Cal. 2011)...............................................................7

28

*In re Facebook Biometric Info. Priv. Litig.*,

326 F.R.D. 535 (N.D. Cal. 2018) ...................................................................15

*In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prod. Liab. Litig.*,
609 F. Supp. 3d 942 (N.D. Cal. 2022) ..............................................................8

*In re Nat'l Football League's Sunday Ticket Antitrust Litig.*,
2023 WL 1813530 (C.D. Cal. Feb. 7, 2023) ....................................................14

*In re Toys R Us-Delaware, Inc.*,
300 F.R.D. 347 (C.D. Cal. 2013) .....................................................................13

*In re Woodbridge Invs. Litig.*,
2020 WL 4529739 (C.D. Cal. Aug. 5, 2020) ...................................................12

*In re Yahoo Mail Litig.*,
308 F.R.D. 577 (N.D. Cal. 2015) .......................................................................6

*Javier v. Assurance IQ, LLC*,
2022 WL 1744107 (9th Cir. May 31, 2022) ....................................................10

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) .........................................................8, 11

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) .............................................................10

*Kristensen v. Credit Payment Servs.*,
12 F. Supp. 3d 1292 (D. Nev. 2014) ................................................................13

*Martinez v. Blu Prod., Inc.*,
2019 WL 12838199 (C.D. Cal. Oct. 3, 2019) ..............................................6, 13

*Negro v. Superior Ct.*,
230 Cal. App. 4th 879 (2014) ..........................................................................10

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022) ..............................................................................8

*Raffin v. Medicredit, Inc.*,
2017 WL 131745 (C.D. Cal. Jan. 3, 2017)......................................................15

*Rodriguez v. Google LLC*,
2024 WL 38302 (N.D. Cal. Jan. 3, 2024) ..........................................................6

*Rodriguez v. Hayes*,
591 F.3d 1105 (9th Cir. 2010) ...........................................................................6

*Romero v. Securus Techs., Inc.*,
331 F.R.D. 391 (S.D. Cal. 2018) ...........................................................11, 14, 15

*Scholl v. Mnuchin*,
489 F. Supp. 3d 1008 (N.D. Cal. 2020) .............................................................7

*Smith v. Pathway Fin. Mgmt., Inc.*,
2012 WL 12884448 (C.D. Cal. Nov. 26, 2012) ...............................................15

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) .............................................................................7

*Takiguchi v. MRI Int'l, Inc.*,
  2016 WL 1091090 (D. Nev. Mar. 21, 2016) ............................................................13

*United Steel, Paper & Forestry, Rubber, Mfg. Energy v. ConocoPhillips Co.*,
  593 F.3d 802 (9th Cir. 2010) ....................................................................................5

*Valentino v. Carter-Wallace, Inc.*,
  97 F.3d 1227 (9th Cir. 1996) ..................................................................................14

*Vaquero v. Ashley Furniture Industries, Inc.*,
  824 F.3d 1150 (9th Cir. 2016) ................................................................................13

*Vizcarra v. Unilever United States, Inc.*,
  2023 WL 2364736 (N.D. Cal. Feb. 24, 2023) ........................................................14

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)...................................................................................................6

*Wilcox v. Swapp*,
  330 F.R.D. 584 (E.D. Wash. 2019) .........................................................................13

*Wolin v. Jaguar Land Rover N. Am., LLC*,
  617 F.3d 1168 (9th Cir. 2010) ................................................................................15

*Yoon v. Lululemon USA, Inc.*,
  549 F. Supp. 3d 1073 (C.D. Cal. 2021)....................................................................9

*Zaklit v. Nationstar Mortg. LLC*,
  2017 WL 3174901 (C.D. Cal. July 24, 2017) .....................................................9, 15

**Statutes**

Cal. Civ. Code, § 2332.................................................................................................12

Cal. Pen. Code § 631 ....................................................................................................1

Cal. Pen. Code § 631(a).........................................................................6, 7, 8, 9, 10, 12, 13

**Rules**

Fed. R. Civ. P. 23(a) ................................................................................................v, 1, 5

Fed. R. Civ. P. 23(a)(1)................................................................................................5

Fed. R. Civ. P. 23(a)(4)................................................................................................7

Fed. R. Civ. P. 23(b)(3) ........................................................................................v, 1, 14

Fed. R. Civ. P. 23(g) ................................................................................................7, 8

## NOTICE OF MOTION AND MOTION

**TO THE PARTIES AND THEIR ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE** that on October 18, 2024 at 10:00 am, before the Honorable Charles R. Breyer, plaintiffs Valerie Torres and Rhonda Hyman ("Plaintiffs") will and do hereby move the Court, pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), for an order certifying the following class:

> All natural persons who, while in California, visited Prudential.com, provided personal information on Prudential's form to receive a quote for life insurance, and for whom a TrustedForm Certificate URL associated with that website visit was generated from November 23, 2021 to December 13, 2022.

Excluded from the Class are Defendants, their employees, agents and assigns, and any members of the judiciary to whom this case is assigned, their respective court staff, the members of their immediate families, and Plaintiffs' counsel.

Plaintiffs will also move the Court to appoint them as class representatives and to appoint Girard Sharp LLP as Class Counsel.

