KELLY M. KLAUS (State Bar No. 161091)
kelly.klaus@mto.com
JONATHAN H. BLAVIN (State Bar No. 230269)
jonathan.blavin@mto.com
GRACE DAVIS FISHER (State Bar No. 336732)
grace.davisfisher@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone:     (415) 512-4000
Facsimile:     (415) 512-4077

LAURA D. SMOLOWE (State Bar No. 263012)
laura.smolowe@mto.com
SIDNEY EISNER (State Bar No. 349400)
sidney.eisner@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:     (213) 683-9100
Facsimile:     (213) 687-3702

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| VALERIE TORRES and RHONDA HYMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>PRUDENTIAL FINANCIAL, INC., ACTIVEPROSPECT, INC., and ASSURANCE IQ, LLC,<br><br>Defendants. | Case No. 3:22-cv-07465-CRB<br><br>**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' CLAIM UNDER CAL. PENAL CODE § 631(a)**<br><br>[Filed concurrently: Declarations of Kelly M. Klaus, Dr. Nathaniel Polish, and Alex Wolfe; [Proposed] Order]<br><br>Date: February 21, 2025<br>Time: 10:00 a.m.<br>Courtroom: Courtroom 6 – 17th Floor<br>Judge: Hon. Charles R. Breyer |

**PROVISIONALLY FILED UNDER SEAL**

**REDACTED VERSION**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION AND SUMMARY OF ARGUMENT ........................................................ 1

II. BACKGROUND ......................................................................................................... 2

    A. TrustedForm Is an Industry-Standard Software Tool That Helps Website Owners Document Legal Compliance .................................................................... 2

        1. TrustedForm's Collection of Data on Behalf of Account Holders ............... 4

        2. TrustedForm's Storage of Data on Behalf of Account Holders .................... 6

        3. ActiveProspect Does Not Independently Use Any TrustedForm Data ......... 8

    B. Prudential Used TrustedForm Solely to Document Its Own TCPA Compliance on a Prudential Website for Requesting Life Insurance Quotes ........... 9

III. PROCEDURAL HISTORY .......................................................................................... 10

    A. Plaintiffs' Complaints and the Court's Motion to Dismiss Ruling ......................... 10

    B. Plaintiffs' Motion for Class Certification .............................................................. 11

    C. The Parties' Early Summary Judgment Stipulation ............................................... 11

IV. LEGAL STANDARD ................................................................................................. 11

V. CIPA § 631 ............................................................................................................ 12

VI. ARGUMENT ........................................................................................................... 12

    A. ActiveProspect Is Not a Third-Party "Eavesdropper" Under CIPA ....................... 12

        1. ActiveProspect Is Not Technologically Capable of Using TrustedForm Certificates or User Form Inputs for Any Independent Purpose ................................................................................................... 13

            (a) ActiveProspect Cannot Independently Use TrustedForm Certificates ................................................................................ 13

            (b) ActiveProspect Cannot Use User-Submitted Data At All ............... 14

        2. Mere "Storage" of Data Does Not Create § 631 Liability .......................... 16

        3. Section 631(a) Applies to the "Contents" of a Communication, Not to Metadata About a Communication .......................................................... 17

        4. ActiveProspect's End User License Agreement for TrustedForm Confirms Its Lack of Capability ............................................................... 18

        5. Mere Hypothetical "Capability" Does Not Create Liability Under § 631(a) ................................................................................................... 19

-i-

Case No. 3:22-cv-07465-CRB

DEFS.' MOT. FOR SUMMARY JUDGMENT ON PLS.' CLAIM UNDER CAL. PENAL CODE § 631(a)

B.   The Undisputed Evidence Shows that ActiveProspect Did Not Read or Attempt to Read Plaintiffs' Communications While They Were in Transit ............21

C.   Because Plaintiffs' Predicate § 631 Claim Against ActiveProspect Fails as a Matter of Law, Plaintiffs' Derivative § 631 Claims Against Prudential and Assurance Also Fail ................................................................................................24

D.   The Court Should Resolve Plaintiffs' § 631 Claim Before Ruling on Class Certification.............................................................................................................25

VII.   CONCLUSION ...................................................................................................................25

DEFS.' MOT. FOR SUMMARY JUDGMENT ON PLS.' CLAIM UNDER CAL. PENAL CODE § 631(a)

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Balletto v. Am. Honda Motor Co. (Balletto I)*,
No. 23-cv-01017, 2023 WL 7026931 (N.D. Cal. Oct. 24, 2023).................................................17

*Balletto v. Am. Honda Motor Co. (Balletto II)*,
No. 23-CV-01017, 2024 WL 589090 (N.D. Cal. Feb. 13, 2024)..............................................16

*Bittner v. United States*,
598 U.S. 85 (2023) ........................................................................................................................12

*Byars v. Hot Topic, Inc.*,
656 F. Supp. 3d 1051 (C.D. Cal. 2023)......................................................................................24

*Cavanagh v. Humboldt Cnty.*,
1999 WL 96017 (N.D. Cal. Feb. 22, 1999)................................................................................25

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ................................................................................................................11, 12

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024) ..................................................................................15, 24

*DeGeorge v. U.S. Dist. Court*,
219 F.3d 930 (9th Cir. 2000)......................................................................................................22

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020).................................................................................................12, 22

*Garcia v. Build.com, Inc.*,
No. 22-cv-1985, 2024 WL 1349035 (S.D. Cal. Mar. 29, 2024) ................................................17

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ..................................................................................18, 25

*Gutierrez v. Converse Inc.*,
No. CV 23-6547, 2024 WL 3511648 (C.D. Cal. July 12, 2024) .............................1, 21, 24, 25

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .....................................................................................17

*Hart v. City of Redwood City*,
99 F.4th 543 (9th Cir. 2024)........................................................................................................19

*Hazel v. Prudential Fin., Inc.*,
No. 22-CV-07465-CRB, 2023 WL 3933073 (N.D. Cal. June 9, 2023)............................. *passim*

DEFS.' MOT. FOR SUMMARY JUDGMENT ON PLS.' CLAIM UNDER CAL. PENAL CODE § 631(a)

*Heiting v. athenahealth, Inc.*,
   No. 23-CV-10338, 2024 WL 3761294 (C.D. Cal. July 29, 2024) ............................................17

*Heiting v. Taro Pharms. USA, Inc.*,
   709 F. Supp. 3d 1007 (C.D. Cal. 2023)...................................................................................17

*Jackson v. LinkedIn Corp.*,
   No. 24-CV-00812, 2024 WL 3823806 (N.D. Cal. Aug. 13, 2024) ..........................................15

*James v. Allstate Ins.*,
   No. 23-CV-01931, 2023 WL 8879246 (N.D. Cal. Dec. 22, 2023) .....................................21, 22

*Javier v. Assurance IQ, LLC*,
   649 F. Supp. 3d 891 (N.D. Cal. 2023) ........................................................................... *passim*

*Javier v. Assurance IQ, LLC*,
   No. 21-16351, 2022 WL 1744107 (9th Cir. May 31, 2022) .....................................................22

*Jones v. Tonal Sys., Inc.*,
   No. 23-CV-1267, 2024 WL 4357558 (S.D. Cal. Sept. 30, 2024) .............................................17

*Katz-Lacabe v. Oracle Am., Inc.*,
   668 F. Supp. 3d 928 (N.D. Cal. 2023) ....................................................................................18

*Khasin v. Hershey Co.*,
   No. 12-CV-01862, 2014 WL 1779805 (N.D. Cal. May 5, 2014) ...............................................2

*Love v. Ladder Fin., Inc.*,
   No. 23-cv-04234, 2024 WL 2104497 (N.D. Cal. May 8, 2024) ...................................... *passim*

*Mastel v. Miniclip SA*,
   549 F. Supp. 3d 1129 (E.D. Cal. 2021).....................................................................................23

*Rodriguez v. Ford Motor Co.*,
   No. 23-cv-00598, 2024 WL 1223485 (S.D. Cal. Mar. 21, 2024) .............................................17

*Shivkov v. Artex Risk Sols., Inc.*,
   974 F.3d 1051 (9th Cir. 2020)..................................................................................................19

*Smith v. Google, LLC*,
   No. 23-CV-03527, 2024 WL 2808270 (N.D. Cal. June 3, 2024) .............................................15

*Stephens v. Union Pac. R.R.*,
   935 F.3d 852 (9th Cir. 2019).....................................................................................................19

*Swarts v. Home Depot, Inc.*,
   No. 23-cv-00995, 2023 WL 5615453 (N.D. Cal. Aug. 30, 2023) ............................................16

*Turner v. Nuance Commc'ns, Inc.*,
   No. 22-cv-05827, 2024 WL 2750017 (N.D. Cal. May 28, 2024) .............................................15

DEFS.' MOT. FOR SUMMARY JUDGMENT ON PLS.' CLAIM UNDER CAL. PENAL CODE § 631(a)

*United States ex rel. Welch v. My Left Foot Children's Therapy, LLC,*
   871 F.3d 791 (9th Cir. 2017)...................................................................................................19

*Valenzuela v. Super Bright LEDs Inc.*,
   No. ED CV23-01148, 2023 WL 8424472 (C.D. Cal. Nov. 27, 2023).....................................17

*Vernars v. Young,*
   539 F.2d 966 (3d Cir. 1976)...................................................................................................22

*Wright v. Schock*,
   742 F.2d 541 (9th Cir. 1984)...............................................................................................2, 25

*Yockey v. Salesforce, Inc.*,
   No. 22-cv-09067, 2023 WL 5519323 (N.D. Cal. Aug. 25, 2023) ...........................................17

*In re Zynga Priv. Litig.*,
   750 F.3d 1098 (9th Cir. 2014)................................................................................................18

**STATE CASES**

*De Vries v. Regents of Univ. of Cal.*,
   6 Cal. App. 5th 574 (2016).....................................................................................................22

*Harrott v. Cnty. of Kings*,
   25 Cal. 4th 1138 (2001)..........................................................................................................12

*People v. Arias*,
   45 Cal. 4th 169 (2008)............................................................................................................12

*Ribas v. Clark*,
   38 Cal. 3d 355 (1985).........................................................................................................1, 13

*Rogers v. Ulrich*,
   52 Cal. App. 3d 894 (1975).....................................................................................................13

**FEDERAL STATUTES**

47 U.S.C. § 227 ............................................................................................................. *passim*

**STATE STATUTES**

Cal. Penal Code § 630 .........................................................................................................21, 22

Cal. Penal Code § 631 ............................................................................................... *passim*

Cal. Penal Code § 637.2 ...........................................................................................................12

## NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

PLEASE TAKE NOTICE that on February 21, 2025, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom No. 6, 17th Floor, United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants Prudential Financial, Inc. ("Prudential"), Assurance IQ, LLC ("Assurance"), and ActiveProspect, Inc. ("ActiveProspect") (collectively, "Defendants") will and hereby do move pursuant to Fed. R. Civ. P. 56(a) for an Order granting summary judgment on Plaintiffs' claims under the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 631(a).

Defendants seek summary judgment on Plaintiffs' § 631 claims because the undisputed evidence shows that (1) ActiveProspect is not a "third party" eavesdropper within the meaning of § 631(a), but rather acted as an agent of the party to the communications in issue; and (2) ActiveProspect did not "read[] or attempt[] to read" Plaintiffs' communications with Prudential while the communications were "in transit."

This Motion is based on this Notice of Motion and Motion; the attached Memorandum of Points and Authorities; the Declarations of Kelly M. Klaus, Dr. Nathaniel Polish, and Alex Wolfe and accompanying exhibits; all other materials supporting the Motion or the Reply filed in support thereof; all pleadings on file in this matter; and any other materials or arguments the Court may receive at or before the hearing on this Motion.

I.      **INTRODUCTION AND SUMMARY OF ARGUMENT**

This lawsuit is part of a cascade of class action suits (nearly 500 and counting, in just the last two years) seeking to capitalize on the *in terrorem* threat of CIPA's $5,000 statutory damages per "violation."[1]  Nearly all of these cases have been resolved at or shortly after the pleading stage.  None has made it past summary judgment.  *See, e.g.*, *Gutierrez v. Converse Inc.*, No. CV 23-6547, 2024 WL 3511648, at *7–8 (C.D. Cal. July 12, 2024) (granting motion for summary judgment on § 631 claim before ruling on class certification).  This case should not be the first, as the facts do not remotely fit the statute.

Plaintiffs' lawsuit tries to shove a square peg in a round hole by claiming that actions taken solely to document *internal* compliance with a privacy statute somehow constitute third-party "wiretapping."  As a matter of law, they do not.  The California Legislature passed CIPA in 1967 to protect California residents from, as relevant here, persons who are not "parties to the communication" "read[ing], or attempt[ing] to read … the contents … of any … communication while the same is in transit."  Cal. Penal Code § 631(a).  "Section 631 was aimed at one aspect of the privacy problem—eavesdropping, or the secret monitoring of conversations by third parties." *Ribas v. Clark*, 38 Cal. 3d 355, 359 (1985).  The undisputed evidence confirms that no such conduct occurred here.  Plaintiffs' § 631(a) claim fails on at least two issues, either one of which on its own is dispositive:

- **No Third-Party Eavesdropper:**  The purported "eavesdropper"—Defendant ActiveProspect—is *not* a third party within the meaning of § 631(a).  Rather, ActiveProspect acts only as an agent of the party to the communication (Defendant Prudential, including its wholly owned subsidiary, Assurance, which set up the underlying website).  This Court has held that the pivotal question is whether ActiveProspect is "capable of using" the "TrustedForm" record of the website visit it creates for Prudential "for other ends" beyond providing the service to Prudential. *See Hazel v. Prudential Fin., Inc.*, No. 22-CV-07465-CRB, 2023 WL 3933073, at

---

[1] Attached as Appendix A is a list of CIPA class action lawsuits filed in the last two years alleging that the use of a website tool qualified as "wiretapping" under CIPA.

*4 (N.D. Cal. June 9, 2023) (citing *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023)).  The undisputed evidence shows ActiveProspect does not have that technological capacity, a fact that is confirmed by ActiveProspect's end user license agreement for TrustedForm.

- ***No "Read or Attempt to Read":***  ActiveProspect did not "read[] or attempt[] to read" Plaintiffs' communications with Prudential at any time—much less while the communications were "in transit," as § 631 requires.  *See Love v. Ladder Fin., Inc.*, No. 23-cv-04234, 2024 WL 2104497, at *1–2 (N.D. Cal. May 8, 2024) (Chhabria, J.) (no § 631 violation where session replay software allegedly "capture[d] a user's entire" visit to a webform but did not "'read[], attempt[] to read, or to learn' the content of the form entries").  TrustedForm uses commonplace software tools to log "events," like keystrokes and mouse clicks, on the Prudential website, and then, *after the fact*, to create a "session replay" (if Prudential requests it) by replicating those events on top of a reconstruction of the website.  It is ActiveProspect's customers (who are parties to the communications) who watch the session replay, not ActiveProspect.  And, even then, the communications are long past the point of being "in transit."

Defendants respectfully request that the Court grant summary judgment on Plaintiffs' CIPA claims now, before the Court and the parties expend further resources on potentially "needless and costly litigation" related to class certification on a meritless claim.  *See Khasin v. Hershey Co.*, No. 12-CV-01862, 2014 WL 1779805, at *2 (N.D. Cal. May 5, 2014) (citing *Wright v. Schock*, 742 F.2d 541, 544 (9th Cir. 1984)).

