KELLY M. KLAUS (State Bar No. 161091)
kelly.klaus@mto.com
JONATHAN H. BLAVIN (State Bar No. 230269)
jonathan.blavin@mto.com
VIRGINIA GRACE DAVIS (State Bar No. 336732)
grace.davisfisher@mto.com
MUNGER, TOLLES & OLSON LLP
560 Mission Street, Twenty-Seventh Floor
San Francisco, California 94105-2907
Telephone:    (415) 512-4000
Facsimile:    (415) 512-4077

LAURA D. SMOLOWE (State Bar No. 263012)
laura.smolowe@mto.com
SIDNEY EISNER (State Bar No. 349400)
sidney.eisner@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:    (213) 683-9100
Facsimile:    (213) 687-3702

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| VALERIE TORRES and RHONDA HYMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>PRUDENTIAL FINANCIAL, INC., ACTIVEPROSPECT, INC., and ASSURANCE IQ, LLC,<br><br>Defendants. | Case No. 3:22-cv-07465-CRB<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' CLAIM UNDER CAL. PENAL CODE § 631(a)**<br><br>*[Filed concurrently: Declaration of Virginia Grace Davis]*<br><br>Date: April 11, 2025<br>Time: 10:00 a.m.<br>Courtroom: Courtroom 6 – 17th Floor<br>Judge: Hon. Charles R. Breyer |

**REDACTED VERSION OF DOCUMENT**

**PROPOSED TO BE FILED UNDER SEAL**

REPLY ISO MOT. FOR SUMMARY JUDGMENT ON PLS.' CLAIM UNDER CAL. PENAL CODE § 631(a)

# TABLE OF CONTENTS

**Page**

I.    Introduction and Summary of Argument ..................................................................1

II.   Plaintiffs Do Not Identify Any Factual Disputes Precluding Summary Judgment................2

III.  The Rule of Lenity Applies to § 631 ....................................................................2

IV.   The Factual Record and Clear Case Law Repudiate Plaintiffs' Claim That
      ActiveProspect Is a Third-Party "Eavesdropper"....................................................3

      A.   Plaintiffs' Argument That ActiveProspect Is an "Unannounced Second
           Auditor" Under *Ribas v. Clark* Misreads *Ribas* and Ignores *Javier* .........................3

      B.   Plaintiffs Concede That ActiveProspect Lacks the Existing Capability to
           Use TrustedForm Certificates or User-Submitted Data for any "Other Ends" ..........4

      C.   Plaintiffs' Remaining "Capability" Arguments Rest on Speculation That Is
           Contrary to the Undisputed Facts..................................................................6

           1.   Plaintiffs' Argument That ActiveProspect Can Use TrustedForm
                Data Because It "Records the Entire Session" Is Belied by the
                Record and Inconsistent with *Javier* ...........................................................7

           2.   Plaintiffs' "Access" Arguments Misstate the Record ...................................8

           3.   Plaintiffs' Attempt to Insert Metadata into the § 631 Analysis
                Disregards 60 Years of Cases Construing § 631 .........................................10

           4.   Plaintiffs' Mischaracterizations of ActiveProspect's Terms of
                Service and Privacy Policy Disregard the Record and Ninth Circuit
                Law.............................................................................................10

V.    Plaintiffs' "Read or Attempt to Read" Arguments Contradict the Record and the
      Uniform Case Law Interpreting § 631 .................................................................11

      A.   Plaintiffs' Attempt to Expand the Definition of "Reads or Attempts to
           Read" Conflicts with Every Case Construing That Provision ...............................11

      B.   The Record Confirms ActiveProspect Did Not "Read or Attempt to Read"
           Plaintiffs' Communications at Any Point ..........................................................12

      C.   Plaintiffs Do Not Dispute That TrustedForm Collects and Immediately
           Encodes Undeciphered Events Without Ever Attempting to Discern Their
           Substantive Meaning...................................................................................12

      D.   Plaintiffs' Claim That ActiveProspect Can "Attempt to Read" Stored
           Communications After the Fact Contradicts the Plain Text of § 631 ......................13

      E.   Plaintiffs' Remaining Arguments Depend on Code Created by Their
           Software Expert for this Litigation That Works Differently from
           TrustedForm ............................................................................................14

REPLY ISO MOT. FOR SUMMARY JUDGMENT ON PLS.' CLAIM UNDER CAL. PENAL CODE § 631(a)

VI.    Plaintiffs' "Consent" Arguments Are Irrelevant, as Plaintiffs Cannot Show a
Violation of § 631 ................................................................................................15

VII.    Conclusion...............................................................................................................15

REPLY ISO MOT. FOR SUMMARY JUDGMENT ON PLS.' CLAIM UNDER CAL. PENAL CODE § 631(a)

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Balletto v. Am. Honda Motor Co.*,
2023 WL 7026931 (N.D. Cal. Oct. 24, 2023) ..................................................................5

*Boulton v. Community.com, Inc.*,
2025 WL 314813 (9th Cir. Jan. 28, 2025) .................................................................13, 14

*Cody v. Ring LLC*,
2025 WL 240763 (N.D. Cal. Jan. 16, 2025) .....................................................................5

*Garcia v. Yeti Coolers, LLC*,
2023 WL 5736006 (C.D. Cal. Sept. 5, 2023) ....................................................................5

*Griffith v. TikTok, Inc. (Griffith I)*,
2024 WL 4874556 (C.D. Cal. Oct. 22, 2024) ...................................................................1

*Griffith v. TikTok, Inc. (Griffith II)*,
2024 WL 5279224 (C.D. Cal. Dec. 24, 2024) ..................................................................2

*Gutierrez v. Converse Inc.*,
2024 WL 3511648 (C.D. Cal. July 12, 2024) .........................................................7, 9, 12

*Hazel v. Prudential Fin., Inc.*,
2023 WL 3933073 (N.D. Cal. June 9, 2023) ...................................................................12