This motion is based upon this Notice of Motion and Motion; the incorporated Memorandum of Law; the Expert Report of Professor Zubair Shafiq ("Shafiq Rpt."); the Declaration of Nina R. Gliozzo ("Gliozzo Decl.") and its exhibits; the Declarations of Plaintiffs Rhonda Hyman ("Hyman Decl.") and Valerie Torres ("Torres Decl."); and any argument that may be presented to the Court.

1

## I.      **INTRODUCTION**

Defendants Prudential Financial and its wholly owned subsidiary Assurance IQ installed ActiveProspect's "TrustedForm" software on Prudential's website, enabling ActiveProspect to intercept the communications of website visitors seeking life insurance quotes in real time, without the visitors' consent. The interception occurs keystroke by keystroke and discloses sensitive health information, among other personal details. Plaintiffs allege that in doing so, ActiveProspect violated the California Invasion of Privacy Act ("CIPA"), Cal. Pen. Code § 631, and Prudential and Assurance aided and abetted the violations. ActiveProspect created "session replay" videos showing each visitor's every interaction with Prudential's webpage, as if ActiveProspect watched over their shoulder as they filled out the webform.

Plaintiffs' Section 631 claims are well-suited for class treatment.[1] The requirements of Rule 23(a) are met because the Class includes tens of thousands of visitors to Prudential's website and their claims turn on common questions, including the basic question of whether ActiveProspect intercepted the contents of their communications with Prudential while "in transit" and whether Prudential and Assurance enabled these violations. Plaintiffs' claims are typical of the Class because all their claims arise from the alleged real time interception of their communications on Prudential's website without their consent. Plaintiffs have demonstrated that they will fairly and adequately represent the interests of the Class, and have retained experienced counsel.

The requirements of Rule 23(b)(3) also are satisfied. Predominance is met because the central questions for Plaintiffs' Section 631 claims focus on Defendants' conduct and the elements necessary to determine Defendants' liability as to the Class can be determined (up or down) all at once. ActiveProspect's software was installed and programmed on Prudential's site to automatically record all visitors to the webpage throughout the Class period. No Class member consented to the interception of their information because the Class is limited to the time period when Prudential did not disclose the use of TrustedForm on its website, and in any event the question of consent will be resolved by reference to common evidence of the disclosures on Prudential's website. Classwide damages can also be easily determined because CIPA provides

---

[1] Plaintiffs do not seek to certify their invasion of privacy claims.

1    statutory damages of $5,000 per violation.

2           Resolving Plaintiffs' claims through a class action is vastly superior to many individual

3    lawsuits. The potential statutory recovery under CIPA for any Class member pales in comparison to

4    the difficulty and costs of litigating the complex issues related to the TrustedForm software against

5    well-resourced defendants who have strongly contested their liability. A class proceeding will also

6    be manageable because class membership can be readily verified by reference to Defendants'

7    records, which include a list of all individuals whose communications with the relevant Prudential

8    page were intercepted by ActiveProspect.

9    **II.      STATEMENT OF FACTS**

10          **A.      The TrustedForm Software.**

11          ActiveProspect sells software called TrustedForm that allows it to automatically record a

12   website visitor's interactions with a webpage in real time. Gliozzo Decl., Ex. 4 (AP0000587).

13   Website owners can use this software by adding TrustedForm into the source code of their webpage,

14   which permits ActiveProspect to record a visitor's every keystroke, mouse movement, and other

15   actions on a webpage. *Id*. ActiveProspect shares that recording with website owners for a fee,

16   assembling a "session replay" video representation of a consumer's entire visit. *Id*. ActiveProspect

17   delivers that replay and other information about the visit in a document called a "TrustedForm

18   Certificate," and maintains a database of all the certificates and intercepted data in them. *Id.*

19          ActiveProspect originally invented TrustedForm to ████████████████████

20   ██████████████████████████████████████████████████████████

21   ██████████████████████████████████████. Ex. 5 (Rafferty Dep. at

22   185:8-24; 25:7-26:4). ActiveProspect later developed a second purpose for the software: ███

23   ██████████████████████████████████████████████████████████

24   ███████████████████████████ *Id.* at 185:8-24; 34:4-35:6. ActiveProspect markets itself as

25   ██████████████████████████████████████████████████████. *Id.*

26   at 193:5-14; Ex. 6 (AP0000874) (ActiveProspect's website, stating that "██████████████

27   ██████████████████████████████████"); Ex. 4 (similar).

28          Once embedded into a webpage's code, the TrustedForm software automatically records

1    visitor's actions on the page. Ex. 7 (AP0000610). ActiveProspect intercepts visitor inputs using

2    "event listeners," which are pieces of software code bundled within TrustedForm that listen for and

3    collect every keystroke, mouse movement, and mouse click in real time, and send that collected

4    data to ActiveProspect's servers every few seconds while the user's visit to the page is ongoing.