II.    **BACKGROUND**

    A.    **TrustedForm Is an Industry-Standard Software Tool That Helps Website Owners Document Legal Compliance**

ActiveProspect offers a software tool called "TrustedForm" that allows website owners to document their compliance with the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C.

§ 227(a)(4).  Ex. 17[2] at 2; Ex. 2 (Rafferty Dep.) 82:3–4 ("Our product is about documenting consent.").  The TCPA requires companies to obtain prior express written consent before making certain calls to consumers.  *See* 47 U.S.C. § 227(b)(1).

A website owner installs TrustedForm by adding JavaScript code to their website.  Wolfe Decl. ¶ 12.  The website owner controls when, where, and how the TrustedForm script is used.  Wolfe Decl. ¶ 12; Rafferty Dep. 109:10–12 ("[T]he TrustedForm script is designed to be installed by the owner of the website, and we're acting as a service provider for the website."); Rafferty Dep. 163:8–10 ("We do not control the site forms and what people—what information people collect on their forms."); Rafferty Dep. 166:12–17 ("[W]e do not control the website forms where data is collected … we don't know what a website operator is going to collect and we don't care what they collect 'cause it's none of our business.").

When a web visitor fills out a website form, or "webform," to receive a product quote and consents to be contacted with the requested quote, TrustedForm generates a "TrustedForm Certificate" that documents the user's consent.  Ex. 21; Ex. 13 at 3–4.  The TrustedForm Certificate thus provides evidence to the website owner if someone raises a fraudulent claim that they did not consent to be contacted.  Rafferty Dep. 35:2–6 ("TrustedForm provide[s] a very effective way to document consent to comply with" the TCPA).  Confirming the practical benefits of this software, the *Javier* case itself arose after the plaintiff in that matter threatened a TCPA lawsuit by falsely claiming he did not consent to be called; the TrustedForm Certificate foiled the bogus claim.  *Javier v. Assurance IQ, LLC*, No. 3:20-cv-02860-CRB (N.D. Cal. July 13, 2020), ECF No. 24, ¶¶ 45–46.

In addition to protecting website owners, TrustedForm also protects website visitors by helping ensure that only visitors who consent to be called with product offerings are contacted.  Wolfe Decl. ¶ 10; Rafferty Dep. 189:12–14 ("[O]ur customers only want to contact consumers that are truly interested in their services."); *see* Ex. 4 (Hyman Dep.) 58:14–17 (agreeing it is a

---

[2] Except as otherwise noted, all "Ex." references are to Exhibits attached to the accompanying Declaration of Kelly M. Klaus ("Klaus Decl.").

DEFS.' MOT. FOR SUMMARY JUDGMENT ON PLS.' CLAIM UNDER CAL. PENAL CODE § 631(a)

"good idea" for companies to have a record of contacting only users who agree to be contacted); Ex. 3 (Torres Dep.) 46:5–47:12 (same).

TrustedForm allows website owners to reliably document TCPA consent without incurring the time and expense of reinventing the wheel and maintaining a TCPA compliance solution in-house. Ex. 14 (offering "10 Reasons [Why] Building Your Own TCPA Solution Is a Huge Mistake"). As a result, TrustedForm has long been an industry-standard component of legal compliance. Rafferty Dep. 86:13–14, errata p. 1 ("[O]ur script is on about [50,000] websites. It's a standard in the industry."); Rafferty Dep. 33:4–5 (TrustedForm "has been used to process over one billion" completed webforms); Rafferty Dep. 109:23–24 (TrustedForm's "primary use today is for companies trying to document consent to comply with TCPA"); Rafferty Dep. 182:18–23 (the "primary benefit" of TrustedForm "is to help companies comply with the regulations of the [TCPA]").

TrustedForm is one of many "software-as-a-service," or "SaaS," tools used by website owners today. *See* Expert Declaration of Dr. Nathaniel Polish ("Polish Decl.") ¶ 44. According to recent data, the U.S. houses over 17,000 SaaS companies, and the average organization uses nearly 400 third-party SaaS applications. Ex. 27 (*Demandsage*, "17+ SaaS Statistics For 2024 (Trends, Growth & More)"). The use of third-party software tools to document users' website interactions for a wide range of purposes is widespread. *See* Polish Decl. ¶¶ 44–51.

**1.     TrustedForm's Collection of Data on Behalf of Account Holders**

TrustedForm uses a commonplace and widely used software tool called "event listeners" to document TCPA compliance. Polish Decl. ¶¶ 37, 62. An event listener is passive software code that allows a website or software program to "detect and respond to events within [that] program or application," such as "button clicks, mouse movements, or keyboard inputs." Polish Decl. ¶ 32. Event listeners are used by virtually every interactive website on the Internet. Polish Decl. ¶ 37.

Event listeners are content-agnostic. When a specified event, such as a key press, occurs, the event listener executes a predetermined function or block of code in response. Polish Decl. ¶ 36. Importantly, event listeners do not listen for specific inputs; rather, they are mechanical, automated functions that by definition respond the same way each time to a given event. Polish

DEFS.' MOT. FOR SUMMARY JUDGMENT ON PLS.' CLAIM UNDER CAL. PENAL CODE § 631(a)

Decl. ¶¶ 36, 63.  Thus, for example, if a user types: "To be, or not to be, that is the question," the key press event listener will respond the same way as it will if the user types a random series of characters like "Y4c@evA3jX5VuI96#x60R2S!bE8^H9vI."  Polish Decl. ¶ 63.  The point for the event listener is simply to respond to the key press events; the meaning, if any, transmitted as a result of those key press events is irrelevant.

As a user progresses through a webform, various "events" (including key presses, mouse movements, and mouse clicks) occur.  Polish Decl. ¶ 62.  TrustedForm collects the data behind each event and then timestamps, batches, and compresses the events and sends them to ActiveProspect's server in "bundles" via a series of encrypted electronic packages known as "POST requests."  Wolfe Decl. ¶ 17; Rafferty Dep. 28:25–29:3 ("[I]nformation is gathered in batches at certain intervals, and then sent to the TrustedForm server."); Rafferty Dep. 102:16–17 ("the events are sent to TrustedForm service in batches").  The events are encoded and "encrypted both in transit and at rest."  Ex. 11; Wolfe Decl. ¶ 17.  ActiveProspect never attempts to decipher the substantive meaning of TrustedForm events on any webform—not while they are being transmitted to the TrustedForm server, and not thereafter.  Wolfe Decl. ¶ 18; Rafferty Dep. 28:1–9 ("[W]hen it comes to what happens on a page, we just look at them as events[.]  We're not concerned with what a consumer inputs on a form[.]").

In addition to "events," TrustedForm also collects metadata associated with each TrustedForm Certificate.  Wolfe Decl. ¶ 19.  The metadata is information *about* the user-website interaction—things such as the amount of time a user was on a page; the type of browser they used; or the IP address of the device that accessed the webform.  Wolfe Decl. ¶ 19; Ex. 6 (Shafiq Dep.) 78:8 ("metadata is data about data").  ActiveProspect also collects metadata concerning how the TrustedForm product is used.  Wolfe Decl. ¶ 19.  This type of metadata is known as "usage data" and includes things like the number of TrustedForm Certificates generated on a particular website.  Wolfe Decl. ¶ 19; Polish Decl. ¶ 39 ("Usage data is another type of metadata that concerns how a product is used."); Rafferty Dep. 146:20–22.  By definition, the metadata TrustedForm collects does not include any of the information the user inputs into the webform.  Ex. 20; Wolfe Decl. ¶ 19.

ActiveProspect stores the certificate metadata on behalf of TrustedForm account holders; ActiveProspect does not use the metadata TrustedForm collects for "any other products or sources of revenue." Wolfe Decl. ¶ 35; Ex. 19 ("We don't use the data collected by the script for any other products or services (lead scoring, in-market alerts, or any other monetization purposes) and this is explicitly stated in our legal terms.").

### 2.    TrustedForm's Storage of Data on Behalf of Account Holders

In addition to controlling where, when, and how the TrustedForm script is used, the website owner also controls the storage of TrustedForm Certificates. Unless the website owner affirmatively directs ActiveProspect to store TrustedForm Certificates from their website, ActiveProspect automatically deletes them. Rafferty Dep.122:14–20; Ex. 12 at 3 ("If TrustedForm Certificates aren't claimed by a paying customer, we delete them. In other words, if a customer hasn't specifically asked us to store data on their behalf, we don't store it.").

Website owners who want to store TrustedForm Certificates may "claim" the Certificates. Wolfe Decl. ¶ 27; Rafferty Dep. 110:7–12 (TrustedForm "documents the events that take place on a page where it's installed" and saves the events in a "TrustedForm Certificate that is … locked [up] and stored for that site owner for their use"); Rafferty Dep. 122:14–20, 123:1–4; Ex. 16; Ex. 18; Ex. 22. If a website owner chooses to "claim" all Certificates generated on its website, ActiveProspect will store each Certificate as an individual archive on a secure, encrypted database. Wolfe Decl. ¶ 28.

Each Certificate archive is "compressed, encrypted and stored in a storage medium that makes it inaccessible for operations like data aggregation or extraction." Ex. 16. ActiveProspect "do[es] not store user data or PII in a way that can be extracted or accessed, outside of the session replay contained in the certificate," which is controlled by the Certificate's owner (here, Prudential). *Id.*; Wolfe Decl. ¶ 18. ActiveProspect does not have any way to decipher, collect, or make any use of the user form inputs displayed in the session replay. Wolfe Decl. ¶ 41. ActiveProspect "purposefully built the product this way" and promises account holders that it "will always work hard to ensure the data we store on your behalf cannot be shared, aggregated,

extracted, or consumed in any other way than the session replay" controlled by the account holder. Ex. 16.

The website owner also controls who can access TrustedForm Certificates and the data therein. The only feasible way to retrieve a specific TrustedForm Certificate is via the TrustedForm Certificate URL, which is held and controlled by the owner of the underlying Certificate. Ex. 22 ("TrustedForm does not support searching for certificates based on lead data and thus cannot retroactively match lead data to a unique certificate."); Ex. 21. The Certificate URL is sent to the website owner; the underlying data is encrypted and subsequently stored on ActiveProspect's servers in long-term "cold" storage. *Id.*; Wolfe Decl. ¶¶ 13, 31. As ActiveProspect's CEO described it: "[E]ach certificate is like a lock box, and that certificate ID is the key to that lock box." Rafferty Dep. 106:6–10. In addition, because TrustedForm Certificates are stored in cold storage, once the correct TrustedForm Certificate is identified, it can take "from 3–5 hours" to retrieve the certificate. Ex. 18; *see* Ex. 16 ("Extracting a certificate for viewing can sometimes take hours."); Ex. 22 (same).

ActiveProspect "does not own any data or use client data for any purpose other than to provide the client with the service for which they are paying." Ex. 11; Rafferty Dep. 144:4–5 ("[A]ny data that's collected by TrustedForm on the websites is owned by those websites."); Rafferty Dep. 144:24–145:1 ("[T]he information collected by the certificate is for the use of the services. We don't use the data for other purposes.").

ActiveProspect's End User License Agreement for TrustedForm (the "ActiveProspect EULA"), which sets forth ActiveProspect's and its customers' rights with respect to TrustedForm, confirms that TrustedForm account holders "control [their] Data and Content that is collected by the TrustedForm Script." Ex. 9 at 4. ActiveProspect merely stores TrustedForm Certificates on behalf of account holders in the technological equivalent of a secure "lock box." Wolfe Decl. ¶ 28; Rafferty Dep. 106:12–15 ("[T]he information in—that is contained in a TrustedForm Certificate is—belongs to the site owner, and we're storing that in an encrypted and very secure environment for the site owner."); Rafferty Dep. 144:8–15 ("[T]he data we collect is captured in a

TrustedForm certificate, which we store for the site owner. … [W]e think of a certificate like a lock box.”).

### 3. ActiveProspect Does Not Independently Use Any TrustedForm Data

When a website owner claims or views a TrustedForm Certificate that has been generated on its website, the TrustedForm software then decodes and reassembles the encoded “events,” such as keystrokes and mouse clicks, stored in the associated TrustedForm Certificate database to create the TrustedForm “session replay.”  Wolfe Decl. ¶ 45.  If the website owner later requests that Certificate, the TrustedForm software uses the TrustedForm Certificate URL provided by the website owner to locate the relevant Certificate in ActiveProspect’s database.

TrustedForm does not, and cannot, interpret the substantive meaning of a user’s keystrokes, clicks, or other inputs at any point.  Wolfe Decl. ¶ 18; Polish Decl. ¶¶ 102–107,112–115.  Instead, TrustedForm generates a “recreation” of a user’s website visit “by replicating the user’s cursor and key events on top of a copy of the website as it appeared at that time.”  Ex. 13 at 4; Ex. 15 (the TrustedForm session replay is a replay of events, *not* a video recording).

Thus, for example, if a user keys in a birthdate of “12/31/1950” on a webform, TrustedForm will not decipher the user’s birthdate.  *See* Polish Decl. ¶¶ 102–115.  In fact, it will become apparent that the user typed “12/31/1950” in response to a question about the user’s birthdate only when the TrustedForm session replay is created, at which point the keystrokes will be replayed on top of a reconstruction of how the website was rendered onscreen when the user filled out the form.  Polish Decl. ¶¶ 102–115.  At no point before, during, or after the creation of the session replay will TrustedForm itself register the user’s birthdate.  Polish Decl. ¶¶ 102–115.  It will simply replay the underlying events as they occurred without ever deciphering, or attempting to decipher, their substantive meaning.  Polish Decl. ¶¶ 102–115.  And again, ActiveProspect itself has no way to collect or decipher the user form inputs displayed in the session replay.  Wolfe Decl. ¶ 42.

The ActiveProspect EULA prohibits ActiveProspect from using either the TrustedForm Certificates or the underlying user form inputs for any purpose other than providing the TrustedForm service to account holders.  Wolfe Decl. ¶ 50; Polish Decl. ¶¶ 95–99; Ex. 16.  The

DEFS.’ MOT. FOR SUMMARY JUDGMENT ON PLS.’ CLAIM UNDER CAL. PENAL CODE § 631(a)

EULA provides that "[t]he TrustedForm Certificate is for the sole use of the TrustedForm Account Holder that claims it." Ex. 9 at 2. The EULA also confirms that the TrustedForm account holder "control[s] [its] Data and Content that is collected by the TrustedForm Script." Ex. 9 at 4. The ActiveProspect EULA permits ActiveProspect to "use" customer data "solely to the extent that such [use] is required for provision of the TrustedForm Service." *Id.*

### B.    Prudential Used TrustedForm Solely to Document Its Own TCPA Compliance on a Prudential Website for Requesting Life Insurance Quotes

Prudential is a global financial services provider that has been named one of the World's Most Ethical Companies for ten years in a row.[3] Pls.' Second Am. Compl. ("SAC") ¶ 15, ECF No. 56.

In 2019, Prudential acquired Assurance, a technology-focused insurance startup, to serve the growing market for consumers shopping for insurance online. *Id.* ¶¶ 84, 87; Ex. 1 (Renz Dep.) 24:6–10, 25:15–22. Assurance had a preexisting contract with ActiveProspect, pursuant to which Assurance used TrustedForm to document TCPA consent on Assurance websites. Ex. 23 at 1–2 (Assurance IQ/ActiveProspect Service Proposal).