*Heiting v. athenahealth, Inc.*,
2024 WL 3761294, at *4 (C.D. Cal. July 29, 2024) .....................................................5, 7

*James v. Allstate Ins. Co.*,
2023 WL 8879246 (N.D. Cal. Dec. 22, 2023) ...........................................................11, 12

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) ......................................................................1, 3, 4

*Jones v. Tonal Sys., Inc.*,
2024 WL 4357558 (S.D. Cal. Sept. 30, 2024) ..................................................................5

*Love v. Ladder Fin., Inc.*,
2024 WL 2104497 (N.D. Cal. May 8, 2024) ...................................................................11

*Project Veritas v. Schmidt*,
125 F.4th 929 (9th Cir. 2025) ..........................................................................................2

*Rodriguez v. Ford Motor Co.*,
2024 WL 4957566 (S.D. Cal. Dec. 3, 2024)......................................................................5

REPLY ISO MOT. FOR SUMMARY JUDGMENT ON PLS.' CLAIM UNDER CAL. PENAL CODE § 631(a)

*Shah v. Fandom, Inc.*,
2024 WL 4539577 (N.D. Cal. Oct. 21, 2024) ..................................................................................3

*Shams v. Revature LLC*,
621 F. Supp. 3d 1054 (N.D. Cal. 2022) .........................................................................................3

*Shivkov v. Artex Risk Sols., Inc.*,
974 F.3d 1051 (9th Cir. 2020)......................................................................................................11

*Stephens v. Union Pac. R.R. Co.*,
935 F.3d 852 (9th Cir. 2019)......................................................................................................1, 6

*Williams v. DDR Media, LLC*,
2023 WL 5352896 (N.D. Cal. Aug. 18, 2023)............................................................................4, 15

*Williams v. DDR Media, LLC*,
2024 WL 4859078 (N.D. Cal. Nov. 20, 2024)...............................................................1, 2, 11, 13

*Yockey v. Salesforce, Inc.*,
688 F. Supp. 3d 962 (N.D. Cal. 2023) .........................................................................................5, 7

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021)........................................................................................10

**STATE CASES**

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002).....................................................................................................................3

*Gruber v. Yelp Inc.*,
55 Cal. App. 5th 591 (2020).............................................................................................................3

*Kearney v. Salomon Smith Barney, Inc.*,
39 Cal. 4th 95 (2006).......................................................................................................................3

*People v. Arias*,
45 Cal. 4th 169 (2008).....................................................................................................................3

*Ribas v. Clark*,
38 Cal. 3d 355 (1985).......................................................................................................................3

*Rogers v. Ulrich*,
52 Cal. App. 3d 894 (1975)..............................................................................................................3

*Smith v. LoanMe, Inc.*,
11 Cal. 5th 183 (2021)......................................................................................................................3

**STATE STATUTES**

Cal. Penal Code § 631 ....................................................................................................... *passim*

Cal. Penal Code § 632 ..................................................................................................................3

Cal. Penal Code § 632.7 ...............................................................................................................3

Cal. Penal Code § 638.50(b) ........................................................................................................3

REPLY ISO MOT. FOR SUMMARY JUDGMENT ON PLS.' CLAIM UNDER CAL. PENAL CODE § 631(a)

## I.      **Introduction and Summary of Argument**

Plaintiffs' Opposition ("Opp.") confirms that the material facts regarding ActiveProspect's TrustedForm software are undisputed.  Those undisputed facts, in turn, compel summary judgment on two independently dispositive grounds:

- *No Third-Party Eavesdropper:*  Plaintiffs do not dispute that ActiveProspect—whose TrustedForm software was used by Prudential solely to document TCPA compliance— lacks the "current technological capability" to use the TrustedForm records it created for Prudential for its "own purposes."  Opp. at 15.  As a matter of law, ActiveProspect is not a "third-party eavesdropper" under § 631(a).  *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023); Summ. Jmt. Mot. ("MSJ") at 15–17 (citing 14 cases requiring existing capability under *Javier*).  Plaintiffs' speculation that ActiveProspect *might one day create* a program to use TrustedForm data is unsupported by the record, and is based on "opinions" from an expert who misrepresented his investigation and previously has been criticized for conducting a "deeply flawed analysis" leading to "absurd results."  *Griffith v. TikTok, Inc.* (*Griffith I*), 2024 WL 4874556, at *2 (C.D. Cal. Oct. 22, 2024); Defs.' Mot. to Exclude Dr. Shafiq's Opinions, ECF No. 121-3 ("*Daubert* Motion").  Plaintiffs' "speculation is insufficient to create a genuine issue of material fact," and Plaintiffs "cannot make it sufficient simply by finding an expert who is willing to assume its correctness."  *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856–57 (9th Cir. 2019).

- *No "Read or Attempt to Read":*  A defendant does not "read or attempt to read" a communication under § 631 unless it takes "some action to interpret or understand the communication's *substantive meaning*."  *Williams v. DDR Media, LLC*, 2024 WL 4859078, at *5 (N.D. Cal. Nov. 20, 2024) (Illston, J.) (emphasis added).  Plaintiffs appear to concede, and the record establishes, that ActiveProspect never attempted to interpret the substantive meaning of Plaintiffs' communications.  Opp. at 20–25.  Plaintiffs argue that collecting undeciphered "events" is "attempting to read" communications while "in transit," on the theory that an "attempt" can "be completed" long after a communication is stored.  The case law flatly contradicts that proposition.

REPLY ISO MOT. FOR SUMMARY JUDGMENT ON PLS.' CLAIM UNDER CAL. PENAL CODE § 631(a)

Plaintiffs' effort to reframe the § 631 issue as one of "consent" is a distraction. Consent is not at issue. Defendants' Motion concerns two specific requirements of one narrow wiretapping statute. The undisputed facts show that the use of TrustedForm here *did not violate § 631*, so Plaintiffs' "consent" arguments are irrelevant.