5    Ex. 2 (Shafiq Rpt. at ¶¶ 34-38, 53); Ex. 8 (AP0000039) (ActiveProspect's license agreement

6    describing TrustedForm as "intended to capture what was viewed by the site visitor on the Hosting

7    Page, as well as the site visitor's real-time interactions with the Hosting Page, for example, clicks,

8    mouse movements, and data inputs"). For example, when a visitor inputs her name into a webform,

9    TrustedForm intercepts each character as it is typed. ActiveProspect intercepts this information

10    even before the visitor has completed and submitted the webform to Prudential. *Id.* A link to the

11    recording of Plaintiff Valerie Torres' visit to Prudential's website is attached as Exhibit 3.

12        ActiveProspect retains records of communications intercepted by TrustedForm. Its CEO,

13    founder, and corporate designee testified that "[i]f TrustedForm is functioning properly, a

14    TrustedForm Certificate will be issued for every site visitor to the page where the TrustedForm

15    script is installed." Ex. 5 (Rafferty Dep. at 128:5-8). When a visitor navigates to a webpage with

16    TrustedForm, the code creates a unique identifier for the recording of that visit. *Id.* at 105:24-106:7.

17    ActiveProspect submits a URL link to the TrustedForm Certificate for that unique identifier to the

18    owner of the webform in parallel with the information inputted by the visitor. *Id.* at 106:23-07:10.

19    The existence of a Certificate URL thus indicates that the TrustedForm script successfully ran and

20    intercepted the user's communications while they were filling out the form. *Id.* at 112:4-11 ("as

21    long as a certificate is being generated on a page, then, generally speaking, there's some information

22    being captured."); Ex. 2 (Shafiq Rpt. at ¶¶ 20-24, 65). If the TrustedForm script was blocked or did

23    not function properly, no Certificate URL is generated. Ex. 9 (AP0000585) (describing reasons a

24    Certificate would not be generated); Ex. 5 (Rafferty Dep. at 134:6-25).

25       **B.**     **Defendants' Use the TrustedForm Software on Prudential's Website to Intercept Visitors' Communications Without Their Consent.**

26

27        During the Class period, Prudential offered consumers a quote for life insurance in minutes

28    if they filled out a webform on its website, at term.prudential.com ("the webform"). The webform

was launched in February 2021. Ex. 10 (Renz Dep. at 31:1-7). To obtain a quote, consumers had to enter private information about themselves and answer questions about their health history. Ex. 11 (PRU0002273) (showing questions on the webform); *see also* Ex. 3 (Torres replay). Working at the direction of Prudential, Assurance created the webform. Ex. 12 (Prudential's Responses and Objections to Plaintiffs' First Set of Requests for Admission at 3) ("Assurance IQ, at Prudential's request, was primarily responsible for the creation and maintenance of term.prudential.com"); *id.* at 5 ("Prudential Financial, Inc. had ultimate[] authority over term.prudential.com"). From its inception, Prudential and Assurance designed the webform to include TrustedForm, and the software has been included in the webform's code throughout the Class period of November 23, 2021 to December 13, 2022. Ex. 10 (Renz Dep. at 286:12-17). Assurance had prior experience using the software, and "implemented TrustedForm's script on the webform, knowing how it works." *Id.* Prudential executives were also aware of the software's functionality, *id.* at 43:6-44:8 (Doug Morrin, Chief Legal Officer for Prudential and Assurance IQ, knew how TrustedForm worked); 40:14-41:13 (Privacy Officer Ashley Westover is a shared executive); Ex. 13 (Bao Dep. at 169:11-170:11) (███████████████████████). Prudential also relied on Assurance in understanding and implementing the TrustedForm technology. Ex. 12 at 4.

Visitors' experiences on the webform did not materially change during the Class period. The information visitors must provide to get a life insurance quote, such as their medical history, medications, contact information, and more, remained consistent from the launch of the webform through the end of the Class period. Ex. 10 (Renz Dep. at 146:18-147:13); *see also* Ex. 11. TrustedForm also functioned in the same manner regardless of the visitor's browser, cookie settings, or whether they used a desktop or mobile device. Ex. 5 (Rafferty Dep. at 141:9-42:2).

None of the Defendants attempted to obtain prior consent during the Class period, when there was no disclosure on the Prudential webform itself informing visitors that a third party would record their communications on the form in real time. Ex. 10 (Renz Dep. at 157:4-22 (agreeing nothing at the start of webform would "purport to get [user's] consent to be recorded" by a third party). Prudential added a small banner purporting to provide this disclosure on December 14, 2022—after the class period. *Id.* at 162:13-18; Ex. 14 (showing banner). Prudential's corporate

designee admitted that in the Class period, "[o]n the web form itself, there's nothing that would tell users that ActiveProspect is a company who is operating software on the web page," and there is "no reference to TrustedForm anywhere on the web form." Ex. 10 (Renz Dep. at 283:15-284:23). Prudential's website included a link to its "privacy center" in the footer of the page (beneath several pages of small print), and the privacy center included links to Prudential's general privacy policy and California-specific privacy policy, which did not disclose the use of TrustedForm during the class period. *Id.* 268:9-276:11, 279:3-19, 281:21-282:3; Ex. 15 (Privacy Policy); Ex. 16 (CA Privacy Policy). And, to the extent the policies are relevant at all, they were unchanged during the class period and thus are common to every class member. Ex. 10 (Renz Dep. at 261:6-8, 200:3-20).