After Prudential acquired Assurance, Prudential and Assurance personnel built https://www.term.prudential.com, also known as the "Pru Branded Path" ("PBP"), a platform that allowed consumers to receive personalized life insurance quotes based on their "Webform" answers to questions relevant to obtaining life insurance. Renz Dep. 26:1–6; Ex. 7 (Westover Dep.) 65:15–17 (the PBP questions seek "information that enables Prudential to provide or estimate a quote"); Ex. 8 (Schmauser Dep.) 33:15–18 (the PBP Webform included "a series of prompts to the user to provide information that would allow us to generate what we hoped to be an accurate and appropriate quote for them, for a life insurance product"). Assurance already had deployed a customized life insurance webform on its sites; the PBP leveraged the Assurance technology and website infrastructure, including the TrustedForm script. Renz Dep. 33:6–14.

---

[3] Press Release, Prudential, Prudential Again Recognized for Its Strong Ethical Culture (Mar. 4, 2024) https://news.prudential.com/latest-news/feature-stories/feature-stories-details/2024/Prudential-again-recognized-for-its-strong-ethical-culture/default.aspx#:~:text=For%2010%20consecutive%20years%2C%20the,standards%20of%20ethical%20business%20practices.

DEFS.' MOT. FOR SUMMARY JUDGMENT ON PLS.' CLAIM UNDER CAL. PENAL CODE § 631(a)

Prudential.com visitors reached the PBP by clicking "Get an instant quote," which brought up the Webform. SAC ¶ 44. The Webform's last page explained that, by clicking "View My Results," the user "agree[d]" that Prudential and its "affiliates … including Assurance IQ … can contact me for marketing purposes by phone call." Exs. 24 at 26, 25 at 3–4. The request for a call triggered the TCPA's requirement of prior written consent to receive marketing calls. *See* 47 U.S.C. § 227(b)(1).

Prudential and Assurance used TrustedForm on the PBP for a single purpose:  to document their compliance with the TCPA. Renz Dep. 28:2–3; Westover Dep. 236:18–21 ("Legal relied on the TrustedForm certificates to be able to" respond to "complaints or inquiries disputing whether … TCPA consent had been obtained."). To do so, Prudential and Assurance integrated TrustedForm into the PBP, just as that software had been integrated into Assurance's pre-existing webforms. Renz Dep. 30:1–31:10.

## III.    PROCEDURAL HISTORY

### A.    Plaintiffs' Complaints and the Court's Motion to Dismiss Ruling

In November 2022, Plaintiffs filed a class action complaint alleging that Defendants' use of TrustedForm on the Prudential Webform for requesting life insurance quotes (1) violated CIPA § 631(a); (2) violated the California Unfair Competition Law ("UCL"); and (3) invaded their privacy rights under Cal. Const. art. 1, § 1. *See* ECF No. 1. In February 2023, Plaintiffs filed their First Amended Complaint. ECF No. 18.

Defendants moved to dismiss Plaintiffs' claims. The Court dismissed Plaintiffs' UCL claim but held that Plaintiffs had alleged sufficient facts, taken as true, to plausibly state a claim under § 631(a). *Hazel*, 2023 WL 3933073, at *4–5. In particular, the Court held that Plaintiffs had sufficiently pleaded facts that, taken as true and viewed in the light most favorable to Plaintiffs before any discovery had actually taken place, plausibly alleged ActiveProspect was "capable of using the [TrustedForm] recording for other ends." *Id.* at *4.

Plaintiffs filed their SAC on June 6, 2024. Plaintiffs allege that they knowingly and voluntarily provided information on the Prudential Webform to request a life insurance quote—information that they knew would be captured and recorded by Prudential. SAC ¶¶ 67, 71.

DEFS.' MOT. FOR SUMMARY JUDGMENT ON PLS.' CLAIM UNDER CAL. PENAL CODE § 631(a)

Nevertheless, Plaintiffs allege that the use of TrustedForm on the Prudential website to document Plaintiffs' consent to be contacted with insurance quotes violated CIPA.  SAC ¶¶ 113–114.

### B.    Plaintiffs' Motion for Class Certification

In June 2024, after more than a year of discovery, Plaintiffs abandoned their constitutional privacy claim without explanation and sought class certification only on their § 631 claim.  *See* Pls.' Mot. for Class Cert. at 1 n.1, ECF No. 66.  Defendants filed their opposition on September 25, and Plaintiffs filed their reply on November 8.  *See* ECF Nos. 81, 90.  Plaintiffs' class certification motion is currently set for hearing on December 13.

### C.    The Parties' Early Summary Judgment Stipulation

In October 2024, after nearly eighteen months of discovery,[4] the parties submitted a Joint Stipulation requesting that the Court grant Defendants leave to file an early summary judgment motion regarding two elements of Plaintiffs' § 631 claim: (1) whether ActiveProspect is a "third-party eavesdropper" for purposes of § 631(a), *see Javier*, 649 F. Supp. 3d at 896, and (2) whether ActiveProspect "read[] or attempt[ed] to read" Plaintiffs' communications while they were "in transit," *see Love*, 2024 WL 2104497, at *1–2 (quoting § 631(a)).  ECF No. 86.  The Court approved the parties' stipulation the next day.  ECF No. 87.

## IV.    LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]he plain language of Rule 56[] *mandates* the entry of summary judgment … against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (emphasis added).  Where, as here, the plaintiff bears the burden of proof on its claim, the defendant may prove the "absence of a genuine issue of material fact" merely by

---

[4] The parties have conducted extensive discovery on Plaintiffs' § 631 claims, including source code discovery, production of thousands of pages of documents, and multiple 30(b)(1) and 30(b)(6) depositions.  Klaus Decl. ¶ 3.

"pointing out to the district court … that there is an absence of evidence to support the [plaintiff's] case." *Id.* at 323, 325.

## V.    CIPA § 631

CIPA was passed in 1967 to criminalize wiretapping and eavesdropping on telephone conversations.  Cal. Penal Code § 631(a).  Although CIPA is a criminal statute, it includes a civil private right of action.  *See* Cal. Penal Code § 637.2.  The California Supreme Court has held that the rule of lenity requires courts construing ambiguous language in a criminal statute to "adopt the interpretation that is more favorable to the defendant," even when only civil penalties are sought. *See People v. Arias*, 45 Cal. 4th 169, 177 (2008) ("If a statute defining a crime or punishment is susceptible of two reasonable interpretations, we ordinarily adopt the interpretation that is more favorable to the defendant."); *Harrott v. Cnty. of Kings*, 25 Cal. 4th 1138, 1154 (2001) (applying rule of lenity "even though this is not a criminal prosecution because the statute we are construing imposes criminal penalties"); *see also Bittner v. United States*, 598 U.S. 85, 103 (2023) ("the rule of lenity, not to mention a dose of common sense, favors a strict construction" of criminal statutes, even when only civil penalties are sought).

Plaintiffs' claims arise under two prongs of § 631(a).  As against ActiveProspect, Plaintiffs rely on the second prong, which imposes liability where a person "willfully and without consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit." *Javier*, 649 F. Supp. 3d at 897 (quoting Cal. Penal Code § 631(a)(2)); SAC ¶ 114.  As against Prudential/Assurance, Plaintiffs rely on the fourth prong, which imposes liability "where a person 'aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned'" in § 631(a). *Javier*, 649 F. Supp. 3d at 897 (quoting Cal. Penal Code § 631(a)); SAC ¶ 113.

## VI.    ARGUMENT

### A.    ActiveProspect Is Not a Third-Party "Eavesdropper" Under CIPA

Because a party cannot wiretap or eavesdrop on its own conversation, § 631(a) sensibly "contain[s] an exemption from liability for a person who is a 'party' to the communication." *In re*

DEFS.' MOT. FOR SUMMARY JUDGMENT ON PLS.' CLAIM UNDER CAL. PENAL CODE § 631(a)

*Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020).  Courts applying § 631(a) have clarified that the relevant question is whether the alleged third party is more like a "tape recorder" (and thus an extension of a party to the communication and subject to the party exception, *see Rogers v. Ulrich*, 52 Cal. App. 3d 894 (1975)), or like a "friend" secretly listening to the conversation (and thus not a party, *see Ribas*, 38 Cal. 3d 355).  *See Javier*, 649 F. Supp. 3d at 897.

Applying this standard, this Court has held that a software provider like ActiveProspect is an "extension" of the website owner, and is thus exempted from CIPA liability by the party exception, if it "does not have the <u>capability</u> to use its record of the interaction for any other purpose (just as a tape recorder has no independent capability to divulge the recording for any other purpose but that of its owner)." *Javier*, 649 F. Supp. 3d at 896, 900.  Put differently, "the concern is not on whose behalf the recording is undertaken, but whether the recorder is <u>capable</u> of using the recording for other ends.  That is the difference between the tape recorder in *Rogers* and the eavesdropping friend in *Ribas*." *Hazel*, 2023 WL 3933073, at *4 (citation omitted).

The record evidence shows without dispute that ActiveProspect is not capable of using TrustedForm Certificates or user-submitted data for any "other ends," and that this design was purposeful.  ActiveProspect is thus akin to the "tape recorder" in *Rogers* and is subject to CIPA's party exception.

### 1.     ActiveProspect Is Not Technologically Capable of Using TrustedForm Certificates or User Form Inputs for Any Independent Purpose

The undisputed evidence shows that, by design, ActiveProspect is technologically incapable of using TrustedForm Certificates or user form inputs for any "other ends." *See Hazel*, 2023 WL 3933073, at *4.

#### (a)     *ActiveProspect Cannot Use TrustedForm Certificates for Any Independent Purpose*

ActiveProspect stores ██████████ of TrustedForm Certificates—the equivalent of ██ ██████ pages of printed text—at the request and direction of, and on behalf of, TrustedForm account holders like Assurance.  Wolfe Decl. ¶ 20.  But ActiveProspect does not have the technology to locate a particular TrustedForm Certificate, much less link it to a particular website

visit or user, without the associated TrustedForm Certificate URL, which is held and controlled by the TrustedForm account holder.  Ex. 22; *see* Rafferty Dep. 106:6–10 ("[E]ach certificate is like a lock box, and that certificate ID is the key to that lock box.").

Here, *Assurance* (part of Prudential) maintained its own independent, internal database that enabled it to cross-reference the TrustedForm Certificate URL for a specific visit to the Prudential Webform, Ex. 5 (Bao Dep.) 65:21–24.  *ActiveProspect* has no such index.  All ActiveProspect can see is a list of TrustedForm Certificate URLs for a particular account holder, with no indication of what website visit they correspond to, the contents of any Certificate, or any user inputs submitted by any website visitor.  Wolfe Decl. ¶ 39.  As a result, "independently locating the TrustedForm Certificate for any given website visit without the associated TrustedForm Certificate URL (or URLs) would practically be impossible."  Wolfe Decl. ¶ 41.  That is why the Assurance-ActiveProspect contract provided that *Assurance* would "store the TrustedForm Certificate URLs with the leads in their database, knowing *this is the only way to find the TrustedForm Certificate* for a particular" website visitor.  Ex. 23 at 2 (emphasis added); *see* Wolfe Decl. ¶ 37.

ActiveProspect also has no existing technology that would allow it to access or retrieve TrustedForm Certificates in bulk—with or without the associated Certificate URLs.  Wolfe Decl. ¶¶ 40–41.  To the contrary, ActiveProspect's systems are "fundamentally designed to store TrustedForm Certificates in a way that does not permit bulk access to, or retrieval of, TrustedForm Certificates at any time."  Wolfe Decl. ¶ 40.  This is because TrustedForm Certificates are "intended to be retrieved one by one, at the request of a TrustedForm account holder (or their authorized designee)."  Wolfe Decl. ¶ 40.

As a practical and technological matter, ActiveProspect is simply incapable of using TrustedForm Certificates for any purpose beyond providing the TrustedForm service to account holders like Prudential.

(b)     *ActiveProspect Cannot Use User-Submitted Data At All*

The evidence also demonstrates conclusively that ActiveProspect is technologically incapable of using user-submitted data for any purpose, in any form—aggregated or otherwise.

-14-                    Case No. 3:22-cv-07465-CRB

Wolfe Decl. ¶¶ 50–51; Ex. 16; Rafferty Dep. 152:1–4 (Q: "Could you use user-submitted data for any of the aggregated analysis of the types we've been discussing?" A: "No."); Rafferty Dep. 164:16–17 ("We do not use any user-submitted information from TrustedForm."); Rafferty Dep. 106:19–22 ("[W]e don't do anything with user submitted data.  We don't store it.").  In fact, ActiveProspect cannot even see user-submitted data.  Rafferty Dep. 148:5–7 ("[W]e don't use any user submitted data here, because we don't have the capability to see anything that's user submitted.").  Plaintiffs have identified no evidence to the contrary.

As explained in Section II.A.2 *supra*, ActiveProspect "do[es] not store user data or PII in a way that can be extracted or accessed, outside of the session replay contained in the certificate." Ex. 16; *see id.* (TrustedForm "data is stored in a way in which a user cannot query a database to extract PII out of individual certificate archives").  ActiveProspect also cannot do *anything at all* with the user form inputs displayed in the session replay.  Wolfe Decl. ¶ 42 (ActiveProspect "has no way to decipher, collect, or make any use of the user form inputs displayed in the session replays within the TrustedForm Certificates" for any purpose).

*All* of the cases applying *Javier* to this point (so far, all at the pleading stage) have required more to conclude that a purported "eavesdropper" is even plausibly "capable" of using a record of a communication for its own purposes.  *See, e.g.*, *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1002 (N.D. Cal. 2024) (Martínez-Olguín, J.) (dismissing § 631 claim where plaintiff alleged that third-party software provider was "'monitoring' user activity, selling advertising space, and 'harvesting the chat transcripts for valuable data'"); *Jackson v. LinkedIn Corp.*, No. 24-CV-00812, 2024 WL 3823806, at *5 (N.D. Cal. Aug. 13, 2024) (Pitts, J.) (denying motion to dismiss where plaintiff alleged that software provider "received [her] sensitive data and read and used it for its own marketing services").[5]  There is no record evidence here that could show the kind of "capability"

_____

[5] *See also, e.g.*, *Smith v. Google, LLC*, No. 23-CV-03527, 2024 WL 2808270, at *4–5 (N.D. Cal. June 3, 2024) (Pitts, J.) (denying motion to dismiss where plaintiff alleged that Google "*does* read and use Google Analytics data" to create a "detailed dossier" for each Google Analytics user that cross-referenced information captured on various websites); *Turner v. Nuance Commc'ns, Inc.*, No. 22-cv-05827, 2024 WL 2750017, at *8–11 (N.D. Cal. May 28, 2024) (Ryu, J.) (denying motion to dismiss where plaintiff alleged software provider used users' voice recordings "for

that this Court in *Javier*, and subsequent decisions applying *Javier*, found sufficient to survive a motion to dismiss.

Tellingly, Plaintiffs' software expert already analyzed the Highly Confidential TrustedForm source code that governs the storage and use of TrustedForm data in connection with his Report in Support of Class Certification, and *did not opine that ActiveProspect was capable of using TrustedForm Certificates or user-submitted data for any independent purpose*. *See* Decl. of Nina R. Gliozzo in Support of Pls.' Mot. for Class Cert., Ex. 2 (ECF No. 66-3) ("Shafiq Report") ¶ 12(b) & App'x B; Ex. 6 (Shafiq Dep.) 63:24–64:21. Even after requesting and reviewing printed copies of the relevant source code, along with dozens of ActiveProspect documents describing how TrustedForm works, Plaintiffs' expert opined only that "ActiveProspect stores the TrustedForm certificates in its own database." *See* Shafiq Report ¶ 73 & App'x B. Given the centrality of this issue to the case, if Dr. Shafiq had seen evidence showing ActiveProspect could use the data for its own independent purpose, surely he would have said so.