Plaintiffs are seeking hundreds of millions of dollars in damages based on speculation about things ActiveProspect has never tried to do, never done, and in fact cannot do—and that are prohibited by ActiveProspect's EULA and contrary to its entire business model. MSJ at 18–19. Plaintiffs have no support for their unprecedented and expansive liability theory. To the contrary, an ever-increasing number of courts continue to grant summary judgment on similar § 631 claims. *E.g.*, *Williams*, 2024 WL 4859078, at *1 (granting summary judgment on § 631 claim involving session replay software); *Griffith v. TikTok, Inc.* (*Griffith II*), 2024 WL 5279224, at *10 (C.D. Cal. Dec. 24, 2024). The Court should grant summary judgment.

## II.    Plaintiffs Do Not Identify Any Factual Disputes Precluding Summary Judgment

Plaintiffs' Opposition does not identify a single material fact in dispute. Opp. at 7–8. Critically, the way TrustedForm collects and stores information on behalf of TrustedForm account holders is undisputed. ActiveProspect's existing *in*ability to use that information for any purpose other than providing the TrustedForm service is also undisputed.

The only purported "disputes" Plaintiffs identify are immaterial, *see* Opp. at 15, 17, 24, or are questions of law that can and should be resolved on summary judgment. *See id.* at 7 (asserting that "there are triable issues of material fact" on the question of "whether ActiveProspect is more like a tape recorder or a third-party eavesdropper" under § 631, which turns on the legal meaning of "capability" under *Javier*); *id.* at 22 (contending that "[w]hether ActiveProspect reads or attempts to read the contents of Plaintiffs' communications" in transit under § 631 "is a disputed issue," when the question of what it means to "read[] or attempt[] to read" is one of law).

## III.    The Rule of Lenity Applies to § 631

Plaintiffs' arguments against applying the rule of lenity to interpreting a criminal statute, Cal. Penal Code § 631, do not hold water. Opp. at 8–9. Plaintiffs' cited cases either did not actually involve the rule of lenity, *see Project Veritas v. Schmidt*, 125 F.4th 929, 938, 954–55 (9th

REPLY ISO MOT. FOR SUMMARY JUDGMENT ON PLS.' CLAIM UNDER CAL. PENAL CODE § 631(a)

Cir. 2025) (Oregon statute prohibiting audio recordings of oral conversations that raised unique concerns not present here), or construed *unambiguous* statutory language and thus did not implicate the rule, *see Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 202 (2021) (interpretation of unambiguous "statutory language" in Cal. Penal Code § 632.7).[1]  Plaintiffs do not contend § 631 is similarly unambiguous.  Opp. at 8–9.

Plaintiffs admit, as they must, that "the California Supreme Court is the final arbiter of California law."  Opp. at 14 (quoting *Shams v. Revature LLC*, 621 F. Supp. 3d 1054, 1059 (N.D. Cal. 2022)).  Plaintiffs' cases do not undermine the California Supreme Court's requirement that courts construing ambiguous language in a criminal statute, like § 631, must "adopt the interpretation that is more favorable to the defendant," even when only civil penalties are involved.  MSJ at 12 (quoting *People v. Arias*, 45 Cal. 4th 169, 177 (2008)).

**IV.    The Factual Record and Clear Case Law Repudiate Plaintiffs' Claim That ActiveProspect Is a Third-Party "Eavesdropper"**

    **A.    Plaintiffs' Argument That ActiveProspect Is an "Unannounced Second Auditor" Under *Ribas v. Clark* Misreads *Ribas* and Ignores *Javier***

Plaintiffs try to analogize ActiveProspect to the eavesdropping friend in *Ribas v. Clark*, 38 Cal. 3d 355 (1985).  Opp. at 10–12.  This argument misreads *Ribas* and cannot be reconciled with this Court's *Javier* decision and the more than 15 cases applying it.  *See Javier*, 649 F. Supp. 3d at 896, 900 (whether a software provider is more like the "tape recorder" in *Rogers v. Ulrich*, 52 Cal. App. 3d 894 (1975), or the "friend" in *Ribas* turns on whether it has "the <u>capability</u> to use its record of the interaction for any other purpose"); MSJ at 15–17, n.3 *infra* (collecting cases).

The friend in *Ribas* undisputedly had the ***present, existing capability*** to use what she overheard for any purpose, at any time, with no restrictions.  *See Ribas*, 38 Cal. 3d at 358–59.  TrustedForm, in contrast, cannot even interpret the communications in the first place; it simply stores a record of each website visit as a series of undeciphered "events."  MSJ at 23.  Plaintiffs

---

[1] *See also Gruber v. Yelp Inc.*, 55 Cal. App. 5th 591, 608 (2020) (construing "unambiguous" text of Cal. Penal Code §§ 632 and 632.7); *Flanagan v. Flanagan*, 27 Cal. 4th 766 (2002) (similar); *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95 (2006) (similar); *Shah v. Fandom, Inc.*, 2024 WL 4539577, at *3 (N.D. Cal. Oct. 21, 2024) (construing "clear" text of § 638.50(b)).

REPLY ISO MOT. FOR SUMMARY JUDGMENT ON PLS.' CLAIM UNDER CAL. PENAL CODE § 631(a)

identify no evidence that ActiveProspect could use those records for any independent purpose or could invent the software to enable it to do so. *Id.* at 12–21; *see* Section IV.C *infra*. Indeed, any such effort would contradict the ActiveProspect EULA and the undisputed evidence showing that ActiveProspect treats TrustedForm as a tool controlled by the account holder. MSJ at 8–9, 18–20.

Plaintiffs are wrong to claim that ActiveProspect is like the friend in *Ribas* because its CEO offered testimony in 2021 *on behalf of TrustedForm account holders* "authenticat[ing]" and "verif[ying]" three TrustedForm Certificates (out of the over 2.5 billion TrustedForm Certificates created each year). Opp. at 10–12; Davis Decl. ISO MSJ Reply ("Davis Decl.") Ex. F (AP0000676). When ActiveProspect authenticates TrustedForm Certificates, the company by definition is doing so *for its account holders* (the parties to the communication), not for itself. *See* MSJ at 2; MSJ Ex. 9 at AP0000040. ActiveProspect's actions for the benefit of account holders do not show ActiveProspect is capable of using TrustedForm data for its own purposes.