## III.   LEGAL STANDARD

At class certification, "the question is not whether the . . . plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met[.]" *United Steel, Paper & Forestry, Rubber, Mfg. Energy v. ConocoPhillips Co.*, 593 F.3d 802, 808 (9th Cir. 2010) (citation omitted). "Merits questions may be considered . . . only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).

## IV.   ARGUMENT

### A.   Plaintiffs Meet the Requirements of Rule 23(a).

#### 1.   The Class is Sufficiently Numerous.

The numerosity requirement of Rule 23(a) is met. There are tens of thousands of Class members, so "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity is generally satisfied when the proposed class contains at least 40 members. *See Akaosugi v. Benihana Nat'l Corp.*, 282 F.R.D. 241, 253 (N.D. Cal. 2012). Prudential, through Assurance, maintains a database that automatically saves the information provided by users who submit the webform at issue in this case. Ex. 10 (Renz Dep. at 114:17-21). These records show there are at least 49,457 individuals who submitted the webform during the Class period from California and for whom a TrustedForm Certificate URL was generated. Ex. 17 at 7-8.

**2.     The Commonality Requirement is Met.**

"The commonality requirement of Rule 23(a)(2) requires plaintiffs seeking class certification to show that their claims 'depend upon a common contention' that 'is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *A. B. v. Hawaii State Dep't of Educ.*, 30 F.4th 828, 839 (9th Cir. 2022) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). Commonality is "construed permissively" and it does not require that all questions of fact and law be common to the class or that they be answered in their favor. *Chinitz v. Intero Real Est. Servs.*, 2020 WL 7391299, at *8 (N.D. Cal. July 22, 2020) (citation omitted).

The common contentions in this case revolve around the TrustedForm session replay software. For instance, the question of whether the content of Plaintiffs' communications were intercepted while in transit by ActiveProspect is common across the Class. *See In re Yahoo Mail Litig.*, 308 F.R.D. 577, 591 (N.D. Cal. 2015) ("Whether Yahoo intercepts emails to and from non-Yahoo mail subscribers while those emails are in transit is a common contention that is capable of classwide resolution and will resolve an issue that is central to the validity of each one of the claims in one stroke.") (quotation marks and citation omitted). Other common questions include whether ActiveProspect's conduct was willful and whether Prudential and Assurance aided and abetted the violations of Section 631(a). Because the answers to these questions are at the heart of each Plaintiff's and Class member's CIPA claim, the commonality requirement is met. *See Martinez v. Blu Prod., Inc.*, 2019 WL 12838199, at *3 (C.D. Cal. Oct. 3, 2019) (common questions included whether the defendant's captured consumer's private information and whether it "violate[s] the law in the manners Plaintiffs identify"); *Rodriguez v. Google LLC*, 2024 WL 38302, at *3 (N.D. Cal. Jan. 3, 2024) (legality of defendant's collection of app data was a common issue).

**3.     Plaintiffs' CIPA Claims Are Typical.**

"Like the commonality requirement, the typicality requirement is permissive and requires only that the representative's claims are reasonably co-extensive with those of absent class members." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quotation marks and citation omitted). "The test for typicality is whether other members have the same or similar injury, whether

1  the action is based on conduct which is not unique to the named plaintiffs, and whether other class

2  members have been injured by the same course of conduct." *Scholl v. Mnuchin*, 489 F. Supp. 3d

3  1008, 1044 (N.D. Cal. 2020) (quotation marks and citation omitted).

4      Plaintiffs' and Class members' Section 631(a) claims are "reasonably co-extensive"

5  because all "arise[] from the same course of events, and each class member makes similar legal

6  arguments to prove the defendant's liability." *Hodges v. Akeena Solar, Inc.*, 274 F.R.D. 259, 267

7  (N.D. Cal. 2011). Each Plaintiff, like all Class members, input information into the webform at

8  term.prudential.com to seek a quote for life insurance. All the claims arise from Defendants' use of

9  the TrustedForm software to intercept this information. Typicality is satisfied.

10      **4.      Plaintiffs and Their Counsel Satisfy the Adequacy Requirement.**

11      Plaintiffs and their counsel will "fairly and adequately protect the interests of the class,"

12  Fed. R. Civ. P. 23(a)(4), because (1) they do not have any conflicts of interest with other Class

13  members and (2) have vigorously advanced the interests of the Class throughout this litigation. *See*

14  *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (outlining adequacy standard).

15      Plaintiffs have no conflicts of interest with the other class members. Torres Decl., ¶¶ 6-7;

16  Hyman Decl., ¶¶ 6-7. Plaintiffs have also demonstrated that they are adequate class representatives

17  who are willing to vigorously prosecute this action through trial. Each Plaintiff has already made

18  significant contributions to the litigation, including by assisting in preparing the complaints,

19  gathering records, responding to written discovery requests, appearing for depositions, consulting

20  with counsel on case developments and strategy, and submitting declarations in support of this

21  motion. *Id. See Castro v. ABM Indus., Inc.*, 325 F.R.D. 332, 342 (N.D. Cal. 2018) (plaintiffs were

22  adequate when they "have been active participants in the litigation").