### 2.    Mere "Storage" of Data Does Not Create § 631 Liability

That ActiveProspect stores TrustedForm data on account holders' behalf is not itself a basis for § 631 liability. A contrary reading of the statute would impose liability even on the tape recorder in *Rogers v. Ulrich*, merely because the tape recorder "stored" the relevant information. That is not the law. *See Javier*, 649 F. Supp. 3d at 900 (a "tape recorder" is not liable under § 631 because it "has no independent capability to divulge the recording for any other purpose but that of its owner").

Instead, as the cases applying *Javier* make clear, Plaintiffs must adduce evidence that ActiveProspect is capable of *using* the stored data for its own purposes. *See, e.g.*, *Swarts v. Home Depot, Inc.*, No. 23-cv-00995, 2023 WL 5615453, at *7–8 (N.D. Cal. Aug. 30, 2023) (dismissing § 631 claim because "[n]owhere in [plaintiff's] complaint does he allege that [the software

purposes other than furnishing the data back to the client," such as in "[d]eep neural networks" to develop an "AI Risk Engine"); *Balletto v. Am. Honda Motor Co.* (*Balletto II*), No. 23-CV-01017, 2024 WL 589090, at *1 (N.D. Cal. Feb. 13, 2024) (White, J.) (denying motion to dismiss where plaintiffs alleged Salesforce sent plaintiffs' communications "to its Einstein data intelligence platform" to develop and improve its own "products and services").

provider], or any other third party, can use the information obtained for any other purpose besides relaying it to" the website owner); *Yockey v. Salesforce, Inc.*, No. 22-cv-09067, 2023 WL 5519323, at *4–5 (N.D. Cal. Aug. 25, 2023) (same); *Balletto v. Am. Honda Motor Co.* (*Balletto I*), No. 23-cv-01017, 2023 WL 7026931, at *2–3 (N.D. Cal. Oct. 24, 2023) (same).[6] No such evidence exists here, and therefore the claim fails.

**3.      Section 631(a) Applies to the "Contents" of a Communication, Not to Metadata About a Communication**

Plaintiffs have suggested that § 631(a) extends to ActiveProspect's collection of *metadata*, or "usage data," about TrustedForm Certificates, beyond the *contents* of user communications. That argument fails out of the gate.  The plain text of § 631—along with every case applying the statute—confirms that § 631 applies only to the "contents" of a communication, not to metadata regarding the characteristics of the conversation.  *See* Cal. Penal Code § 631(a) (covering only the "contents or meaning of [the] message, report, or communication"); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1091–92 (N.D. Cal. 2022) (Breyer, J.) ("usage data" is not "contents" under § 631 because "'contents' means 'the intended message conveyed by the communication' as

---

[6] *See also, e.g.*, *Jones v. Tonal Sys., Inc.*, No. 23-CV-1267, 2024 WL 4357558, at *6 (S.D. Cal. Sept. 30, 2024) (allegation that software provider Drift could "'analyze, interpret, and collect customer-support agent interactions in real time …' only supports the inference that Drift receives and stores communications for the benefit of its client, Tonal"); *Heiting v. athenahealth, Inc.*, No. 23-CV-10338, 2024 WL 3761294, at *4 (C.D. Cal. July 29, 2024) (allegations that Salesforce "may record, store, and use communication [*sic*] for the purposes of collecting information about a specific user" and "uses chat data to enhance its own business" were insufficient to show that Salesforce "had the capability to use the communications for any purpose beyond providing it to Defendant"); *Garcia v. Build.com, Inc.*, No. 22-cv-1985, 2024 WL 1349035, at *6 (S.D. Cal. Mar. 29, 2024) (allegations that Salesforce "receives and stores" website visitors' communications insufficient to state CIPA claim because plaintiffs did not "plausibly allege" that Salesforce "has the 'capability' to use the chat data for its own purposes or benefit"); *Rodriguez v. Ford Motor Co.*, No. 23-cv-00598, 2024 WL 1223485, at *13 (S.D. Cal. Mar. 21, 2024) (dismissing CIPA claim where plaintiffs' allegation "only supports the inference that the [software provider] receives and stores these communications for the benefit of its client, Defendant"); *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1017 (C.D. Cal. 2023) ("Plaintiff has not adequately pled factual allegations to support Genesys's capabilities to function as anything other than a tape recorder, storing data for a party to this action."); *Valenzuela v. Super Bright LEDs Inc.*, No. ED CV23-01148, 2023 WL 8424472, at *8 (C.D. Cal. Nov. 27, 2023) (collection and storage of information "does not suggest that the vendor or its software has the capability to use these communications except to furnish them to the owner of the website").

DEFS.' MOT. FOR SUMMARY JUDGMENT ON PLS.' CLAIM UNDER CAL. PENAL CODE § 631(a)

opposed to 'record information regarding the characteristics of the message that is generated in the course of the communication'" (quoting *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014)).

As a result, "[o]f the various website interactions that are allegedly tracked by [TrustedForm], only the form entries would qualify as the 'contents or meaning' of a communication" for purposes of § 631. *Love*, 2024 WL 2104497, at *1 (quoting *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 944–45 (N.D. Cal. 2023)); *see Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021) (dismissing § 631 claim to the extent it was predicated on "non-content information" such as "IP addresses, locations, browser types, and operating systems"). Because § 631 extends only to the "contents" of communications, and not to any related metadata, ActiveProspect's collection of metadata, or "usage data," regarding TrustedForm Certificates has no bearing on Plaintiffs' § 631 claim. Any attempt by Plaintiffs to argue otherwise should be rejected.

### 4. ActiveProspect's End User License Agreement for TrustedForm Confirms Its Lack of Capability

The ActiveProspect EULA further confirms that ActiveProspect is incapable of using TrustedForm Certificates or user inputs for any "other ends." *See Hazel*, 2023 WL 3933073, at *4. The EULA makes clear that "[t]he TrustedForm Certificate is for the sole use of the TrustedForm Account Holder that claims it." Ex. 9 at 2. The EULA further provides that TrustedForm account holders, not ActiveProspect, "control [the] Data and Content that is collected by the TrustedForm Script." Ex. 9 at 4. The EULA grants ActiveProspect "a non-exclusive, non-transferable, limited license, to use [the] Data and Content *solely to the extent that such license is required for provision of the TrustedForm Service*." *Id.* (emphasis added).

Plaintiffs' allegation that the ActiveProspect EULA gives ActiveProspect "the right to use aggregate data" in certain instances has zero bearing on their § 631 claim. *See* SAC ¶ 37. That is because the contractual language on which Plaintiffs rely clearly limits that right to "usage data"— also known as metadata. Ex. 9 at 4; *see* Wolfe Decl. ¶ 19. As explained in Section VI.A.3 *supra*, courts have uniformly held that § 631 extends only to the "contents" of communications, not to

any related metadata.  As a result, whether ActiveProspect reserved the right to use metadata—which indisputably *does not implicate § 631*—is irrelevant to their claim.  *See* Section VI.A.3 *supra*; *see also, e.g.*, *Love*, 2024 WL 2104497, at *1.

Plaintiffs are also incorrect that ActiveProspect's general Terms of Service and privacy policy—both of which apply to the entire spectrum of ActiveProspect products—somehow displace the ActiveProspect EULA, which specifically defines ActiveProspect's rights with respect to TrustedForm.  *See* Pls.' Mot. for Class Cert. at 11–12; *see also* Rafferty Dep. 150:9–11 (ActiveProspect's "terms of service[] covers all of our products," not just TrustedForm); Ex. 10 at 2–5 (listing products to which ActiveProspect's Terms of Service apply); Rafferty Dep. 155:13–21 (ActiveProspect's privacy policy covers "everything privacy related," including "our website, … our products, TrustedForm on third-party sites, et cetera").  It is a "standard rule of contract interpretation" that "specific terms control over general ones."  *Shivkov v. Artex Risk Sols., Inc.*, 974 F.3d 1051, 1063 (9th Cir. 2020); *United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*, 871 F.3d 791, 797 (9th Cir. 2017) ("the rule that the specific governs the general" is a "cardinal rule[] of textual interpretation").  There is no evidence that generic language in ActiveProspect's Terms of Service or privacy policy gives ActiveProspect any rights beyond those spelled out in the ActiveProspect EULA (nor would that make any sense).  And, more importantly, there is no evidence that ActiveProspect is somehow capable of using TrustedForm Certificates or user inputs for any independent purpose, because it is not.

### 5.  Mere Hypothetical "Capability" Does Not Create Liability Under § 631(a)

Plaintiffs have also suggested that even if ActiveProspect is not currently capable of using TrustedForm Certificates or user form inputs for any independent purpose, ActiveProspect hypothetically could in the future invent a program that would enable it to do so.  That is pure speculation.  And "mere allegation and speculation do not create a factual dispute for purposes of summary judgment."  *Hart v. City of Redwood City*, 99 F.4th 543, 554 (9th Cir. 2024) (alteration omitted) (quotation omitted).  Even if Plaintiffs proffer a software expert on this topic, that will not turn speculation into actual evidence.  *See Stephens v. Union Pac. R.R.*, 935 F.3d 852, 856–57

(9th Cir. 2019) ("A party's own speculation is insufficient to create a genuine issue of material fact, and a party cannot make it sufficient simply by finding an expert who is willing to assume its correctness." (citation omitted)).

There is no record evidence that ActiveProspect is capable of inventing the technology that would enable it to retrieve the ███████ of TrustedForm Certificates in its database from cold storage (when retrieving a single Certificate can take several hours); reassemble the session replay for each Certificate; scrape the data from each reassembled session replay; input that data into a new database; convert that data into a searchable format; and then make some sort of unspecified independent use of the data—all in direct violation of the ActiveProspect EULA and ActiveProspect's business model. Ex. 9 at 4; Ex. 16; Rafferty Dep. 109:10–12 ("[W]e're acting as a service provider for the website."). To the contrary, the undisputed evidence shows that no such technology exists or has ever existed in the nearly 15 years since ActiveProspect created TrustedForm. Wolfe Decl. ¶ 8.

Imposing CIPA liability based on a theoretical "capability" to use information would expose website owners to hundreds of millions of dollars in potential damages based on pure speculation about what their service providers have never tried, never done, and do not presently have the capacity to do. Such a dramatic expansion of § 631 would have ramifications far beyond TrustedForm or Plaintiffs' allegations: it would essentially criminalize any third-party "recording" device for acts that were never committed. For example, if a person uses their iPhone to record a phone conversation and saves it in their iCloud account, the fact that Apple may have access to the recorded information—and therefore a theoretical "capability" to use it—does not transform Apple into a third-party eavesdropper under CIPA. Rather, the reasonable conclusion must be that even if a service provider has some hypothetical "capability" to use the stored communications, there cannot be any liability unless the evidence shows the service provider actually has the *present, existing technological capability* to use that information for its own purposes. The evidence confirms, as a matter of law and beyond any dispute, that ActiveProspect has no such capability.

DEFS.' MOT. FOR SUMMARY JUDGMENT ON PLS.' CLAIM UNDER CAL. PENAL CODE § 631(a)

*        *        *

In sum, the evidence shows that, for purposes of § 631(a), ActiveProspect is equivalent to the manufacturer of "a tape recorder," who cannot be liable any time someone who purchases its product chooses to record a conversation with it. *See Javier*, 649 F. Supp. 3d at 900. The goal of § 631 is to protect privacy rights. No privacy rights have been impinged here. The undisputed evidence shows that Prudential used TrustedForm to document its own TCPA compliance on a Prudential website, and that ActiveProspect was not capable of using the resulting TrustedForm Certificates or user form inputs for any purpose beyond providing the TrustedForm service to Prudential. ActiveProspect was thus not a third-party "eavesdropper" for purposes of § 631, and so Plaintiffs' § 631 claim against ActiveProspect fails as a matter of law.

**B.      The Undisputed Evidence Shows that ActiveProspect Did Not Read or Attempt to Read Plaintiffs' Communications While They Were in Transit**

Defendants also are entitled to summary judgment for a second, independent reason: the undisputed facts show that ActiveProspect did not "read[], or attempt[] to read, or to learn the contents or meaning of" Plaintiffs' communications while they were "in transit." *See Love*, 2024 WL 2104497, at *1 (quoting Cal. Penal Code § 631(a)); *James v. Allstate Ins.*, No. 23-CV-01931, 2023 WL 8879246, at *3 (N.D. Cal. Dec. 22, 2023) (no § 631 violation where defendant merely "recorded the data and store[d] it on its servers").

Section 631(a)'s requirement that a defendant "reads, or attempts to read, or to learn the contents or meaning" sets a high bar. The statute's express purpose is to combat "the invasion of privacy" that occurs when a third party not only possesses a communication, but actively tries to understand its private message. *See* Cal. Penal Code § 630. Thus, to "read" or "learn" under § 631(a), the defendant must take some additional action to *interpret or understand* the communications' *substantive message*. *See Gutierrez*, 2024 WL 3511648, at *8 (granting motion for summary judgment on § 631 claim "because Plaintiff has not presented any evidence from which a reasonable jury could conclude Salesforce reads or attempts to read or learn the contents of communications while they are in transit").

-21-                                    Case No. 3:22-cv-07465-CRB
DEFS.' MOT. FOR SUMMARY JUDGMENT ON PLS.' CLAIM UNDER CAL. PENAL CODE § 631(a)

This principle flows from the statutory text itself, which does not define "read" and thus requires courts to apply the term's ordinary meaning. *See DeGeorge v. U.S. Dist. Court*, 219 F.3d 930, 936 (9th Cir. 2000); *De Vries v. Regents of Univ. of Cal.*, 6 Cal. App. 5th 574, 591 (2016). The ordinary meaning of "read" requires action not merely to "scan" text, but also to "interpret" it or gain an "understanding of what is meant." Ex. 26 (*Read*, OED.com, https://www.oed.com/dictionary/read_v?tab=meaning_and_use#26817875). Accordingly, a defendant violates § 631 only if it understands or interprets, or attempts to understand or interpret, the *substantive meaning* of a communication.

Section 631's history and purpose underscore this interpretation. The legislative history "demonstrate[s] that … the California legislature intended to protect … historical privacy rights when [it] passed" CIPA. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 598. Specifically, § 631 "codified the common law tort of invasion of privacy." *Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 WL 1744107, at *2 (9th Cir. May 31, 2022) (Bumatay, J., concurring). The Legislature explained that the law was meant to combat "the invasion of privacy" that came about as a result of eavesdropping. Cal. Penal Code § 630. No actual privacy invasion occurs if a defendant merely possesses data encoding an individual's communication, but never attempts to understand or interpret the *contents* of that communication. A postal carrier, for instance, does not violate an individual's privacy rights simply by carrying a letter, so long as he refrains from reading its contents. *See* Restatement (Second) of Torts § 652B cmt. b (1977) (citing *Vernars v. Young*, 539 F.2d 966, 968, 969 (3d Cir. 1976) (a privacy violation occurs if personal mail is "*opened and read* by unauthorized persons" (emphasis added)).