Plaintiffs' citations to marketing materials that describe the "independent," "third-party" proof of consent TrustedForm provides, Opp. at 3–4, 10–11, miss the point. The materials confirm "TrustedForm acts as a tool or service" for its customers to store reliable proof of consent. Ex. A (Williams Dep.) 175:25–177:11. ActiveProspect is "simply collecting and storing that data … for the account holder to retrieve it." *Id.* 177:6–11. Thus, it is an "extension" of a party to the communication. *E.g.*, *Williams v. DDR Media, LLC*, 2023 WL 5352896, at *4 (N.D. Cal. Aug. 18, 2023) (storing a "communication for retrieval by a party" does not violate § 631).

The relevant § 631 question is not whether ActiveProspect is an "independent" company from Prudential; ActiveProspect clearly is. Rather, the relevant question is whether ActiveProspect is capable of using the TrustedForm record collected on Prudential's website for purposes *other than* providing the service to Prudential. *Javier*, 649 F. Supp. 3d at 896, 900. The undisputed evidence confirms it is not. *See* MSJ at 12–21.

**B.     Plaintiffs Concede That ActiveProspect Lacks the Existing Capability to Use TrustedForm Certificates or User-Submitted Data for any "Other Ends"**

Plaintiffs appear to concede that ActiveProspect lacks the "current technological capability" to use TrustedForm Certificates or user-submitted data for any independent purpose.

Opp. at 15.  Plaintiffs' expert, Dr. Shafiq, did not consider the issue: ███████████

████████████████████████████████████████

████████████████████████████████████████

███████  Ex. B (Shafiq Dep.) 113:5–22.[2]

Plaintiffs' failure to dispute this issue should end the § 631 inquiry.  Every case applying *Javier*, even at the Rule 12(b)(6) stage, has in addressing whether the alleged "third party" is "capable" of using an alleged recording for its own purposes looked to the party's *present, existing capabilities*.  MSJ at 15–17 & nn.5–6 (citing *Javier* and 14 cases applying *Javier* "capability" standard and analyzing existing capability).[3]

Plaintiffs identify no contrary authority under § 631.  Opp. at 10–20.  The only post-*Javier* case Plaintiffs cite itself involved existing capability.  *Id.* at 20; *Garcia v. Yeti Coolers, LLC*, 2023 WL 5736006, at *3 (C.D. Cal. Sept. 5, 2023) (denying dismissal where plaintiff alleged "consumer chat conversations were mined for personal data used to bombard ... unsuspecting Website visitors with targeted advertising").

Plaintiffs try to reframe Defendants' argument as claiming that ActiveProspect must "actually use[]" TrustedForm data.  Opp. at 14.  Not so.  Rather, ActiveProspect is not a third-party eavesdropper under *Javier* because the undisputed evidence shows ActiveProspect *is not capable* of using TrustedForm Certificates or user-submitted data for any independent purpose, in any form, at any time.  MSJ at 13 ("The record evidence shows without dispute that

---

[2] *See also* Shafiq Dep. 108:22–109:3, 110:4–9, 111:8–14, 112:9–113:3 (similar).

[3] *E.g.*, *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 973 (N.D. Cal. 2023) (Tigar, J.) (allegations that Salesforce "directly receives" and "analyzes" communications and "supervisors can view transcripts in real time" did not show Salesforce had "the capability to use these communications" for any independent purpose); *Balletto v. Am. Honda Motor Co.*, 2023 WL 7026931, at *3 (N.D. Cal. Oct. 24, 2023) (White, J.) (similar); *Jones v. Tonal Sys., Inc.*, 2024 WL 4357558, at *6 (S.D. Cal. Sept. 30, 2024) (allegations that defendant "analyze[s], interpret[s], and collect[s]" communications did not show it "has the capability of using the chat data for its own purposes and benefit"); *Heiting v. athenahealth, Inc.*, 2024 WL 3761294, at *4 (C.D. Cal. July 29, 2024) (allegations that defendant "may record, store, and use communication[s]" and "creates a transcript ... that Defendant can also access" did not show it "had the capability to use the communications" for any independent purpose).  The § 631 cases decided after Defendants filed their Motion are to the same effect.  *E.g.*, *Cody v. Ring LLC*, 2025 WL 240763, at *3 (N.D. Cal. Jan. 16, 2025); *Rodriguez v. Ford Motor Co.*, 2024 WL 4957566, at *9 (S.D. Cal. Dec. 3, 2024).

ActiveProspect *is not capabl*e of using TrustedForm Certificates or user-submitted data for any 'other ends,' and that this design was purposeful." (emphasis added)); *id.* at 14 ("ActiveProspect *is technologically incapable* of using user-submitted data for any purpose, in any form—aggregated or otherwise." (emphasis added)); *id.* at 18 (similar); *id.* at 20 (similar).  Plaintiffs' Opposition confirms this point is undisputed.

C.    **Plaintiffs' Remaining "Capability" Arguments Rest on Speculation That Is Contrary to the Undisputed Facts**

Plaintiffs' remaining "capability" arguments boil down to speculation about what ActiveProspect has never tried to do, never done, and cannot presently do.  Opp. at 15–20.  Plaintiffs introduce no record evidence suggesting ActiveProspect could invent the technology to retrieve the ▮▮▮▮▮▮ of TrustedForm Certificates in its database; scrape the data from each Certificate; input that data into a new database; convert that data into a searchable format; and then make some sort of unspecified "use" of the data—all in direct violation of the ActiveProspect EULA and ActiveProspect's business model.  MSJ at 20; Ex. C (Polish Dep.) 75:19–22; 76:19–77:4 (theories that ActiveProspect could "develop[] the technological capability to use the data in some other way than providing the service" are "rank speculation").[4]

Dr. Shafiq's conjecture about what ActiveProspect *might* do in the future does not create a triable issue.  Opp. at 15–19.  As explained below and in Defendants' *Daubert* Motion, Dr. Shafiq's opinions misrepresent the record and consist of unfounded speculation that ActiveProspect "could" do things.  *Id.* at 16–19.  "A party's own speculation is insufficient to create a genuine issue of material fact, and a party cannot make it sufficient simply by finding an expert who is willing to assume its correctness."  *Stephens*, 935 F.3d at 856–57 (citation omitted).