23      Plaintiffs' counsel have also demonstrated their adequacy under Rule 23(g), which focuses

24  on "(1) the work counsel has done in identifying or investigating potential claims in the action; (2)

25  counsel's experience in handling class actions or other complex litigation and the type of claims in

26  the litigation; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will

27  commit to representing the class." *Scholl*, 489 F. Supp. 3d at 1045. The attorneys from Girard Sharp

28  LLP working on this case are experienced in prosecuting privacy and consumer class actions. *See*

Ex. 1 (firm resume). They have dedicated substantial time and resources to investigating, pleading, and pursuing these claims, and demonstrated their knowledge of the applicable law, including in opposition Defendants' motion to dismiss. Gliozzo Decl., ¶¶ 3-10. Accordingly, Plaintiffs request that the Court appoint Girard Sharp to serve as class counsel under Rule 23(g). *See, e.g.*, *In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prod. Liab. Litig.*, 609 F. Supp. 3d 942, 1023 (N.D. Cal. 2022).

## B.   The Predominance and Superiority Requirements of Rule 23(b)(3) Are Met.

### 1.   Common Issues Predominate.

"The requirement under Rule 23(b)(3) that common questions predominate over individual ones 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1232-33 (9th Cir. 2024) (citation omitted). Though predominance does not require that "all questions be common," the Court must consider: (1) "which questions are central to the plaintiffs' claim"; (2) "which of these questions are common to the class and which present individualized issues"; and (3) "whether the common questions predominate over the individual questions." *Id.* at 1233 & 1238; *see Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 666-67 (9th Cir. 2022) (en banc).

The predominance analysis "begins, of course, with the elements of the underlying cause of action." *DZ Rsrv.*, 96 F.4th at 1233 (quotation marks and citation omitted). As this Court has noted, "Section 631 creates four avenues for relief." *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 897 (N.D. Cal. 2023). Relevant here, the second prong creates liability when a defendant "willfully and without consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit," while the fourth prong creates liability for a defendant who "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above." Cal. Pen. Code § 631(a).

Plaintiffs allege that ActiveProspect violated the second prong, and Prudential and Assurance violated the fourth prong by aiding that violation. *Javier*, 649 F. Supp. 3d at 897; *see* Dkt. 29 at 4; *see also* Dkt. 56 at ¶¶ 1; 83-98. As liability under both prongs focuses on Defendants' conduct and will be subject to common proof, predominance is satisfied. *See Flowers v. Twilio, Inc.*, 2018 WL

10758024, at *5 (Cal. Super. Jan. 02, 2018) (predominance met for CIPA class, noting that defendants "acted uniformly as to each class member") (citation omitted); *Zaklit v. Nationstar Mortg. LLC*, 2017 WL 3174901, at *10 (C.D. Cal. July 24, 2017) (predominance met with respect to CIPA class); *Raffin v. Medicredit, Inc.*, 2017 WL 131745, at *9 (C.D. Cal. Jan. 3, 2017) (same).

Common evidence will be used to determine ActiveProspect's liability for violating Section 631(a)—*i.e.*, that it (1) willfully (2) read or attempted to read, or to learn the contents of Plaintiffs' and Class members' messages on Prudential's webform while they were in transit to or from a place in California and (3) without their consent. First, whether ActiveProspect acted willfully will be determined—up or down—through common evidence. For instance, ActiveProspect testified that it invented the TrustedForm software and deliberately designed it to intercept communications on other companies' websites in real time. Ex. 5 (Rafferty Dep. 108:8-110:18). It functioned on term.prudential.com as designed. *Id.* at 110:19-112:19. ███████████████████████ ███████████████████████████████. Ex. 18 (PRU0000422) (service agreement); Ex. 10 (Renz Dep. at 90:15-19) (████████████████████████████). *See Romero*, 331 F.R.D. at 411 (defendant's knowledge under CIPA was a predominant issue).

Second, deciding if ActiveProspect intercepted the contents of communications of visitors of Prudential's website while they were in transit to or from a place in California can also be determined at once for or against the Class. *See D'Angelo v. FCA US, LLC*, 2024 WL 1625771, at *11 (S.D. Cal. Mar. 28, 2024) ("The second clause of § 631(a) prohibits the interception of the contents of a communication while 'in transit'" and applies to "internet communications."). Whether the communications were sent from California can be readily identified through Defendants' files, which include the IP address of website visitors who submitted the webform, because IP address indicates their geolocation at the time they communicated with Prudential through its website. *See* Ex. 10 (Renz Dep. at 112:11-113:6) (to assess how many individuals submitted the webform in California, Prudential "filtered by California IP addresses" in their database).

What constitutes "content" under Section 631(a) is based on an objective standard. *See Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) (content means the "internal, user-generated material of a message"). The evidence shows that the information website visitors

must provide to get a life insurance quote, such as their medical history, medications, contact information, and more, has been consistent from the launch of the webform through the end of the Class period. Ex. 10 (Renz Dep. at 146:18-147:13) (same questions have "been consistently asked in this web form since its launch"). And all "the information that people enter into the form fields" is included "in what TrustedForm collects." *Id.* at 267:1-9. *See Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023) (data entered in online forms is "content"). Determining whether ActiveProspect intercepted "content" will produce the same answer for the Class.