For this reason, courts have repeatedly held that a defendant does not "read" a communication—even if it "record[s] the data and stores it on its servers"—so long as it (like ActiveProspect) does not actively try to understand or interpret its substantive meaning. *See, e.g., James*, 2023 WL 8879246, at *3 (no § 631 violation where software provider "recorded the data and store[d] it on its servers"). Indeed, even if the software "captures a user's entire site visit," allowing the website owner "to replay every keystroke and click," there is no § 631 violation unless the software provider *actively attempted to decipher the meaning of a communication.*

DEFS.' MOT. FOR SUMMARY JUDGMENT ON PLS.' CLAIM UNDER CAL. PENAL CODE § 631(a)

*Love*, 2024 WL 2104497, at \*1 (no § 631 violation where session replay software provider "provide[d] a tool that allows [website owner] Ladder to record, track, and analyze the interactions that users have with its own site").

Here, ActiveProspect never even attempted to decipher or interpret the "contents or meaning" of Plaintiffs' Webform entries at any point—much less while they were "in transit." *See id.* To the contrary, the undisputed record confirms that ActiveProspect "does not at any point read, or attempt to read, or to learn the contents or meaning of any message or communication … that a visitor may type or otherwise input into a webform that is running the TrustedForm script." Wolfe Decl. ¶ 18. ActiveProspect, in other words, does *nothing* with consumer inputs except to collect and store them as a series of undeciphered "events." Wolfe Decl. ¶ 18.

The events are translated into potentially readable content when they are reassembled into a TrustedForm session replay. Polish Decl. ¶ 113; Wolfe Decl. ¶ 48; Ex. 16. But by definition, ActiveProspect does not create a TrustedForm session replay until after the relevant events have already been stored by ActiveProspect and are no longer "in transit." Polish Decl. ¶ 114; Wolfe Decl. ¶ 25; *see* Cal. Penal Code § 631(a) (imposing liability only where an unauthorized third party "reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is *in transit*" (emphasis added)); *see also Hazel*, 2023 WL 3933073, at \*2 ("[T]he crucial question under § 631(a)'s second clause is whether [plaintiff] has plausibly alleged that [defendant] read one of his communications *while it was still in transit, i.e., before it reached its intended recipient*." (alternations in original) (emphasis added) (quoting *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1137 (E.D. Cal. 2021)).

Even then (after the fact), ActiveProspect still *does not read* the contents of any website visitor's communications. It simply reassembles the "events" to create the session replay without ever attempting to decode their underlying substantive meaning. Wolfe Decl. ¶¶ 18, 48. This makes sense given TrustedForm's purpose is to document the events that occur during a given website visit. TrustedForm need not, and does not, interpret those events to provide documentation of TCPA consent. Wolfe Decl. ¶ 48; *see* Rafferty Dep. 28:1–9 ("[W]hen it comes to what happens on a page, we just look at them as events[.] We're not concerned with what a

DEFS.' MOT. FOR SUMMARY JUDGMENT ON PLS.' CLAIM UNDER CAL. PENAL CODE § 631(a)

consumer inputs on a form; that's of no interest to us."). The record thus confirms *why* ActiveProspect does not interpret user events: there is simply no reason to do so. Wolfe Decl. ¶ 49; *see Love*, 2024 WL 2104497, at *2 (dismissing § 631 claim and noting that "[t]here is no coherent story of how or why FullStory would learn such granular information about users of one of its customers' sites—information that has nothing to do with its alleged service or stated uses of consumer data").

The undisputed evidence shows that TrustedForm used commonplace software tools to collect "events"—like keystrokes, mouse movements, and button clicks—on the Prudential Webform. TrustedForm did not read or attempt to read Webform visitors' communications— while they were "in transit" or otherwise. Plaintiffs' § 631 claim thus fails as a matter of law. *See Gutierrez*, 2024 WL 3511648, at *8 (granting motion for summary judgment on § 631 claim).

**C.** **Because Plaintiffs' Predicate § 631 Claim Against ActiveProspect Fails as a Matter of Law, Plaintiffs' Derivative § 631 Claims Against Prudential and Assurance Also Fail**

The fourth clause of § 631(a) prohibits "aiding, agreeing with, employing, or conspiring with any person 'to unlawfully do, or permit, or cause to be done any of the acts or things' prohibited by the first three clauses of Section 631(a)." *Gutierrez*, 2024 WL 3511648, at *8 (quoting Cal. Penal Code § 631(a)).

Defendants "cannot be liable for aiding and abetting another party in violation of this clause absent a predicate violation of Section 631(a)'s first three clauses." *Id.*; *Cody*, 718 F. Supp. 3d at 1003 (dismissing § 631 claim and holding that, because plaintiff "fail[ed] to establish an underlying third-party violation, she cannot allege aiding and abetting liability"); *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1064 (C.D. Cal. 2023) (dismissing § 631 claim and explaining that "the only viable theory of liability for a website owner like Defendant is under the fourth clause of Section 631(a)").

The undisputed evidence shows that ActiveProspect did not violate § 631(a). Prudential and Assurance necessarily cannot be liable for "aiding and abetting" nonexistent § 631 violations. *See Gutierrez*, 2024 WL 3511648, at *8 (granting summary judgment on "aiding and abetting" claim under § 631(a) "because Plaintiff has not established an underlying violation of Section

631(a)'s first or second clause"); *see also Graham*, 533 F. Supp. 3d at 833 ("Noom is not liable for aiding and abetting FullStory's wrongdoing because there is no wrongdoing.").  The Court should therefore grant summary judgment on Plaintiffs' derivative § 631 claims against Prudential and ActiveProspect.

**D.      The Court Should Resolve Plaintiffs' § 631 Claim Before Ruling on Class Certification**

Plaintiffs have sought class certification only on their § 631 claim.  *See* Pls.' Mot. for Class Cert. at 1 n.1.  For the reasons explained above, that claim fails as a matter of law.  Defendants thus respectfully request that the Court resolve Plaintiffs' § 631 claim on the merits now, before the Court and parties expend any further resources on "needless and costly further litigation" regarding class certification that would be mooted by a grant of summary judgment for Defendants.  *See Gutierrez*, 2024 WL 3511648, at *1 n.1 (granting pre-certification motion for summary judgment on § 631 claim (quoting *Wright*, 742 F.2d at 544)); *Cavanagh v. Humboldt Cnty.*, 1999 WL 96017, at *2 (N.D. Cal. Feb. 22, 1999) (Breyer, J.) ("Because … this lawsuit brought by the named plaintiffs is meritless, it would be wasteful to certify a class at this time."), *aff'd*, 1 F. App'x 686 (9th Cir. 2001).

**VII.    CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' motion for summary judgment on Plaintiffs' § 631 claims.

DATED:  November 15, 2024                    MUNGER, TOLLES & OLSON LLP

By:  _____/s/ Kelly M. Klaus_____
             KELLY M. KLAUS
          Attorneys for Defendants

DEFS.' MOT. FOR SUMMARY JUDGMENT ON PLS.' CLAIM UNDER CAL. PENAL CODE § 631(a)

# **CERTIFICATE OF SERVICE**

I hereby certify that on November 15, 2024, I electronically filed the foregoing Defendants' Motion for Summary Judgment on Plaintiffs' Claim Under Cal. Penal Code § 631(a) with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.  I also caused a copy of all documents that are the subject of Defendants' contemporaneously filed Administrative Motion to Seal to be served via electronic mail on Plaintiffs' counsel.

By:   * /s/ Kelly M. Klaus *
_____
KELLY M. KLAUS

Case No. 3:22-cv-07465-CRB

DEFS.' MOT. FOR SUMMARY JUDGMENT ON PLS.' CLAIM UNDER CAL. PENAL CODE § 631(a)

# APPENDIX A

1.      Abad v. Apple, Inc., No. 5:23-cv-00505 (N.D. Cal.)

2.      Ahringer, et al. v. LoanDepot, Inc., et al., No. 8:23-cv-00186 (S.D. Cal.)

3.      Atkins v. Amplitude, Inc., No. 3:24-cv-04913 (N.D. Cal.)

4.      Aubin v. Carbon Health Technologies, Inc., No. 4:24-cv-00667 (N.D. Cal.)

5.      Augustine v. Great Wolf Resorts, Inc., No. 3:23-cv-00281 (S.D. Cal.)

6.      Augustine v. Lenovo (United States), Inc., No. 3:22-cv-02027 (S.D. Cal.)

7.      Augustine v. Quest Diagnostics, Inc., No. 3:22-cv-01980 (S.D. Cal.)

8.      Balanzar v. HP Inc., No. 3:22-cv-02030 (S.D. Cal.)

9.      Balletto v. American Honda Motor Co., Inc., No. 4:23-cv-01017 (N.D. Cal.)

10.     Barbat v. Sharp Healthcare, No. 3:23-cv-00330 (S.D. Cal.)

11.     Barrott v. Apple, Inc., No. 5:23-cv-00618 (N.D. Cal.)

12.     Bate v. Securly, Inc., No. 3:23-cv-01304 (S.D. Cal.)

13.     Beltran v. Cedars-Sinai Health System, et al., No. 2:23-cv-02626 (C.D. Cal.)

14.     Beltran v. Doctors Medical Center of Modesto, No. 2:23-at-00774 (E.D. Cal.)

15.     Bender v. Twilio Inc., No. 3:24-cv-04914 (N.D. Cal.)

16.     B.K., et al. v. Desert Care Network, et al., No. 2:23-cv-05021 (C.D. Cal.)

17.     Browne v. Cedars-Sinai Health System, et al., No. 2:23-cv-01551 (C.D. Cal.)

18.     Byars v. Wal-Mart.com USA, No. 3:23-cv-04315 (N.D. Cal.) and 23-CIV- 03331 (San Mateo Cty.)

19.     Byars v. Ascena Retail Group, No. CIVSB2315039 (San Bernardino Cty.)

20.     Byars v. Arzz International, Inc., No. 23STCV10924 (Los Angeles Cty.)

21.     Byars v. Cole Haan, LLC d/b/a www.colehaan.com, No. 23STCV12292 (Los Angeles Cty.)

22.     Byars v. Epicor Software Corporation, No. 23STCV14418 (Los Angeles Cty.)

23.     Byars v. Macy's Inc., et al., No. 5:23-cv-00456 (C.D. Cal.) and CIV SB 2217010 (Cal. Super. Ct., San Bernardino Cty.)

24.     Byars v. Sephora USA Inc., No. 5:23-cv-00883 (C.D. Cal.)

25.    C.M. v. Marinhealth Medical Group, Inc., No. 23CV04179 (N.D. Cal.)

26.    C.P. v. Meta Platforms, Inc., No. 3:23-cv-00735 (N.D. Cal.)

27.    Calderon v. Meta Platforms, No. 5:22-cv-09149 (N.D. Cal.),

28.    Camus v. Sharp Healthcare, No. 3:23-cv-00033 (S.D. Cal.)

29.    Cantu v. Accuride International Inc., No. 23STCV16434 (Los Angeles Cty.)

30.    Cantu v. Advent International, L.P., No. 30-2023-01335292 (Cal. Super. Ct., Orange Cty.)

31.    Cantu v. Adventive, Inc., No. 30-2023-01333047 (Cal. Super. Ct., Orange Cty.)

32.    Cantu v. Alimed Inc., No. 23STCV15787 (Los Angeles Cty.)

33.    Cantu v. Belcan, LLC, No. 23STCV14224 (Los Angeles Cty.)

34.    Cantu v. EHOB, Inc., No. 30-2023-01335288 (Cal. Super. Ct., Orange Cty.)

35.    Cantu v. Findit, Inc., No. 23STCV15148 (Los Angeles Cty.)

36.    Cantu v. Gordon Brothers Group, LLC, No. 30-2023-01335009

37.    Cantu v. Jamestown Container Corporation, No. 23STCV16254 (Los Angeles Cty.)

38.    Cantu v. Liveworld, Inc., No. 30-2023-01336517 (Cal. Super. Ct., Orange Cty.)

39.    Cantu v. Navisite LLC, No. 23STCV24019 (Los Angeles Cty.)

40.    Cantu v. Price Indus. Inc., No. 23STCV16163 (Los Angeles Cty.)

41.    Cantu v. Radware Inc., No. 23STCV15147 (Los Angeles Cty.)

42.    Cantu v. Sensus USA Inc., No. 23STCV16173 (Los Angeles Cty.)

43.    Cantu v. Subex, Inc., No. 23STCV16463 (Los Angeles Cty.)

44.    Carithers, et al. v. Google LLC, No. 5:24-cv-06708 (N.D. Cal.)

45.    Cima v. Apple, Inc., 5:23-cv-00397 (N.D. Cal.)

46.    Clavecilla v. Cottage Health et al., No. 2:23-cv-7173 (C.D. Cal.)

47.    Cody v. ABT Electronics, Inc., No. 2:23-cv-05222 and 23STCV06834 (Los Angeles Cty.)

48.    Cody v. Ashley Furniture Industries, LLC, No. 3:23-cv-00065 (S.D. Cal.) and 07-02022-00048182 (Cal. Super. Ct., San Diego Cty.)

49.     Cody v. E. Gluck Corp., d/b/a www.armitron.com, No. 3:23-cv-02286 (N.D. Cal.)

50.     Cody v. Glasses USA, Inc., No. 8:23-cv-01545 (C.D. Cal.)

51.     Cody v. Lacoste USA, Inc., No. 8:23-cv-00235 (C.D. Cal.)

52.     Cody v. Movado Grp., Inc., No. 3:23-cv-00015 (S.D. Cal.) and 37-2022- 00047956 (Cal. Sup. Ct., San Diego Cty.)

53.     Cody v. P.C. Richard & Son Service Company, Inc. d/b/a Pcrichard.com, No. 23STCV07578 (Los Angeles Cty.) and 2:23-cv-03438 (C.D. Cal.)

54.     Cody v. Paula's Choice, LLC, No. 8:23-cv-00182 (C.D. Cal.) and 30-2022- 01298397 (Cal. Super. Ct., Orange Cty.)

55.     Cody v. Ring LLC, No. 3:23-cv-00562 (N.D. Cal.)

56.     Cody v. Skullcandy, Inc., No. 2:23-cv-03356 (C.D. Cal.) and 23STCV06828 (Los Angeles Cty.)

57.     Cody v. Visually, Inc., No. 23STCV07556 (Los Angeles Cty.)

58.     Cole, et al. v. Quest Diagnostics, Inc., No. 2:23-cv-20647 (NJ.)

59.     Cousin v. Sharp HealthCare, No. 3:22-cv-02040 (S.D. Cal.)

60.     Craig v. Meta Platforms, Inc., No. 3:23-cv-00315 (N.D. Cal.)

61.     Curd v. Spirit Airlines, Inc., No. 22-cv-03174-GLR (D. Md. Dec. 8, No. 2022)

62.     D'Angelo et al. v. The General Motors Co., No. 3:23-cv-00985 (S.D. Cal.)

63.     D'Angelo v. FCA US, LLC, No. 3:23-cv-00982 (S.D. Cal.)

64.     D'Angelo v. Nissan North America Inc., No. 3:23-cv-00980 (S.D. Cal.)

65.     D'Angelo v. Penney Opco, LLC, No. 3:23-cv-00981 (S.D. Cal.)

66.     D'Angelo v. Sears, Roebuck, and Co., No. 3:23-cv-00977 (S.D. Cal.)

67.     Daghaly v. Bloomingdales.com LLC, No. 3:23-cv-00129 (C.D. Cal.)

68.     Danforth v. Placentia-Linda Hospital, Inc., Tenant Healthcare Corp., No. 30- 2023- 01321351 (Cal. Super. Ct., Orange Cty.)

69.     Davis v. Hoag Memorial Hospital Presbyterian, No. 8:23-cv-00772 (C.D. Cal.) and 30-2023-01312941 (Cal. Super. Ct., Orange Cty.)