---

[4] *See also, e.g.*, Wolfe Dep. 128:1–5 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮; Polish Dep. 76:19–24.

-6-

1. <u>Plaintiffs' Argument That ActiveProspect Can Use TrustedForm Data Because It "Records the Entire Session" Is Belied by the Record and Inconsistent with *Javier*</u>

Plaintiffs' claim that "ActiveProspect can use the TrustedForm data because it records the entire session," Opp. at 15, conflates *storage* with *capability to use* stored data. It is undisputed that ActiveProspect does not currently have "any way to decipher, collect, or make any use of the user form inputs displayed in the session replay." MSJ at 6, 8, 15. Interpreting § 631 to impose liability on these facts would mean even the tape recorder in *Rogers* violated § 631, merely because it stored the relevant information. *Id.* at 15–17. That cannot be (and is not) the law.

Plaintiffs assert that ActiveProspect employees ███████████▌ ███ "can and do view TrustedForm certificates and session replays." Opp. at 1, 3, 7, 13, 16, 18. This misstates the record evidence. Plaintiffs omit that only a strictly limited subset of ActiveProspect employees ████████████████████████—and that even those employees may access a TrustedForm Certificate *only* at the request of the Certificate's owner, and *only* for "support or troubleshooting purposes." Ex. E (AP0000763); Williams Dep. 123:4–124:10; Ex. D (Wolfe Dep.) 145:15–146:5.

Such access is essential to provide the TrustedForm service. It does not suggest ActiveProspect can somehow use any TrustedForm data for its own purposes, and indeed such use would be barred by the ActiveProspect EULA and contrary to the undisputed facts about ActiveProspect's business purpose. MSJ at 18–19; Polish Dep. 177:15–17; *see Gutierrez v. Converse Inc.*, 2024 WL 3511648, at *7 (C.D. Cal. July 12, 2024) (granting summary judgment where "[t]he only time that Salesforce might have access to [Defendant's] chat data is if [Defendant] requests technical support or assistance from Salesforce, and provides Salesforce with access" (quotation omitted)); *Yockey*, 688 F. Supp. 3d at 973 (allegation that employees "can view transcripts in real time" did not show defendant was even plausibly capable of using communications for other ends); *Heiting*, 2024 WL 3761294, at *4 (allegation that defendant "creates a transcript ... that Defendant can also access" did not show it "had the capability to use the communications" for any independent purpose).

---

[5] ███████████████████████████████ Williams Dep. 167:24–25.

REPLY ISO MOT. FOR SUMMARY JUDGMENT ON PLS.' CLAIM UNDER CAL. PENAL CODE § 631(a)

2.    Plaintiffs' "Access" Arguments Misstate the Record

***Plaintiffs' Description of*** ███████████ ***Misrepresents the TrustedForm Certificates Plaintiffs Reviewed.*** Plaintiffs claim that ActiveProspect is "capable of using" TrustedForm data "because *each certificate*" stores the relevant events in an ███████████ Opp. at 5, 6, 16 (emphasis added) (citing Shafiq Rpt. ¶¶ 89, 92–93). The record does not support that assertion. Seven of the 10 TrustedForm Certificates Plaintiffs and Dr. Shafiq viewed for class members' visits to the Prudential Website *do not include* ███████████. Shafiq Rpt. ¶¶ 81, 89, 92–93, 95; Shafiq Dep. 84:20–24, 198:10–15 ███████████████████████████████████████ ███████████████████████████████████████; Davis Decl. ¶ 27 & Exs. I–R; *see Daubert* Motion at 6–8. In other words, 70% of the records in Plaintiffs' sample did not include the file that Plaintiffs speculatively claim is in *every* Certificate and provides the capability for use.

Dr. Shafiq's opinion that ActiveProspect could ███████████████████████ ███████████████████████████████████████████████████ Shafiq Rpt. ¶ 95, is more speculation. ActiveProspect is not "capable" of using nonexistent files. Even for the three Prudential Certificates Dr. Shafiq viewed that *do* contain ███████████, Dr. Shafiq's opinion is conjecture. Dr. Shafiq *did not and cannot opine* that ActiveProspect has an existing way to use any ███████████ for its own ends, and Dr. Shafiq admitted he never created a program to use any ███████████ for any purpose. Shafiq Dep. 135:21–136:16, 137:13–138:25, 140:22–141:23.

***TrustedForm "Event Logs" Are Stored in Encoded Form and Are Decoded Only at the Account Holder's Request.*** Plaintiffs' claim that "each event log is stored in decoded, plain text form," Opp. at 16, again misstates the record. The uncontroverted testimony of ActiveProspect's Chief Innovation Officer, Alex Wolfe, shows ███████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████ Wolfe Dep. 115:2–3; 117:24–118:8. The only Prudential Certificates Dr. Shafiq inspected were not in the form in which they are stored because *they had already been retrieved from cold storage—and therefore decoded—*in response to discovery requests. Shafiq Dep. 82:22–83:5, 83:25–84:3; Davis Decl. ¶ 13. Plaintiffs do not

dispute that the over ███████ remaining Certificates stored for Prudential remain encoded in cold storage. MSJ at 6–7; Wolfe MSJ Decl. ¶ 42. Even for the handful that have been pulled from cold storage (and thus decoded) at Prudential's request, Plaintiffs do not dispute that ActiveProspect lacks the existing capability to make any independent use of the data therein. Opp. at 16.