The "in transit" element will also be established by common evidence. TrustedForm has been in use on Prudential's webform throughout the Class period. Ex. 10 (Renz Dep. at 31:1-10. As Plaintiffs' expert, Professor Zubair Shafiq, explains, Defendants' documents, including the TrustedForm code itself, establish that ActiveProspect intercepted communications by visitors to Prudential's website, keystroke by keystroke, while the communication was happening. Ex. 2 (Shafiq Rpt. at ¶¶ 29-40, 53-54); Ex. 7 ("As the consumer moves or clicks their cursor or presses keys, the browser sends a record of those events to TrustedForm," and those exchanges "occur in the background while the consumer has the page open"); Ex. 8 (TrustedForm captures a "visitor's real-time interactions with the Hosting Page, for example, clicks, mouse movements, and data inputs"). Further, as Professor Shafiq explains and as ActiveProspect's CEO corroborated, the operation of the TrustedForm software, by design, does not vary for different visitors to the webform. Ex. 2 (Shafiq Rpt. at ¶¶ 56-66); Ex. 5 (Rafferty Dep. at 140:1-24) (there were no changes to the way TrustedForm operates in the class period); *id.* at 140:25-142:2 (TrustedForm functions the same whether the user is on desktop or mobile device, and regardless of their cookie settings or web browser). While some rare user settings or technical glitches may prevent the script from functioning at all, when it operates, it operates uniformly. *Id*.

The issue of consent is common as well. As the Ninth Circuit has held, section 631(a) requires "prior consent of all parties to a communication." *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *2 (9th Cir. May 31, 2022). It must also be knowingly agreed to. *Negro v. Superior Ct.*, 230 Cal. App. 4th 879, 892 (2014). Here, none of the Defendants attempted to inform visitors of TrustedForm or obtain consent during the Class period. ActiveProspect made no attempts to secure consent directly

from users, taking the position that it was the website owner's responsibility to do so and taking no steps to ensure adequate consent was obtained. Ex. 5 (Rafferty Dep. at 85:2-87:7) (ActiveProspect does "not proactively review clients' websites to see if they give proper notice"). Prudential and Assurance did not collect consent, affirmative or otherwise, at the beginning of the webform during the Class period. Prudential added a banner to the first page of the webform on December 14, 2022 that purported to disclose ActiveProspect's interception, but there were no disclosures at the start of the webform (or anywhere on the form) before then. Ex. 10 (Renz Dep. 162:13-18); Ex. 14. The disclosures in Prudential's privacy policies during the Class period also did not inform visitors that ActiveProspect would intercept their communications in real time, and they were unchanged in the class period, thus common to all class members. Ex. 10 (Renz Dep. at 200:3-20, 261:6-8 (policies updated January 2023), 268:9-276:11, 279:3-19, 281:21-282:3 (lack of disclosure)). And Assurance's privacy policies were never provided to users on the webform, ████████████████████████ ██████████████████████████████████. *Id.* at 248:14-249:4, 104:9-19. Because Defendants did not obtain prior consent or disclose the use of TrustedForm during the Class period, the issue of consent will not vary among Class members. *See Flowers*, 2018 WL 10758024, at *5 (consent was common question, because defendants "acted uniformly as to each class member" via posted privacy policy); *Romero v. Securus Techs., Inc.*, 331 F.R.D. 391, 411 (S.D. Cal. 2018).

While not an element, Section 631(a)'s second prong contains an exemption for a person who is a "party" to a communication. *See* Dkt. 29 at 7 (discussing whether ActiveProspect is a third-party eavesdropper) (citing *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023)). This, too, can be determined on a classwide basis. For instance, ActiveProspect emphasized the importance of its status as a third party in marketing TrustedForm. Ex. 5 (Rafferty Dep. at 193:5-14); Ex. 6. That ActiveProspect is capable of using the information it intercepted turns on common evidence regarding ActiveProspect's technology and practices, including that ActiveProspect stores all the data it intercepts, Ex. 5 (Rafferty Dep. at 122:9-24), uses the data to create the session replay videos and provide services to its clients, *id.* at 144:18-25, in its terms of service and license agreement with website owners who use TrustedForm, it "reserves the right to use your content and data in an aggregate, de-identified fashion for legitimate business purposes," Ex. 19 (terms of

1    service); Ex. 8 (license agreement), and ActiveProspect's privacy policy, which covers information

2    collected through TrustedForm, states that it uses that data in an enumerated list of ways, Ex. 20.

3        As for Prudential Financial and Assurance, a defendant is liable "for aiding and abetting a

4    third party's violations" of section 631(a). *Gutierrez v. Converse Inc.*, 2023 WL 8939221, at *2 (C.D.

5    Cal. Oct. 27, 2023). While CIPA does not supply its own definition for aiding and abetting, a

6    defendant is liable for aiding and abetting under California law if it "knows the other's conduct

7    constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or

8    [] gives substantial assistance to the other in accomplishing a tortious result and the person's own

9    conduct, separately considered, constitutes a breach of duty to the third person." *In re Woodbridge*

10   *Invs. Litig.*, 2020 WL 4529739, at *5 (C.D. Cal. Aug. 5, 2020) (citations omitted).