70.     Dhruva v. Curiosity Inc., No. 3:23-cv-03863 (N.D. Cal.) (formerly 5:23cv3863 (N.D. Cal.))

71.     Diaz v. Anaplan, Inc., No. 23STCV23428 (Los Angeles Cty.)

72.     Diaz v. Clarivoy Inc. d/b/a www.clarivoy.com, No. 23STCV14266 (Los Angeles Cty.)

73.     Diaz v. Life is Good Co, No. 30-2023-01337168 (Los Angeles Cty.)

74.     Diaz v. Moody's Analytics, Inc., No. 23STCV22729 (Los Angeles Cty.)

75.     Diaz v. Pacific Office Automation, Inc., No. 23STCV23260 (Los Angeles Cty.)

76.     Diaz v. Rapid7, Inc., No. 23STCV24164 (Los Angeles Cty.)

77.     Diaz v. Ringlogix, LLC, No. 23STCV14805 (Los Angeles Cty.)

78.     Diaz v. Sonicwall, Inc., No. 23CV423495 (Santa Clara Cty.)

79.     Dluzak v. Apple, Inc., No. 5:23-cv-00426 (N.D. Cal.)

80.     Doe v. Amgen Inc., No. 2:23-cv-07448 (C.D. Cal.) and No. 2023CUNP012132 (Ventura Cty.)

81.     Doe v. Family Planning Associated Medical Group, Inc, No. 23CV037304 (Alameda Cty.)

82.     Doe v. Betterhelp, Inc., No. 3:23-cv-01096 (N.D. Cal.)

83.     Doe v. County of Santa Clara d/b/a Santa Clara Valley Medical Center, No. 5:23-cv-04411 (N.D. Cal.)

84.     Doe v. Goodrx Holdings, Inc., Criteo Corp., Meta Platforms, Inc., and Google LLC, No. 3:23-cv-00501 (N.D. Cal.)

85.     Doe v. Google LLC, No. 5:23-cv-02343 (N.D. Cal.)

86.     Doe v. Google LLC, No. 5:23-cv-02431 (N.D. Cal.)

87.     Doe v. Hey Favor, Inc., FullStory Inc., Meta Platforms, Inc., TikTok, Inc., and ByteDance Inc., No. 3:23-cv-00059 (N.D. Cal.)

88.     Doe v. Hoag Memorial Presbyterian Hospital, No. 30-2023-0132765 (Cal. Super. Ct., Orange Cty.) and 8:23-cv-00444 (C.D. Cal.)

89.     Doe v. Kaiser Foundation Health Plan, Inc., Kaiser Foundation Hospitals, and The Permanente Medical Grp., Inc., No. 4:23-cv-02207 (N.D. Cal.)

90.     Doe v. Meta Platforms, Inc., No. 3:22-cv-07557 (N.D. Cal.)

91.     Doe v. Microsoft Corporation, et al. No. 2:23-cv-00718 (W.D. Wa.)

92.     Doe v. Phe, Inc., No. 2:23-cv-08021 (C.D. Cal)

93.    Doe v. Tenet Healthcare Corp, No. 1:23AT620 (E.D. Cal.)

94.    Doe v. Washington Township Health Care District, No. 3:23-cv-05016 (N.D. Cal) and 23CV041046 (Alameda Cty.)

95.    Durham v. Cabela's LLC, No. 2:23-cv-01630 (C.D. Cal.)

96.    E.H. v. Meta Platforms, Inc., No. 3:23-cv-04784 (N.D. Cal)

97.    Esparza v. 23andMe Inc., No. 37-2022-00051047 (Cal. Super. Ct., San Diego Cty.)

98.    Esparza v. Camelot Venture Group, LLC d/b/a Sharperimage.com, No. 23STCV09814 (Los Angeles Cty.)

99.    Esparza v. Concentrix Corp., No. 3:22-cv-01994 (S.D. Cal.) and 37-2022- 00042499 (Cal. Sup. Ct., San Diego Cty.)

100.    Esparza v. Crocs, Inc., No. 3:22-cv-01842 (S.D. Cal.) and 37-2022- 00042517 (Cal. Sup. Ct., San Diego Cty.)

101.    Esparza v. Ecco USA, Inc., No. 37-2023-00009235 (Cal. Super. Ct., San Diego)

102.    Esparza v. ECI Software Solutions, Inc., No. 37-2023-00025427 (Cal. Super. Ct., San Diego Cty.)

103.    Esparza v. Expedia, Inc., No. 37-2023-00003062 (Cal. Super. Ct., San Diego Cty)

104.    Esparza v. Fanduel Inc., No. 3:22-cv-01853 (S.D. Cal.) and 37-2022- 00042370 (Cal. Sup. Ct., San Diego Cty.)

105.    Esparza v. Gen Digital, Inc., No. 2:23-cv-08223 (C.D. Cal.)

106.    Esparza v. JP Outfitters, Inc., No. 37-2023-00006099 (Cal. Super. Ct., San Diego Cty.)

107.    Esparza v. Kohls Inc., No. 37-2022-00051963 (Cal. Super. Ct., San Diego Cty.)

108.    Esparza v. Lego Sys., Inc. d/b/a Lego.com, No. 2:23-cv-01278 (C.D. Cal.) and 23STCV00833  (Los Angeles Cty.)

109.    Esparza v. Lenox Corp., d/b/a lenox.com, No. 3:22-cv-09004 (N.D. Cal.)

110.    Esparza v. Lulu's Fashion Lounge, LLC, No. 2:23-cv-08083 (C.D. Cal) and 23STCV19903 (Los Angeles Cty.)

111.    Esparza v. National Automative Parts Association LLC, No. 23STCV22438 (Los Angeles Cty.)

112.    Esparza v. Pacific Sunwear of California LLC, No. 37-2023-00006127 (Cal. Super. Ct., San Diego Cty.)

113.    Esparza v. Sally Beauty Supply LLC, No. 30-2022-01294734 (Orange Cty.)

114.    Esparza v. Simplehuman, LLC 37-2023-00009247 (Cal. Super. Ct., San Diego Cty.)

115.    Esparza v. Tracfone Wireless, Inc., No. 2:23-cv-04863(C.D. Cal.) and 23STCV10908 (Los Angeles Cty.)

116.    Esparza v. UAG Escondido A1 Inc. d/b/a AcuraofEscondido.com, No. 3:23- cv-00102 (S.D. Cal.) and 37-2022-00047997 (Cal. Sup. Ct., San Diego Cty.)

117.    Esparza v. Wellness Coaches USA LLC, No. 37-2023-00003078 (Cal. Super. Ct., San Diego Cty)

118.    Ewing v. 360 Tax Strategy Corp., No. 3:23-cv-01427 (S.D. Cal.)

119.    Ewing v. Alleviate Tax, No. 3:23-cv-01231 (S.D. Cal)

120.    Ewing v. Freedom Forever, LLC, No. 3:23-cv-01240 (S.D. Cal.)

121.    Ewing v. Palmetto Solar, LLC, No. 3:23-cv-01292 (S.D. Cal.)

122.    Ewing v. Rogers, No. 3:23-cv-01379 (S.D. Cal)

123.    Farley v. Apple, Inc., No. 2:23-cv-00524 (N.D. Cal.)

124.    Federman v. Cerebral Inc., No. 2:23-cv-01803 (C.D. Cal.)

125.    G. v. TherapyMatch, Inc. d/b/a Headway, No. 4:23-cv-04422 (N.D. Cal) and 23CV037579 (Alameda Cty.)

126.    Garcia v. Asana Inc., d/b/a asana.com, No. 30-2023-01332991 (Cal. Super. Ct., Orange Cty.)

127.    Garcia v. BPS Direct, LLC, No. 23STCV01281 (Cal. Sup. Ct., Los Angeles Cty.)

128.    Garcia v. Build.com, Inc., No. 3:22-cv-01985 (S.D. Cal.) and 37-2022- 00046686 (Cal. Super. Ct., San Diego Cty.)

129.    Garcia v. Coulter Ventures LLC, d/b/a roguefitness.com, No. 23STCV08872 (Los Angeles Cty.)

130.    Garcia v. Cybercartel Int'l Inc., No. 23STCV16506 (Los Angeles Cty.)

131.    Garcia v. Doximity, Inc., d/b/a Doximity.com, No. 23STCV09965 (Los Angeles Cty.)

132.    Garcia v. First Factory, Inc. d/b/a www.firstfactory.com, No. 23STCV14715 (Los Angeles Cty.)

133.    Garcia v. Global Uprising, PBC, No. 2023-01336364 (Orange Cty.)

134.    Garcia v. IFit Inc., No. 23STCV01286 (Cal. Sup. Ct., Los Angeles Cty.)

135.  Garcia v. Infiniscene, Inc., No. 2023-01336952 (Orange Cty.)

136.  Garcia v. International Consulting Group, No. 30-2023-01337111 (Los Angeles Cty.)

137.  Garcia v. L.L. Bean, Inc., No. 37-2022-00046730 (Cal. Super. Ct., San Diego Cty.)

138.  Garcia v. No Borders Dental Resources, Inc., No. 22STCV40517 (Los Angeles Cty.)

139.  Garcia v. Nuvei Technologies Inc., No. 23STCV14840 (Los Angeles Cty.)

140.  Garcia v. Peter Millar, LLC, No. 23STCV01278 (Cal. Sup. Ct., Los Angeles Cty.)

141.  Garcia v. Presidio, Inc. d/b/a www.presidio.com, No. 23STCV14712 (Los Angeles Cty.)

142.  Garcia v. Rachas, Inc., d/b/a www.chuzefitness.com, No. 37-2023-00026081 (San Diego Cty.)

143.  Garcia v. Sampler Stores, Inc., No. 23STCV17320 (Los Angeles Cty.)

144.  Garcia v. Samsung Electronics America, Inc., No. 37-2023-00005775 (Cal. Super. Ct., San Diego Cty.)

145.  Garcia v. Shopperschoice.com, LLC, d/b/a BBQGuys.com, No. 23STCV08866 (Los Angeles Cty.)

146.  Garcia v. Shutterfly, LLC, No. 37-2023-00005766 (Cal. Super. Ct., San Diego Cty.)

147.  Garcia v. Smartsheet, Inc., No. 30-2023-01332982 (Cal. Super. Ct., Orange Cty.)

148.  Garcia v. Sportsman's Guide, LLC, No. 3:22-cv-09005 (N.D. Cal.)

149.  Garcia v. THGPP LLC, No. 23STCV08863 (Los Angeles Cty.)

150.  Garcia v. Untuckit LLC, No. 30-2023-01335784 (Orange Cty.)

151.  Garcia v. Workday Inc., No. 23STCV09372 (Los Angeles Cty.)

152.  Garcia v. Yeti Coolers LLC, No. 2:23-cv-02643 (C.D. Cal.) and 23STCV04680 (Los Angeles Cty.)

153.  Garland v. 7 Cups of Tea, Co., No. 5:23-cv-04492 (N.D. Cal.)

154.  Gershzon v. Meta Platforms, Inc., No. 3:23-cv-00083 (N.D. Cal.)

155.  Gibson v. Planned Parenthood Federation of America, Inc., No. 3:23-cv- 04529 (N.D. Cal.)

156. Gibson v. Stanford Health Care, No. 23CV413522 (Cal. Super. Ct., Santa Clara Cty.)

157. Givan v. Loanme, Inc. d/b/a Redo Lending, No. 30-2023-01314865 (Cal. Super. Ct., Orange Cty.)

158. Gladstone v. Amazon Web Service, Inc., No. 2:23-cv-00491 (W.D. Wa.)

159. Gorey v. Scripps Health, No. 3:23-cv-00519 (S.D. Cal.) and 37-2023- 00004850 (Cal. Super Ct., San Diego Cty.)

160. Griffith v. TikTok, Inc., et al., No. 5:23-cv-00964 (C.D. Cal.)

161. Gutierrez v. Leesa Sleep, LLC, No. 23STCV17756 (Los Angeles Cty.)

162. Gutierrez v. Converse, Inc., No. 2:23-CV-06547 (C.D. Cal) and 23STCV15583 (Los Angeles Cty.)

163. Gutierrez v. Dave and Matt Vans, LLC, No. 23STCV00987 (Los Angeles Cty.) and 2:23-cv-02012 (C.D. Cal.) and 23STCV00987 (Los Angeles Cty.)

164. Gutierrez v. Digital Assets Inc., No. 23STCV04469 (Cal. Super Ct., Los Angeles Cty.)

165. Gutierrez v. Fibre Glass Developments Corp., LLC, No. 23STCV04470 (Cal. Super Ct., Los Angeles Cty.)

166. Gutierrez v. Four Sigma Foods, Inc., No. 2:23-cv-01421 (C.D. Cal.) and 23STCV01486 (Cal. Super Ct., Los Angeles Cty.)

167. Gutierrez v. Nano Net Technologies Inc., No. 23STCV20256 (Los Angeles Cty.)

168. H. v. Medtronic Minimed, Inc., No. 2:23-cv-007154 (C.D. Cal.)

169. H., et al. v. Meta Platforms, Inc., No. 3:23-cv-04784 (N.D. Cal.)

170. Hamilton v. Infomedia Grp. d/b/a Carenet, No. 30-2022-01296978 (Cal. Super. Ct., Orange Cty.)

171. Harrill v. Emanuel Medical Center, No. 2:23-at-00777 (E.D. Cal.)

172. Hazel v. Prudential Financial, Inc. and ActiveProspect, Inc., No. 3:22-cv- 07465 (N.D. Cal.) and 4:22-cv-07465 (N.D. Cal.)

173. Heard v. Torrance Memorial Medical Center, et al., No. 2:22-cv-09466 (C.D. Cal.)

174. Heerde, et al. v. Learfield Communications LLC, et al., No. 2:23-cv-04493 (C.D. Cal.)

175. Heinz v. Amazon.com, Inc., No. 2:23-cv-01073 (W.D. Wa.) and No. 2:23-cv-00282 (E.D. Cal.)

176.    Heiting v. Arlo Technologies, Inc., No. 23STCV13511 (Los Angeles Cty.)

177.    Heiting v. Arzz International, Inc., No. 23STCV21816 (Los Angeles Cty.)

178.    Heiting v. Aviator Nation, Inc., No. 23STCV17652 (Los Angeles Cty.)

179.    Heiting v. Bokksu, Inc., No. 23STCV19987 (Los Angeles Cty.)

180.    Heiting v. Bose Corp., No. 23STCV15897 (Los Angeles Cty.)

181.    Heiting v. Brilliant Earth, LLC, No. 23STCV15840 (Los Angeles Cty.)

182.    Heiting v. Char-Broil, LLC, No. 23STCV15960 (Los Angeles Cty.)

183.    Heiting v. HarperCollins Publishers LLC, No. 23STCV10382 (Los Angeles Cty.)

184.    Heiting v. Iron Mountain, Inc., a Massachusetts Corp., No. 23STCV19708 (Los Angeles Cty.)

185.    Heiting v. Iron Mountain, Inc., an Alabama Corp., No. 23STCV19701 (Los Angeles Cty.)

186.    Heiting v. Kantata, Inc., No. 23STCV15827 (Los Angeles Cty.)

187.    Heiting v. Lulu's Fashion Lounge, LLC, No. 2:23-cv-08083 (C.D. Cal) and 23CV01867 (Butte Cty.)

188.    Heiting v. Marriott International, INC., et al., No. 2:23-cv-10822 (C.D. Cal.) and 23STCV26803 (Los Angeles Cty.)