*Plaintiffs' Speculation That ActiveProspect Could "Manipulate" or Otherwise Use TrustedForm Data Is Unsupported.* Plaintiffs have identified no evidence that "ActiveProspect can access all the contents of the users' communications" or "manipulate and analyze each certificate's contents," or that ActiveProspect is somehow capable of "searching, extracting, and aggregating" TrustedForm data. Opp. at 16. Plaintiffs rely on Dr. Shafiq's Report and Dr. Polish's deposition testimony, but neither supports Plaintiffs' contentions. Opp. at 16. Dr. Shafiq, as noted, asserted that "ActiveProspect can use the user form input data" from the Prudential Website, but he did not analyze or purport to opine on whether ActiveProspect could use the data *for its own purposes*. Shafiq Rpt. ¶ 103; Shafiq Dep. 113:5–22. Dr. Polish's cited testimony described the general characteristics of JSON files; that testimony did not purport to describe the ███████████████████. Dr. Polish said a JSON file is "extremely flexible and specific to a given application," so "it will all depend on how it's being used and how data is being represented within it." Polish Dep. 65:9–12.

The record simply does not support Plaintiffs' claims, and Plaintiffs "cannot manufacture a genuine issue of material fact merely by making assertions in [their] legal memoranda.'" *Gutierrez*, 2024 WL 3511648, at *8 (quotation omitted).

*Neither ActiveProspect Nor Plaintiffs Could Identify a Particular TrustedForm Certificate Using "Metadata" Without Information from Prudential/Assurance.* Plaintiffs' argument that ActiveProspect *might* use metadata to identify a TrustedForm Certificate, Opp. at 17, is yet more speculation. Plaintiffs notably fail to mention that they were only "able to identify the certificate for Plaintiff Hyman's webform session," *id.*, using information *provided by Assurance*. Wolfe Dep. 183:21–24, 186:20–23 ████████████████████████ ; Polish Dep. 158:2–12 ████████████████████

REPLY ISO MOT. FOR SUMMARY JUDGMENT ON PLS.' CLAIM UNDER CAL. PENAL CODE § 631(a)

████████████████████████████████████████████████.  And, Plaintiffs do not dispute that ActiveProspect lacks the capability to make any independent use of any TrustedForm Certificate, whether it has been "identified" or not.  MSJ at 12–16; Opp. at 17.

### 3.  Plaintiffs' Attempt to Insert Metadata into the § 631 Analysis Disregards 60 Years of Cases Construing § 631

Section 631 does not apply to the collection or use of metadata.  Plaintiffs' attempt to shoehorn metadata into the § 631 analysis, Opp. at 18–19, is based on an unjustifiable reading of the statute that has been rejected by every court to consider the issue.  MSJ at 17–18 (collecting cases).  Tellingly, Plaintiffs cite no authority even *mentioning* metadata in analyzing whether a defendant is more like the friend in *Ribas* or the tape recorder in *Rogers*.  Opp. at 18–19.  The only case Plaintiffs cite forecloses their argument.  *Id.* at 19; *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1081–83 (C.D. Cal. 2021) (pre-*Javier* case holding that § 631 "protects only the internal, user-generated material of a message," and dismissing claim based on allegations that software "capture[d], store[d], and interpret[ed]" other data).  What matters for § 631 is whether ActiveProspect is capable of using the *contents* of users' communications for its own ends.  The record conclusively establishes that it is not.  *See* Section IV.B *supra*.

### 4.  Plaintiffs' Mischaracterizations of ActiveProspect's Terms of Service and Privacy Policy Disregard the Record and Ninth Circuit Law

Plaintiffs' claim that ActiveProspect "reserves the right to use the content of TrustedForm data for its own business purposes," Opp. at 19, and that this suggests ActiveProspect can in fact do so, is wrong on both the facts and law.  It also is irrelevant:  ActiveProspect *is not capable* of using TrustedForm Certificates or user-submitted data for other ends.  MSJ at 12–21.

On the facts, Plaintiffs are wrong about the contracts they cite.  There is no evidence that generic language in ActiveProspect's general Terms of Service and Privacy Policy—both of which apply to the entire spectrum of ActiveProspect products—somehow gives ActiveProspect rights beyond those spelled out in the ActiveProspect EULA, which specifically defines ActiveProspect's rights with respect to TrustedForm.  Opp. at 19; MSJ at 18–19 (the ActiveProspect EULA grants ActiveProspect a license to use the "Data and Content that is

collected by the TrustedForm Script … *solely to the extent that such license is required for provision of the TrustedForm Service.*" (quoting MSJ Ex. 9 at 4)).

As to the law, Plaintiffs' claim that the ActiveProspect EULA and Terms of Service are "not in conflict," Opp. at 20, misses the point.  It is a "standard rule of contract interpretation" that "specific terms control over general ones," regardless of whether any purported "conflict" exists. *See Shivkov v. Artex Risk Sols., Inc.*, 974 F.3d 1051, 1063 (9th Cir. 2020) (quotation omitted). More importantly, there is no evidence that ActiveProspect is somehow capable of using TrustedForm Certificates or user inputs for any independent purpose, because it is not.

## V.    Plaintiffs' "Read or Attempt to Read" Arguments Contradict the Record and the Uniform Case Law Interpreting § 631

Plaintiffs do not dispute that a defendant violates § 631 only if it "understands or interprets, or attempts to understand or interpret, the *substantive meaning* of a communication" while it is "in transit" or is "being sent from, or received at any place" in California.  MSJ at 21–22; *Williams*, 2024 WL 4859078, at *2, *5; Opp. at 20–25.  Plaintiffs identify no evidence that any such activity occurred here.  Opp. at 20–25.  To the contrary, the record establishes that TrustedForm collects undeciphered events and stores them for an account holder without ever attempting to understand their substantive meaning.  MSJ at 21–24.  ActiveProspect did not "read or attempt to read" Plaintiffs' communications, much less while they were in transit.  MSJ at 22–23; *James v. Allstate Ins. Co.*, 2023 WL 8879246, at *3 (N.D. Cal. Dec. 22, 2023) (Corley, J.) (no § 631 violation where defendant merely "recorded the data and store[d] it on its servers").