11       As to knowledge, Prudential and Assurance both knew how the TrustedForm technology

12   worked. Assurance had prior experience using TrustedForm and "implemented TrustedForm's script

13   on the web form, knowing how it works." Ex. 10 (Renz Dep. at 216:10-22, 286:15-17). Prudential

14   assigned certain of its executives to work at Assurance, and at least two of those Prudential executives

15   also had knowledge about the TrustedForm software. *Id.* at 43:6-44:8 (Doug Morrin, Chief Legal

16   Officer); Ex. 13 (Bao Dep. at 169:11-170:11) (███████████████████). Prudential also

17   paid ActiveProspect's invoices for the TrustedForm service during the Class period. Ex. 17 at 5-6.

18   Prudential and Assurance also knew and controlled the content of the webform, including the lack of

19   disclosures regarding TrustedForm, Ex. 10 (Renz Dep. 285:23-286:11); Ex. 12 at 5 (admitting that

20   Prudential "had ultimate[] authority over term.prudential.com, but that Assurance IQ was primarily

21   responsible for the creation and maintenance" of the webform), so they each knew that

22   ActiveProspect's interception would occur without the consent of website visitors.

23       In addition to Assurance and Prudential each having independent knowledge of TrustedForm,

24   as Prudential's agent, Assurance's detailed knowledge of TrustedForm's operation is imputed to its

25   principal, Prudential. *Bergstrom v. Zions Bancorporation, N.A.*, 78 Cal. App. 5th 387, 399 (2022) ("It

26   is a fundamental tenet of agency law that a principal is deemed to know what its agent knows while

27   acting within the scope of the agent's authority.") (citing Cal. Civ. Code, § 2332); *Chapman College*

28   *v. Wagener*, 45 Cal.2d 796, 802 (1955) (same). "Agency can be resolved on a class-wide basis."

1    *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1306 (D. Nev. 2014).

2        As to substantial assistance, because "ActiveProspect doesn't install its script on other

3 people's website[s]," it requires two parties "for TrustedForm to function on a website": "the website

4 owner who installs the script and ActiveProspect who designed and provides the script." Ex. 5

5 (Rafferty Dep. at 112:21-113:8). Thus, as ActiveProspect's CEO explained, "without Assurance or

6 Prudential … install[ing] TrustedForm on the webform here, it wouldn't have functioned on

7 term.prudential.com," and "without them installing it, no information would have been captured by

8 the TrustedForm software." *Id.* at 113:9-17. Assurance added the TrustedForm script to the webform's

9 code, and Prudential both paid ActiveProspect's invoices to keep the TrustedForm service in place,

10 Ex. 17 at 5-6, and directed Assurance to create and maintain the webform including TrustedForm. Ex.

11 12 at 3. Liability under Section 631(a)'s fourth prong will thus be subject to common proof. *See*

12 *Takiguchi v. MRI Int'l, Inc.*, 2016 WL 1091090, at *10 (D. Nev. Mar. 21, 2016) (predominance met

13 as to whether the defendant aided and abetted underlying tort).

14        Because each element necessary to determine Section 631(a) liability against ActiveProspect,

15 Prudential, and Assurance will be resolved through common proof, predominance is satisfied. *See*

16 *Martinez*, 2019 WL 12838199, at *3 & 8; *Alcazar v. Fashion Nova, Inc.*, 2022 WL 19975445, at *2

17 (N.D. Cal. Sept. 6, 2022) ("Whether Fashion Nova's website complies with those laws or whether

18 it violates them can be answered in one fell swoop.").

19        Common issues also predominate with respect to damages because CIPA provides for

20 statutory damages. The Ninth Circuit has repeatedly held that "the need for individual damages

21 calculations does not, alone, defeat class certification." *Vaquero v. Ashley Furniture Industries, Inc.*,

22 824 F.3d 1150, 1155 (9th Cir. 2016). As a general matter, statutory damages "will involve [a] less

23 stringent individualized inquiry," *Gold v. Midland Credit Mgmt., Inc.*, 306 F.R.D. 623, 633 (N.D. Cal.

24 2014) and "[c]ourts have been more willing to find predominance where, as here, the class seeks only

25 statutory damages," *In re Toys R Us-Delaware, Inc.*, 300 F.R.D. 347, 377 (C.D. Cal. 2013). Individual

26 damages calculations do not defeat predominance because statutory "damages are feasibly and

27 efficiently calculated[.]" *Wilcox v. Swapp*, 330 F.R.D. 584, 595 (E.D. Wash. 2019).

28

The same is true in this case because CIPA provides statutory damages of $5,000 per violation under Penal Code section 637.2(a). *See Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1117 (9th Cir. 2020) (CIPA is a "straightforward analogue" to traditional privacy torts that become actionable upon the disclosure without showing of additional harm); *see, e.g.*, *Romero*, 331 F.R.D. at 411 (predominance met in part because Plaintiffs sought statutory damages under section 637.2). Defendants' records provide a definitive list of Class members and the date of each instance of ActiveProspect intercepting communications. Determining classwide damages will thus be a matter of multiplication. *See Doe v. Mindgeek USA Inc.*, 2023 WL 8126845, at *8 (C.D. Cal. Nov. 17, 2023).