189.    Heiting v. Nutanix, Inc., No. 23CV423607 (Santa Clara Cty.)

190.    Heiting v. Printful, Inc, No. 23STCV16685 (Los Angeles Cty.)

191.    Heiting v. Ringcentral, Inc., No. 2:23-cv-02649 (C.D. Cal.) and 23STCV05116 (Los Angeles Cty.)

192.    Heiting v. SafetyCulture, Inc., No. 23STCV13598 (Los Angeles Cty.)

193.    Heiting v. Shipt, Inc., No. 23STCV19688 (Los Angeles Cty.)

194.    Heiting v. Sleep Number Co., No. 23STCV15963 (Los Angeles Cty.)

195.    Heiting v. Smart & Final Stores, LLC, No. 23STCV24168 (Los Angeles Cty.)

196.    Heiting v. Taro Pharmaceuticals USA Inc., No. 23STCV19790 (Los Angeles Cty.)

197.    Heiting v. The Children's Place, Inc., CIVSB2317853 (San Bernardino Cty.)

198.    Heiting v. The Container Store, Inc., No. 2:23-cv-08073 (C.D. Cal) and 23STCV20250 (Los Angeles Cty.)

199. Heiting v. Uline, Inc, No. 2:23-cv-07288 (C.D. Cal) and 23STCV18117(Los Angeles Cty.)

200. Heiting v. United Telecom, LLC, No. 23STCV09953 (Los Angeles Cty.)

201. Heiting v. Valvoline, Inc., No. 23STCV22583 (Los Angeles Cty.)

202. Heiting v. Vitamind Shoppe Industries, LLC, No. 23STCV16758 (Los Angeles Cty.)

203. Hernandez v. Afresh Technologies Inc., No. 23STCV175429 (Cal. Super. Ct. Los Angeles)

204. Hernandez v. Carnival Corp., No. 3:23-cv-01034 (S.D. Cal.) (formerly Oliver v. Carnival Corp., No. 2:22-cv-01855 (W.D. Pa.))

205. Hernandez v. Datatracks, Inc., No. 23STCV16470 (Cal. Super. Ct., Los Angeles)

206. Hernandez v. Hyperverge, Inc., No. 23STCV16432 (Los Angeles Cty.)

207. Hernandez v. Lumaverse Technologies Inc. d/b/a Fundly.com, No. 37-2023-00025527 (Cal. Super. Ct., San Diego Cty.)

208. Hernandez v. Meshpay US, Inc., No. 23STCV17552 (Los Angeles Cty.)

209. Hernandez v. MRI Software LLC, No. 23STCV14389 (Los Angeles Cty.)

210. Hernandez v. Northland Telephone Systems, No. 23STCV15163 (Los Angeles Cty.)

211. Hernandez v. Paralleldots, Inc., No. 23STCV17529 (Los Angeles Cty.)

212. Hernandez v. Simplify Compliance, LLC, No. 23STCV15142 (Los Angeles Cty.)

213. Howard v. Laboratory Corp. of America (Labcorp), Laboratory Corp. of America Holdings and Meta Platforms, Inc., No. 3:23-cv-02773 (N.D. Cal.)

214. Hughes v. Baby Trend, No. 23STCV16366 (Los Angeles Cty.)

215. Hughes v. Inovalon Holdings, Inc., No. 23STCV21810 (Los Angeles Cty.)

216. Hughes v. Institute of Business & Finance, No. 23STCV23284 (Los Angeles Cty.)

217. Hughes v. Jane Marketplace LLC, No. 23STCV04976 (Los Angeles Cty.)

218. Hunt v. Meta Platforms, Inc., No. 5:23-cv-04953 (N.D. Cal)

219. Hunthausen v. Books-A-Million, Inc., No. 23STCV20314 (Los Angeles Cty.)

220. Hunthausen v. Costway.com, Inc., CIVSB2317309 (San Bernardino Cty.)

221. Hunthausen v. Docusign Inc., No. 23STCV18224 (Los Angeles Cty.)

222. Jackson v. LinkedIn Corporation, No. 5:24-cv-00812 (N.D. Cal.)

223. James and Sevesind v. The Walt Disney Co., No. 3:23-cv-02500 (N.D. Cal.)

224. James v. Allstate Insurance Company, No. 3:23-cv-01931 (N.D. Cal)

225. James v. Sentai Filmworks, LLC, No. 5:23-cv-03928 (N.D. Cal.)

226. Jersey Mike's Franchise Systems, Inc. v. American Arbitration Association, Inc. (AAA), Augustine, and Lahr, No. 3:23-cv-03444 (D.N.J.)

227. Jones v. Arhaus, LLC, No. 3:23-cv-00984 (S.D. Cal.)

228. Jones v. Ergatta, Inc., No. 3:23-cv-00983 (S.D. Cal.)

229. Jones v. iFit, Inc. d/b/a www.NordicTrack.com, No. 3:23-cv-00983 (S.D. Cal.)

230. Jones v. Peloton Interactive, Inc., No. 3:23-cv-01082 (S.D. Cal.) and 37- 2023-00023416 (Cal. Super. Ct., San Diego Cty.)

231. Jones v. Tonal Sys., Inc., No. 3:23-cv-01267 (S.D. Cal.) and 37-2023- 00023025 (Cal. Super. Ct., San Diego)

232. K. v. Eisenhower Medical Center, No. 5:23-cv-02092 (C.D. Cal)

233. Katz-Lacabe v. Oracle America, Inc., No. 3:22-cv-04792 (N.D. Cal.)

234. Kauffman v. Meta Platforms, Inc., No. 4:22-cv-06658 (N.D. Cal.)

235. Kauffman v. The Home Depot, Inc., No. 3:23-cv-00259 (S.D. Cal.)

236. Kendrick v. Bissell, Inc., No. 3:23-cv-01016 (N.D. Cal.)

237. L.M. v. BetterHelp, Inc., No. 3:23-cv-01382 (N.D. Cal.)

238. Lau v. Gen Digital Inc. and Jumpshot Inc., No. 4:22-cv-08981 (N.D. Cal.)

239. Leija v. Rite Aid Corp., No. 23at608 (E.D. Cal.)

240. Licea v. A.P.P Group Inc., No. 23STCV16533 (Los Angeles Cty.)

241. Licea v. Adidas America, Inc., No 5:22-cv-02077 (C.D. Cal.)

242. Licea v. Bob's Discount Furniture LLC, No. CIVSB2319459 (San Bernardino Cty.)

243. Licea v. Books-A-Million Inc., No. 37-2023-00013708 (Cal. Super. Ct., San Diego Cty.)

244. Licea v. Brainpop LLC, No. CIVSB2319420 (San Bernardino Cty.)

245.   Licea v. Brentwood Home, LLC, No. 37-2023-00016717 (Cal. Super. Ct., San Diego Cty.)

246.   Licea v. Brooklyn Bedding, No. 23STCV04925 (Los Angeles Cty.)

247.   Licea v. Caspio, Inc., No. 23STCV14839 (Los Angeles Cty.)

248.   Licea v. Chewy, Inc., No. 3:22-cv-01852 (S.D. Cal.) and 37-2022-00042310

       (Cal. Sup. Ct., San Diego Cty.)

249.   Licea v. Chipotle Mexican Grill, Inc., No. 37-2023-00013692 (Cal. Super. Ct., San Diego Cty.)

250.   Licea v. Converse, Inc., No. 23STCV22389 (Los Angeles Cty.)

251.   Licea v. DAC Group/New York, Inc., No. 23STCV15816 (Los Angeles Cty.)

252.   Licea v. Doximity, Inc., No. 37-2023-00003125 (Cal. Super. Ct., San Diego Cty)

253.   Licea v. Estee Lauder Inc., ELC Online Inc., No. 3:23-cv-00726 (S.D. Cal.)

254.   Licea v. Everly Well, Inc., No. 37-2023-00003035 (Cal. Super. Ct., San Diego Cty.)

255.   Licea v. Fossil Group Inc., d/b/a Fossil.com, No. 23STCV00831 (Los Angeles Cty.)

256.   Licea v. Glassparency Products, Inc., No. 22STCV40411 (Los Angeles Cty.)

257.   Licea v. Globecast America Incorporated, No. 23STCV16165 (Los Angeles Cty.)

258.   Licea v. Globema US, LLC, No. 2023-01334975 (Cal. Super. Ct., Orange Cty.)

259.   Licea v. Jabian LLC, No. 2023-01335063 (Cal. Super. Ct., Orange Cty.)

260.   Licea v. Jackson Motorsports Grp., Inc., No. 30-2023-01336540 (Orange Cty.)

261.   Licea v. Jerome's Furniture Warehouse, No. CIVSB2319450 (San Bernardino Cty.)

262.   Licea v. JNT Company, LLC, No. 23STV16244 (Los Angeles Cty.)

263.   Licea v. Jockey Int'l, Inc., No. 23STCV02906 (Los Angeles Cty.)

264.   Licea v. KEH, Inc., No. 23STCV19000 (Los Angeles Cty.)

265.   Licea v. Kontoor Brands, Inc., No. 2:23-cv-05903 (C.D. Cal.)

266.   Licea v. Lasko Products, No. 2023-01336361 (Orange Cty.)

267.    Licea v. Levi Strauss, Co., No. 23STCV17313 (Los Angeles Cty.)

268.    Licea v. Lightedge Solutions LLC, No. 37-2023-00025419 (Cal. Super. Ct., San Diego Cty.)

269.    Licea v. Lumeris Healthcare Outcomes, LLC, No. 23STCV14680 (Los Angeles Cty.)

270.    Licea v. Malwarebytes Inc., CIVSB2224245 (Cal. Super. Ct., San Bernardino Cty.)

271.    Licea v. Mattress Firm, Inc., No. 3:22-cv-09002 (N.D. Cal.)

272.    Licea v. McGraw Hill, LLC, d/b/a www.mheducation.com, No. 23STCV12283 (Los Angeles Cty.)

273.    Licea v. Men's Warehouse LLC, No. 23STCV02964 (Los Angeles Cty.)

274.    Licea v. Puma North America, Inc., No. 5:22-cv-01939 (C.D. Cal.) and CIVSB2216492 (Cal. Super. Ct., San Bernadino Cty.)

275.    Licea v. Rack Room Shoes, Inc., No. 23STCV22458 (Los Angeles Cty.)

276.    Licea v. St. John's Knits, Inc., No. 23STCV22474 (Los Angeles Cty.)

277.    Licea v. Sunroad Auto Holding Corp., d/b/a BMW of El Cajon, No. 37- 2022-00046821 (Cal. Super. Ct., San Diego Cty.)

278.    Licea v. Talkspace, Inc., No. 37-2023-00003186 (Cal. Super. Ct., San Diego Cty)

279.    Licea v. The Finish Line, Inc., No. 23STCV22390 (Los Angeles Cty.)

280.    Licea v. The Howard Hughes Corp., No. 23STCV14667 (Los Angeles Cty.)

281.    Licea v. The McClatchy Co., No. 23STCV14444 (Los Angeles Cty.)

282.    Licea v. Timex.com, Inc., et al., No. 5:23-cv-00691 (C.D. Cal.) and CIVSB222412 (Cal. Super. Ct., San Bernardino Cty.)

283.    Licea v. Tommy Hilfiger USA, Inc., No. 3:22-cv-01851 (S.D. Cal.) and 37- 2022-00042365 (Cal. Sup. Ct., San Diego Cty.)

284.    Licea v. Tumi, Inc., No. 37-2023-00013705 (Cal. Super. Ct., San Diego Cty.)

285.    Licea v. Ulta Salon, Cosmetics & Fragrance, Inc., No. 5:23-cv-00201 (C.D. Cal.)

286.    Licea v. Vitacost.com, No. 3:22-cv-01854 (S.D. Cal.) and 37-2022- 00042326 (Cal. Sup. Ct., San Diego Cty.)

287.    Licea v. X-Chair, LLC, No. 22STCV40421 (Los Angeles Cty.)

288. Lieca v. Global Comunications Group, Inc., No. 23STCV16259 (Los Angeles Cty.)

289. Lightoller v. Jetblue Airways Corp., No. 3:23-cv-00361 (S.D. Cal.)

290. Lightoller v. TCF Co. LLC, d/b/a The Cheesecake Factory, No. 3:23-cv- 00272 (S.D. Cal.)

291. Lineberry, et al. v. AddShopper, Inc. et al., No. 3:23-cv-01996 (N.D. Cal.)

292. Love v. Ladder Financial, Inc. et al., No. 3:23-cv-04234 (N.D. Cal.)

293. Lucero v. Apple, Inc., No. 5:23-cv-00901 (N.D. Cal.)

294. Lynch v. Express Scripts Holding Company, No. 3:23-cv-01170 (N.D. Cal.)

295. Magadan v. Palomar Health, No. 37-2023-00012347 (Cal. Super. Ct., San Diego Cty.)

296. Mandeng v. Spirit Airlines, Inc., No. 3:23-cv-00233 (S.D. Cal.) and No. 2:23-cv- 00784 (W.D. Pa.)

297. Marden v. Lmnd Medical Group, Inc. 3:23-cv-03288 (N.D. Cal)

298. Marquez v. Millerknoll, Inc., No. 4:23-cv-03861 (N.D. Cal.)

299. Marquez v. Rack Room Shoes, Inc., No. 4:23-cv-03859 (N.D. Cal.)

300. Martin v. Foot Locker Retail, Inc., No. 3:23-cv-00319 (N.D. Cal)

301. Matousek v. Noom, Inc., No. 2:23-cv-01639 (C.D. Cal.)

302. Mavis v. JC USA, Inc. d/b/a Jenny Craig, No. 37-2023-00003705 (Cal. Super. Ct., San Diego Cty.)

303. McGinnis v. Community.com, Inc., No. 2:23-cv-2426 (C.D. Cal.)

304. McKay v. Nugs.net Enterprises, Inc., No. 23CV1900 (N.D. Cal)

305. Mendez v. Best Western International, Inc., No. 5:23-cv-03860 (N.D. Cal.)

306. Mikulsky v. Bloomingdales, LLC and Bloomingdales.com, LLC, No. 3:23- cv-00425 (S.D. Cal.)

307. Mikulsky v. Carnival Corp., No. 3:23-cv-1034 (S.D. Cal.)

308. Mikulsky v. Noom, Inc., No. 3:23-cv-00285 (S.D. Cal.)

309. Miller v. Pentagon Federal Credit Union, Verisk Analytics, Inc., and Lead Intelligence, Inc., No. 2:23-cv-04785 (C.D. Cal.)

310. Mirmalek v. Los Angeles Times Communications LLC, No. 3:24-cv-01797 (N.D.

Cal.)