### A.    Plaintiffs' Attempt to Expand the Definition of "Reads or Attempts to Read" Conflicts with Every Case Construing That Provision

Plaintiffs' interpretation of "reads or attempts to read" to encompass the collection of *undeciphered events* contradicts every case interpreting that provision.  MSJ at 21–24 (collecting cases); Opp. at 20–25 (citing no "reads or attempts to read" cases supporting Plaintiffs' theory).

Plaintiffs' argument, in a footnote, that two of those decisions disagreed with *Javier* regarding the "distinct" "third party" element of § 631(a) is a red herring.  Opp. at 21 n.6.  For one thing, Plaintiffs are mistaken:  neither of the cases they identify disagreed with *Javier*.  *See Love v. Ladder Fin., Inc.*, 2024 WL 2104497, at *2 (N.D. Cal. May 8, 2024) (no discussion of *Javier*

REPLY ISO MOT. FOR SUMMARY JUDGMENT ON PLS.' CLAIM UNDER CAL. PENAL CODE § 631(a)

"third party" standard); *James*, 2023 WL 8879246, at *3 (no disagreement with *Javier* "third party" standard).  More importantly, while there is a split in authority regarding the "third party" prong of § 631, the decisions construing the "reads or attempts to read" prong are uniform—and they uniformly reject Plaintiffs' position.  MSJ at 21–24.

**B.   The Record Confirms ActiveProspect Did Not "Read or Attempt to Read" Plaintiffs' Communications at Any Point**

Plaintiffs are wrong that Defendants' Motion unduly "focus[es] only on the 'in transit' portion" of § 631(a).  Opp. at 21.  Defendants made clear that "ActiveProspect never even attempted to decipher or interpret the 'contents or meaning' of Plaintiffs' Webform entries *at any point*—much less while they were 'in transit.'"  MSJ at 23 (emphasis added); *id.* at 2, 5, 25 (similar).  Defendants used the phrase "in transit" because that is the language used by courts construing § 631(a).  *See, e.g.*, *Hazel v. Prudential Fin., Inc.*, 2023 WL 3933073, at *2 (N.D. Cal. June 9, 2023) (Breyer, J.); *Gutierrez*, 2024 WL 3511648, at *8.

**C.   Plaintiffs Do Not Dispute That TrustedForm Collects and Immediately Encodes Undeciphered Events Without Ever Attempting to Discern Their Substantive Meaning**

Equally unsuccessful is Plaintiffs' attempt to label as an interpretive act of "reading" the automated process by which TrustedForm collects undeciphered event-level data and immediately encodes and encrypts that data in an unreadable format before it is sent to ActiveProspect's servers.  Opp. at 21–23.  Repeated references to purported "interception" of *events*, like keystrokes, "in the plain," Opp. at 21–24, merely beg the legally dispositive question:  did ActiveProspect attempt to evaluate the *substantive meaning* of the communications, and thereby attempt to "read" them under § 631(a)?  The record conclusively establishes that the answer is no.

ActiveProspect's TrustedForm software has no reason to analyze, does not analyze, and is *incapable* of even attempting to analyze the substantive meaning of the events it collects.  MSJ at 8; Polish Dep. 77:10–22, 78:3–16, 116:14–20 (TrustedForm does not "have the current technical capability" to even attempt to interpret "the contents or meaning" of communications).  TrustedForm simply collects and immediately encodes event-level data, without any capacity to understand whether the collected arrays conveyed Shakespeare or nonsense.  MSJ at 5–8, 21–24.

REPLY ISO MOT. FOR SUMMARY JUDGMENT ON PLS.' CLAIM UNDER CAL. PENAL CODE § 631(a)

Nor can Plaintiffs create a factual dispute by mischaracterizing TrustedForm's "Lead Matching" feature. Opp. at 23. The Lead Matching feature is an algorithm that automatically collects and immediately hashes events that match either of two "regular expressions"[6] before those events are sent to ActiveProspect, without ever attempting to decipher the events' substantive meaning. Williams Dep. 102:2–3 (describing Lead Matching feature); *Id.* at 174:19–22 (events collected by Lead Matching feature "are immediately hashed as soon as the pattern is detected before [they are] sent to the TrustedForm servers").

TrustedForm (and thus ActiveProspect) "has no idea what" the events collected and hashed by the Lead Matching feature are. Williams Dep. 175:7–8. "TrustedForm doesn't even know [which] regular expression they match, so [there is] ***no way to know the content of those values***." *Id.* at 175:8–11 (emphasis added); *see Williams*, 2024 WL 4859078, at *6 (granting summary judgment where session replay software provider's "hashing software automatically and almost instantaneously converts the input data into the hashed data based upon an algorithm").

### D.    Plaintiffs' Claim That ActiveProspect Can "Attempt to Read" Stored Communications After the Fact Contradicts the Plain Text of § 631

Plaintiffs' argument that ActiveProspect "attempts" to read communications because it collects and assembles *undeciphered* "keystrokes" with the "intent" to view them "later" in a session replay "if needed," Opp. at 22–23, stretches § 631 beyond recognition. The record shows that TrustedForm collects and immediately encodes those keystrokes without ever attempting to understand the substantive meaning, if any, that they convey. MSJ at 21–24; Section V.C *supra*. That is fatal to Plaintiffs' theory. *Williams*, 2024 WL 4859078, at *5 (§ 631 requires "some action to interpret or understand the communication's *substantive meaning*" (emphasis added)).