Defendants may suggest that a small number of the webform submissions that ActiveProspect intercepted were created by bots rather than real persons. Professor Shafiq explains that bots are exceedingly unlikely to comprise more than a de minimis number, given the time frame, the way bots work, and the mechanisms Defendants employed to prevent bot-submissions. Ex. 2 (Shafiq Rpt. at ¶¶ 67-70). Although Defendants have so far objected to producing the data regarding all class members, Gliozzo Decl. ¶ 9, based on the categories of data that are collected about each form submission, there are █████████████████████████████ and otherwise address what at its core is a claims administration issue. Ex. 5 (Rafferty Dep. at 131:8-132:6).

Because "the critical elements of Plaintiffs' claims . . . are common questions capable of class-wide proof," the predominance requirement of Rule 23(b)(3) is met. *In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 2023 WL 1813530, at *13 (C.D. Cal. Feb. 7, 2023).

### 2. A Class Action Is the Superior Method of Adjudicating the Claims of the Proposed Class.

"Rule 23(b)(3) requires a court to consider whether a class action would be a superior method of litigating the claims of the proposed class members[.]" *Vizcarra v. Unilever United States, Inc.*, 2023 WL 2364736, at *18 (N.D. Cal. Feb. 24, 2023). "A class action is a superior means of adjudicating a dispute '[w]here classwide litigation of common issues will reduce litigation costs and promote greater efficiency.'" *Bellinghausen v. Tractor Supply Co.*, 303 F.R.D. 611, 618 (N.D. Cal. 2014) (quoting *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996)). Classwide adjudication is the far superior method of resolving these CIPA claims.

When, as here, individual recoveries would be small and individual litigation would needlessly duplicate discovery and expert work, it is "an inferior method of adjudication." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1176 (9th Cir. 2010). Class members have little incentive to pursue their own CIPA claims—and Plaintiffs are not aware of any pending individual lawsuits—when it will entail litigating technical issues over the implementation TrustedForm on Prudential's website against Defendants that steadfastly deny wrongdoing. *See In re Facebook Biometric Info. Priv. Litig.*, 326 F.R.D. 535, 548 (N.D. Cal. 2018), *aff'd sub nom. Patel v. Facebook, Inc.*, 932 F.3d 1264 (9th Cir. 2019); *Alcazar v. Fashion Nova, Inc.*, 2022 WL 19975445, at *4 (N.D. Cal. Sept. 6, 2022) (availability of $4,000 in statutory damages not enough to incentivize individual litigation, "that sum pales in comparison with the cost of pursuing litigation") (citation omitted). And, given the surreptitious nature of TrustedForm, the vast majority of Class members are likely unaware their communications were intercepted. *See Romero*, 331 F.R.D. at 412-13 (class action superior where "a significant number of class members may not know that their calls were recorded").

Superiority is also satisfied because a class proceeding will not pose manageability problems. To start with, there is a "well-settled presumption that courts should not refuse to certify a class merely on the basis of manageability concerns." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017) (citation omitted). Plaintiffs' proposed trial plan shows how a class proceeding will be manageable because each element required to establish Defendants' liability will be decided for or against the Class based on classwide proof. *See* Ex. 21. "Because the witness testimony and evidence put forth in this trial plan applies to each of the individual class members' claims, it would be duplicative and a waste of judicial resources to try these claims individually." *Smith v. Pathway Fin. Mgmt., Inc.*, 2012 WL 12884448, at *8 (C.D. Cal. Nov. 26, 2012).

The superiority requirement is thus met. *See Zaklit*, 2017 WL 3174901, at *10 (class action superior for CIPA); *Raffin v. Medicredit, Inc.*, 2017 WL 131745, at *9 (C.D. Cal. Jan. 3, 2017) (same).

## V.     <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court certify the Class and appoint them as class representatives, appoint Girard Sharp LLP as class counsel, and direct the parties to submit a proposed plan of notice.

1   Dated: June 28, 2024            Respectfully submitted,

2                                    **GIRARD SHARP LLP**

3                                      */s/    Nina R. Gliozzo*

4                                      Dena C. Sharp (State Bar No. 245869)
   dsharp@girardsharp.com

5                                      Simon S. Grille (State Bar No. 294914)
   sgrille@girardsharp.com

6                                      Nina R. Gliozzo (State Bar No. 333569)
   ngliozzo@girardsharp.com

7                                      Jordan Isern (State Bar No. 343159)
   jisern@girardsharp.com

8                                      601 California Street, Suite 1400
   San Francisco, CA 94108

9                                      Telephone: (415) 981-4800

10                                    Facsimile: (415) 981-4846

11                                    *Attorneys for Plaintiffs*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on June 28, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record. I also caused a copy of the under-seal documents to be served via electronic mail on defense counsel.

By: /s/ *Nina R. Gliozzo*
Nina R. Gliozzo

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
CASE NO. 3:22-CV-07465-CRB