311.   Moody v. C2 Educational Systems, Inc., et al., No. 2:24-cv-04249 (C.D. Cal.)

312.   Moore v. BPS Direct, LLC, No. 3:22-cv-01951 (S.D. Cal.)

313.   Moore v. Carhartt, Inc., No. 3:23-cv-00145 (S.D. Cal.)

314.   Moton v. Apple Inc., No. 5:23-cv-00709 (N.D. Cal.)

315.   Munoz v. Alianza, Inc., No. 30-2023-01333071 (Cal. Super. Ct., Orange Cty.)

316.   Munoz v. I.P.S. Group, No. 30-2023-01337861 (Orange Cty.)

317.   Munoz v. Qumpus, Inc., No. 23STCV16469 (Los Angeles Cty.)

318.   Munoz v. Sharpspring Inc., d/b/a sharpspring.com, No. 3:23-cv-01130 (S.D. Cal.)

319.   Murphy v. Meta Platforms, Inc., No. 23-cv-00899 (N.D. Cal.)

320.   Naugle v. Meta Platforms Inc., No. 3:22-cv-09200 (N.D. Cal.)

321.   Popa v. Apple, Inc., No. 3:23-cv-00548 (N.D. Cal.)

322.   Porter v. The Regents of the University of California, No. 37-2023- 00011636 (Cal. Super. Ct., Orange Cty.)

323.   Posadas v. Goodyear Tire & Rubber Co., No. 3:23-cv-00402 (S.D. Cal.)

324.   Price v. Carnival Corp., No. 3:23-cv-00236 (S.D. Cal.) and 3:23-cv-00404 (S.D. Cal.)

325.   Przywara v. Five9, Inc., No. 3:23-cv-01757 (N.D. Cal.)

326.   Purscelley v. Cengage Learning, Inc., No. 23STCV14225 (Los Angeles Cty.)

327.   R.C. v. Walgreen Co., No. 5:23-cv-01933 (C.D. Cal)

328.   R.S. v. Betterhelp, Inc., No. 3:23-cv-1839 (N.D. Cal.)

329.   Ramirez v. Deckers Outdoor Corp., No. 23STCV15919 (Los Angeles Cty.)

330.   Ramirez v. Herschel Supply Company, Ltd., No. 23CV7278 (C.D. Cal.) and 23STCV17910 (Los Angeles Cty.)

331.   Ramirez v. Impreva, Inc., No. 23STCV19983 (Los Angeles Cty.)

332.   Ramirez v. Indochino Apparel, Inc., No. 23STCV22093 (Los Angeles Cty.)

333.   Ramirez v. Jack Riley Investments, LLC d/b/a Pink Lily Boutique, No. 23STCV13154 (Los Angeles Cty.)

334. Ramirez v. The Neiman Marcus Grp., LLC, No. 23STCV10451 (Los Angeles Cty.)

335. Ramirez v. Toast, Inc., No. 23STCV22582 (Los Angeles Cty.)

336. Ramirez v. Trusper, Inc., No. 5:24-cv-02012 (N.D. Cal.)

337. Ramirez v. Viking Range, LLC 23STCV16877 (Los Angeles Cty.)

338. Ramos v. The Gap, Inc., No. 4:23-cv-04715 (N.D. Cal.)

339. Rocha v. Urban Outfitters, Inc., No. 4:23-cv-00542 (N.D. Cal.)

340. Rodriguez v. Arotech Corp., No. 23STCV15751 (Los Angeles Cty.)

341. Rodriguez v. Bissel, Inc., No. 2023-01335888 (Orange Cty.)

342. Rodriguez v. Ford Motor Co., No. 3:23-cv-00598 (S.D. Cal.) and 37-2023- 00008717 (Cal. Super Ct., San Diego Cty.)

343. Rodriguez v. General Mills, Inc., No. 3:23-cv-00828 (S.D. Cal.) and 37- 2023-00013709 (Cal. Super. Ct., San Diego Cty.)

344. Rodriguez v. GNC Holdings LLC, No. 37-2023-00008920 (Cal. Super Ct., San Diego Cty.)

345. Rodriguez v. Hilton Worldwide Holdings, Inc., No. 37-2023-00016876 (Cal. Super. Ct., San Diego Cty.)

346. Rodriguez v. Ingenious Med, Inc., No. 30-2023-01334980 (Orange Cty.)

347. Rodriguez v. Level Wing Media LLC, No. 23STCV16192 (Los Angeles Cty.)

348. Rodriguez v. Simpleview LLC, No. 23STCV14432 (Los Angeles Cty.)

349. Rodriguez v. Supplyframe, Inc., No. 23STCV15226 (Los Angeles Cty.)

350. Rodriguez v. The Bay Clubs Co., No. 23STCV14449 (Los Angeles Cty.)

351. Rodriguez v. Vicci Eyewear, LLC, No. 37-2023-00009720 (Cal. Super. Ct., San Diego Cty.)

352. Rodriguez v. Xpressmyself.com LLC, No. 23STCV16193 (Los Angeles Cty.)

353. Rodriguez v. Zenni Optical, Inc., No. 3:23-cv-00821 (S.D. Cal.) and 37- 2023-00012709 (Cal. Super. Ct., San Diego Cty.)

354. Rose v. Sansum Clinic, No. 2:23-cv-08180 (W.D. Cal) and 2:23-cv-06538 (C. D. Cal.)

355. S., et al. v. Selectquote Insurance Services, No. 3:23-cv-02258 (S.D. Cal.)

356. Saeedy, et al. v. Microsoft Corporation, No. 2:23-cv-01104 (W.D. Wa.)

357. Santiago v. Petco Animal Supplies Stores, Inc., No. 3:23-cv-00227 (S.D. Cal.) (Formerly Pl. Meehan)

358. Serrano v. Apple, Inc., No. 3:23-cv-00487 (N.D. Cal.)

359. Shah v. Fandom, Inc., No. 3:24-cv-01062 (N.D. Cal.)

360. Shanahan, et al. v. IXL Learning, Inc., No. 3:24-cv-02724 (N.D. Cal.)

361. Slaten v. Dick's Sporting Goods, Inc., No. 2:23-cv-04861 (C.D. Cal.)

362. Smidga, et al. v. Spirit Airlines, Inc., No. 2:22-cv-1578-MJH, 2:23-cv-00784-MJH, 2:23-cv-00895-MJH

363. Smith v. Google LLC, No. 5:23-cv-03527 (N.D. Cal.)

364. Smith v. Volvo Car USA, LLC, No. 3:22-cv-01965 (S.D. Cal.)

365. Smith v. Yeti Coolers LLC, No. 3:24-cv-01703 (N.D. Cal.)

366. Snader, et al. v. JNR Incorporated, No. 8:22-cv-02254 (C.D. Cal.)

367. Spalinger v. El Camino Hospital, No. 23CV412292 (Santa Clara Cty.) and 5:23-cv-02350 (C.D. Cal.)

368. Stewart v. Advocate Aurora Health, Inc., et al., No. 23-cv-00900 (N.D. Cal.)

369. Strehl v. Guitar Center, Inc., No. 2:23-cv-02603 (C.D. Cal.) and 23STCV03275 (Los Angeles Cty.)

370. Subbaiah v. Tax Defender USA LLC, No. 8:23-cv-01287 (C.D. Cal.)

371. Swarts v. The Home Depot, Inc., No. 4:23-cv-00995 (N.D. Cal.) and 23CV410599 (Cal. Super. Ct., Santa Clara Cty.)

372. T. v. Openai et al, No. 3:23-cv-04557 (N.D. Cal.)

373. Tanner v. Acushnet Company, et al., No. 8:23-cv-00346 (C.D. Cal.)

374. Teixeira v. Apple, Inc., No. 5:23-cv-00617 (N.D. Cal.)

375. Thomas v. Papa Johns Int'l, Inc., d/b/a Papa Johns, No. 3:22-cv-02012 (S.D. Cal.)

376. Tobajian v. The Allstate Corporation, No. 2:23-cv-00753 (C.D. Cal.)

377. Toston v. JetBlue Airways Corp., No. 2:23-cv-01156 (C.D. Cal.)

378. V.K. v. Betterhelp, Inc., No. 3:23-cv-01653 (N.D. Cal.)

379. Vaccaro v. Altais, et al., No. 2:23-cv-04513 (C.D. Cal.)

380. Valdez v. Emanate Health, No. 2:23-cv-07828 (C.D. Cal)

381. Valenzuela v Amica Mutual Insurance Company, No. 23STCV04849 (Los Angeles Cty.)

382. Valenzuela v. Air Hydro Power LLC, No. 23STCV17590 (Los Angeles Cty.)

383. Valenzuela v. Alexander Wang LLC, No. 23STCV12422 (Los Angeles Cty.)

384. Valenzuela v. Alixpartners, LLP, d/b/a alixpartners.com, No. 23STCV15686 (Los Angeles Cty.)

385. Valenzuela v. As Beauty LLC dba Lauragellar.com, No. 23STCV10403 (Los Angeles Cty.)

386. Valenzuela v. Asteelflash USA Corp., No. 2023-01335341 (Orange Cty.)

387. Valenzuela v. Bedding Pros, LLC, No. 23STCV02945 (Cal. Super. Ct. LA Cnty.)

388. Valenzuela v. Bootbarn, Inc., No. 22STCV40497 (Los Angeles Cty.)

389. Valenzuela v. Boxcom, Inc., No. 37-2023-00016674 (Cal. Super. Ct., San Diego Cty.)

390. Valenzuela v. Brand, No. 30-2023-01337235 (Los Angeles Cty.)

391. Valenzuela v. Build-A-Bear Workshop, Inc., No. 23STCV04542 (Cal. Super Ct., Los Angeles Cty.)

392. Valenzuela v. C.C. Filson Co., No. 2:23-cv-03387 (C.D. Cal.) and 23STCV06952 (Los Angeles Cty.)

393. Valenzuela v. CNO Services, LLC, No. 5:22-cv-02084 (C.D. Cal.) and CVRI2204525 (Cal. Sup. Ct., Riverside Cty.)

394. Valenzuela v. Delivery.com LLC 30-2023-01336839 (Orange Cty.)

395. Valenzuela v. Dermacare LLC, d/b/a Bluechew.com, No. 37-2022- 00047405 (Cal. Sup. Ct., San Diego Cty.)

396. Valenzuela v. Direct Digital LLC, No. 23STCV23963 (Los Angeles Cty.)

397. Valenzuela v. Electronic Commodities Exchange, L.P., dba www. Ritani.com, No. 23STCV10477 (Los Angeles Cty.)

398. Valenzuela v. Engage3, Inc., d/b/a Engage3.com, No. 30-2022-01297903 (Cal. Super. Ct., Orange Cty.)

399. Valenzuela v. Ensinger, Inc., No. 23STCV16268 (Los Angeles Cty.)

400. Valenzuela v. Faherty Brand, LLC, No. 8:23-cv-01574 (C.D. Cal.) and 30- 2023-01997235 (Orange Cty.)

401. Valenzuela v. Farfetch.com US, LLC, No. 23STCV00831 (Los Angeles Cty.)

402. Valenzuela v. Fathead, LLC 2:23-cv-01960 (C.D. Cal.) and 23STCV02969 (Cal. Super. Ct. LA Cnty.)

403. Valenzuela v. Givenchy Corp., No. 23STCV01298 (Cal. Sup. Ct., Los Angeles Cty.)

404. Valenzuela v. Healthy Directions, LLC, No. 23STCV23968 (Los Angeles Cty.)

405. Valenzuela v. Hims & Hers Health, Inc., No. 3:23-cv-00011 (S.D. Cal.) and 37-2022-00047422 (Cal. Sup. Ct., San Diego Cty.)

406. Valenzuela v. Homage, LLC, No. 8:23-cv-01601 (C.D. Cal.) and 30-2023- 01336826 (Orange Cty.)

407. Valenzuela v. Intersystems Corporation, No. 2023-01335008 (Cal. Super. Ct., Orange Cty.)

408. Valenzuela v. Jane Marketplace, LLC, No. 4:23-cv-02543 (N.D. Cal.)

409. Valenzuela v. Jivox Corporation, No. 23STCV17589 (Los Angeles Cty.)

410. Valenzuela v. Kaspersky Lab, Inc., No. 2:22-cv-09157 (C.D. Cal.) and 22STCV26119 (Cal. Sup. Ct., Los Angeles)

411. Valenzuela v. Keurig Green Mountain, Inc., d/b/a Keurig.com, No. 3:22-cv- 09042 (N.D. Cal.)

412. Valenzuela v. Kroger Co., No. 2:22-cv-06382 (C.D. Cal.) and 22STCV25119 (Cal. Sup. Ct., Los Angeles)

413. Valenzuela v. Lamar Media, Corp., No. 30-2023-01336536 (Cal. Super. Ct., Orange Cty.)

414. Valenzuela v. Livechat, Inc., No. 2023-01333056 (Cal. Super. Ct., Orange Cty.)

415. Valenzuela v. Loews Hotels, LLC d/b/a Loewshotels.com, No. 23STCV07546 (Los Angeles Cty.)

416. Valenzuela v. Medtronic, Inc., No. 23STCV24138 (Los Angeles Cty.)

417. Valenzuela v. Micron Technology, Inc., No. 2:23-cv-07058 (C.D. Cal.) and 23STCV17448 (Los Angeles Cty.)

418. Valenzuela v. Noble House Hotels & Resorts, LP d/b/a Laubergedelmar.com, No. 23STCV07524 (Los Angeles Cty.)

419.   Valenzuela v. Nuts.com, Inc., No. 23STCV24003 (Los Angeles Cty.)

420.   Valenzuela v. Outdoor Voices, Inc., No. 23STCV19526 (Los Angeles Cty.)

421.   Valenzuela v. Pierre Fabre USA, Inc., No. 3:22-cv-02079 (S.D. Cal.) and 37-2022-00047487 (Cal. Sup. Ct., San Diego Cty.)

422.   Valenzuela v. Rugs USA LLC, No. 30-2022-01294507 (Cal. Sup. Ct., Orange Cty.)

423.   Valenzuela v. Sia International Trading Limited, No. 23STCV07626 (Los Angeles Cty.)

424.   Valenzuela v. Stonex Group, Inc., No. 23STCV16084 (Los Angeles Cty.)

425.   Valenzuela v. Super Bright LEDS Inc. dba SuperBrightLEDS.com, No. 5:23-cv-01148 (C.D. Cal.)

426.   Valenzuela v. Tecovas, Inc., No. 23STCV17318 (Los Angeles Cty.)

427.   Valenzuela v. Telesign Corporation, No. 23STCV17434 (Cal. Super. Ct., Los Angeles Cty.)

428.   Valenzuela v. VF Outdoor LLC, d/b/a Smartwool.com, No. 37-2022- 00046954 (Cal. Super. Ct., San Diego Cty.)

429.   Valenzuela v. Wakefern Food Corp., No. 23STCV15220 (Los Angeles Cty.)

430.   Valenzuela v. West Marine Products Inc., No. 5:22-cv-02082 (C.D. Cal.) and CVRI2204524 (Cal. Sup. Ct., Riverside Cty.)

431.   Valenzuela v. World Wildlife Fund, Inc., No. 2:23-cv-06112 (C.D. Cal.) and 23STCV14554 (Los Angeles Cty.)

432.   Valladolid v. Memorial Health Services, No. 2:23-cv-03007 (C.D. Cal.)

433.   Vincent v. National Debt Relief LLC, No. 1:24-cv-00440 (S.D. NY.)

434.   Willis v. InMarket Media, LLC, No. 3:24-cv-00511 and 3:24-cv-00683 (N.D. Cal.)

435.   Wilson v. The Regents of the University of California, 37-2023-00012463 (Cal. Super. Ct., San Diego Cty.)

436.   Wright v. Greenlight Financial Tech., Inc., No. 3:22-cv-02025 (S.D. Cal.)

437.   Wright v. Ulta Salon, Cosmetics & Fragrance, Inc., No. 3:22-cv-01954 (S.D. Cal.)

438.   Yockey v. Salesforce, Inc., No. 4:22-cv-09067 (N.D. Cal.)

439.   Zarif v. Hwareh.com, Inc., No. 3:23-cv-00565 (S.D. Cal.)