Moreover, it is not enough to read or attempt to read something "later," Opp. at 22; what matters is whether a defendant reads or attempts to read a communication *while* it is "in transit" or is "being sent from, or received at any place" in California. Cal. Penal Code § 631(a); *Boulton v. Community.com, Inc.*, 2025 WL 314813, at *1 (9th Cir. Jan. 28, 2025) (affirming dismissal of

---

[6] The "regular expressions," which Plaintiffs do not describe, are "/[\+]?[(]?[0–9]{3}[)]?[–\s\.]?[0–9]{3}[–\ s\.]?[0–9]{4,6}/" and "/^[^,@\ s]+@[–\w]+\.[a–z]{2,}$/." Ex. H (Wolfe Dep. Ex. 142).

REPLY ISO MOT. FOR SUMMARY JUDGMENT ON PLS.' CLAIM UNDER CAL. PENAL CODE § 631(a)

§ 631 claim where defendant "could have only read or attempted to read Boulton's text after it was received at LL Cool J's Community number, so the text could not have been accessed 'in transit' within the meaning of § 631(a)"). The undisputed facts show that did not happen here. MSJ at 21–24. Even when a session replay is reassembled (which Plaintiffs concede occurs only "after the data is no longer in transit," Opp. at 22), ActiveProspect *still* does not read any communications; it simply reassembles the "events" without ever attempting to decode their substantive meaning. MSJ at 23; Polish Dep. 191:5–8.

### E.   Plaintiffs' Remaining Arguments Depend on Code Created by Their Software Expert for this Litigation That Works Differently from TrustedForm

Plaintiffs' remaining arguments are based on a *new* program Dr. Shafiq created for this case using a different coding language to collect, decode, and store data in a way that is ███████ ████████████████████████████████████ Opp. at 22–25; Wolfe Dep. 113:10–15; Polish Dep. 185:22–186:2 ████████████████████████████████████ ████████████████████ ; *Id.* at 187:18–188:1 ████████████████████████ ████████████████████████ ; *see Daubert* Motion at 12–13.

To take just one example, Dr. Shafiq used his software—*not* software ActiveProspect has ever used or even seen—to produce the following image:

Shafiq Rpt. ¶ 116; ECF No. 104-16 at 79; Opp. at 22–23. But what Dr. Shafiq says he created indisputably is not what ActiveProspect receives. What ActiveProspect receives looks like this:

Wolfe MSJ Decl. ¶ 23(a); Shafiq Rpt. ¶ 32; Shafiq Dep. 51:1–3, 70:12–15 ████████████ ████████████████████████████████ . Plaintiffs concede that the events can be decoded only "[o]nce the certificate is complete"—that is, *after the data has been stored*. Opp. at 5; Shafiq Dep. 62:20–63:3, 73:4–6. That is fatal to Plaintiffs' claim. Plaintiffs cannot create a material fact

dispute by citing to different code Dr. Shafiq created after the fact to collect, decode, and store data in an entirely different way than TrustedForm.  Plaintiffs' § 631 claim fails as a matter of law.

## VI.    Plaintiffs' "Consent" Arguments Are Irrelevant, as Plaintiffs Cannot Show a Violation of § 631

Contrary to Plaintiffs' claims, Defendants have never suggested that "no disclosure or consent is ever required" for the use of TrustedForm.  *See* Opp. at 1, 2, 9.  That is not even a disputed issue in this case.  *See* MSJ at 1–2 (addressing two narrow prongs of § 631).  At any rate, Plaintiffs' argument is beside the point:  the undisputed facts show that the use of TrustedForm here *did not violate § 631*, so the question of consent is immaterial.

Plaintiffs' theory that Defendants could have just "disclose[d] the use of" TrustedForm, Opp. at 2, ignores that the Prudential Website at issue no longer exists.  Plaintiffs are thus attempting to impose massive and unprecedented liability for something that occurred in the past, when there was no precedent applying a 60-year-old "wiretapping" statute to a software vendor that merely stored undeciphered information for retrieval by a party to the communication, and that was incapable of using that information for its own purposes.  The growing body of § 631 case law, moreover, undermines Plaintiffs' position.  MSJ at 12–21; *e.g.*, *Williams*, 2023 WL 5352896, at *4 (session replay software provider that "merely recorded the communication for retrieval by a party to the same communication" was "more akin to a tape recorder vendor than an eavesdropper" and thus did not violate § 631).

Plaintiffs' reliance on ActiveProspect's "agreements and public statements" regarding "consent," Opp. at 4, is similarly misplaced.  ActiveProspect encourages its clients to adopt the broadest possible consent language in an effort to prevent lawsuits like this one, which has forced Defendants to spend over two years and massive resources defending against factually unsupported claims.  There is no evidence that ActiveProspect believes the use of TrustedForm would otherwise violate § 631—and the record confirms that it does not.

## VII.    Conclusion

Defendants respectfully request that the Court grant their Motion.

REPLY ISO MOT. FOR SUMMARY JUDGMENT ON PLS.' CLAIM UNDER CAL. PENAL CODE § 631(a)

DATED:  March 5, 2025                    MUNGER, TOLLES & OLSON LLP


By:    _/s/ Laura D. Smolowe_____
       LAURA D. SMOLOWE
       Attorneys for Defendants

REPLY ISO MOT. FOR SUMMARY JUDGMENT ON PLS.' CLAIM UNDER CAL. PENAL CODE § 631(a)

**CERTIFICATE OF SERVICE**

I hereby certify that on March 5, 2025, I electronically filed the foregoing Defendants' Reply in Support of Motion for Summary Judgment on Plaintiffs' Claim Under Cal. Penal Code § 631(a) with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.  I also caused a copy of all documents that are the subject of Defendants' contemporaneously filed Administrative Motion to Seal to be served via electronic mail on Plaintiffs' counsel.

By: _/s/ Laura D. Smolowe_
LAURA D. SMOLOWE

REPLY ISO MOT. FOR SUMMARY JUDGMENT ON PLS.' CLAIM UNDER CAL. PENAL CODE § 631(a)