Dena C. Sharp (State Bar No. 245869)
dsharp@girardsharp.com
Simon S. Grille (State Bar No. 294914)
sgrille@girardsharp.com
Nina R. Gliozzo (State Bar No. 333569)
ngliozzo@girardsharp.com
Jordan Isern (State Bar No. 343159)
jisern@girardsharp.com
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

*Class Counsel*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| VALERIE TORRES and RHONDA HYMAN, individually and on behalf of all others similarly situated, | Case No. 3:22-cv-07465-CRB |
| Plaintiffs, | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE EXPERT REPORT OF DR. ZUBAIR SHAFIQ** |
| v. | Judge: Hon. Charles R. Breyer |
| PRUDENTIAL FINANCIAL, INC., ACTIVEPROSPECT, INC., and ASSURANCE IQ, LLC, | Date: April 11, 2025<br>Time: 10:00 am<br>Ctrm.: Videoconference |
| Defendants. | |

## REDACTED - PROVISIONALLY FILED UNDER SEAL

1

## <u>TABLE OF CONTENTS</u>

2

**Page**

3
I.    SUMMARY OF ARGUMENT ............................................................................... 1

4
II.    BACKGROUND ................................................................................................ 2

5
III.    LEGAL STANDARD ........................................................................................ 3

6
IV.    ARGUMENT .................................................................................................... 4

7
    A.    Defendants' Credibility Attacks Go to the Weight, Not Admissibility ................ 4

8
    B.    Defendants' Substantive Criticisms of Dr. Shafiq's Report Lack Merit ............... 5

9
        1.    Dr. Shafiq Did Not Cherry-Pick Evidence in Forming His Third
10
            and Fourth Opinions ........................................................................ 5

11
        2.    Dr. Shafiq's Opinion 3 That ActiveProspect "Can Use" The Data It
            Intercepts For Its Own Purposes is Reliable. ........................................ 8

12
        3.    Opinion 4 That TrustedForm "Analyzes the Substance of the Form
13
            Input Data" is Both Relevant and Reliable. ........................................ 11

14
            a.    Dr. Shafiq's Fourth Opinion is Relevant to the "Read or
15
                Attempts to Read" Standard ..................................................... 11

16
            b.    Dr. Shafiq's Script Does Reliably Translate What Data
                TrustedForm Collects ............................................................. 11

17
        4.    Defendants Provide No Basis to Exclude Dr. Shafiq's Opinions 1
18
            and 2. .......................................................................................... 13

18
            a.    Opinion 1 is Not a Legal Conclusion and is Helpful .................... 13

19
            b.    Opinion 2 Provides Useful Context ............................................. 15

20
V.    CONCLUSION ................................................................................................ 15

21

22

23

24

25

26

27

28

1

## **<u>TABLE OF AUTHORITIES</u>**

2

**<u>Page</u>**

3

**Cases**

4
*Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*
    738 F.3d 960 (9th Cir. 2013).................................................................................. 3

5
*Babb v. Maryville Anesthesiologists P.C.,*
6
    942 F.3d 308 (6th Cir. 2019)................................................................................. 14

7
*Blue Bottle Coffee, LLC v. Liao*,
    2023 WL 6850573 (N.D. Cal. Oct. 16, 2023) ......................................................... 5

8
*City of Pomona v. SQM N. Am. Corp.*,
    750 F.3d 1036 (9th Cir. 2014)............................................................................. 4, 5
9

10
*Daubert v. Merrell Dow Pharm., Inc.*,
    43 F.3d 1311 (9th Cir. 1995)............................................................................... 11

11
*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993) .............................................................................................. 3

12
*Fed. Trade Comm'n v. Qualcomm Inc.*
13
    2018 WL 6460573 (N.D. Cal. Dec. 10, 2018) ...................................................... 11

14
*Fitzhenry-Russell v. Keurig Dr. Pepper Inc.*,
    2018 WL 10476581 (N.D. Cal. Dec. 10, 2018) ...................................................... 4

15
*Griffith v. TikTok, Inc.*,
    2024 WL 4874556 (C.D. Cal. Sept. 23, 2024)........................................................ 4
16

17
*Grundfor v. Bouffard*,
    2017 WL 10541445 (C.D. Cal. Aug. 7, 2017) ...................................................... 15

18
*Hammerling v. Google LLC*,
    615 F. Supp. 3d 1069 (N.D. Cal. 2022) ................................................................ 11

19

20
*Hoctor v. Kittitas Cnty.*,
    2021 WL 6139625 (E.D. Wash. Oct. 19, 2021) ...................................................... 9

21
*Hsingching Hsu v. Puma Biotechnology, Inc.*
    2018 WL 3078589 (C.D. Cal. June 20, 2018)......................................................... 8

22
*In re Arris Cable Modem Consumer Litig.*,
    327 F.R.D. 334 (N.D. Cal. 2018) ................................................................. 5, 15, 16
23

24
*In re High-Tech Emp. Antitrust Litig.*,
    2014 WL 1351040 (N.D. Cal. Apr. 4, 2014) .......................................................... 4

25
*In re Juul Labs, Inc. Mktg., Sales Pracs. & Prods. Liab. Litig.*
    2022 WL 1814440 (N.D. Cal. June 2, 2022) .......................................................... 6

26
*In re MacBook Keyboard Litig.*,
27
    2022 WL 1604753 (N.D. Cal. Jan. 25, 2022) ......................................................... 5

28
*In re MyFord Touch Consumer Litig.*
    291 F. Supp. 3d 936 (N.D. Cal. 2018) ............................................................... 5, 6

*In re Pac. Fertility Ctr. Litig.*,
  2021 WL 1054374 (N.D. Cal. Mar. 19, 2021) ............................................................ 10

*In re Univ. of S. California Tuition & Fees COVID-19 Refund Litig.*,
  695 F. Supp. 3d 1128 (C.D. Cal. 2023)....................................................................... 5

*In re Xyrem (Sodium Oxybate) Antitrust Litig.*
  2023 WL 3440399 (N.D. Cal. May 12, 2023) .............................................................. 4

*JH Kelly, LLC v. AECOM Tech. Servs., Inc.*
  605 F. Supp. 3d 1295 (N.D. Cal. 2022) ...................................................................... 11

*Kamradt v. Esurance Ins. Co.*
  2024 WL 5356886 (W.D. Wash. Nov. 1, 2024) ........................................................... 8

*Karla Terraza v. Safeway Inc.*,
  2019 WL 1059688 (N.D. Cal. Mar. 6, 2019) ............................................................. 14

*Kumho Tire Co., Ltd. v. Carmichael*,
  526 U.S. 137 (1999) ................................................................................................... 10

*Leeds LP v. United States*,
  2010 WL 3911429 (S.D. Cal. Oct. 5, 2010)................................................................ 15

*Lytle v. Nutramax Lab'ys, Inc.*,
  2022 WL 1600047 (C.D. Cal. May 6, 2022, *aff'd*, 99 F.4th 557 (9th Cir. 2024) ..................... 5

*Maldonado v. Apple, Inc*,
  2021 WL 1947512 (N.D. Cal. May 14, 2021) ............................................................ 10

*Myers for Myers v. United States*,
  2005 WL 8147424 (S.D. Cal. Apr. 22, 2005), *R&R adopted*, 2005 WL 8147422 (S.D. Cal.
  Sept. 19, 2005) ............................................................................................................. 5

*United States v. Diaz*,
  876 F.3d 1194 (9th Cir. 2017)............................................................................... 14, 15

*United States v. Kelly*,
  2023 WL 4032011 (N.D. Cal. June 14, 2023) ........................................................... 10

*United States v. McIver*,
  470 F.3d 550 (4th Cir. 2006)..................................................................................... 15

*United States v. Northrop Grumman Corp.*,
  2003 WL 27366881 (C.D. Cal. Jan. 6, 2003)......................................................... 4, 15

*United States v. Sandoval-Mendoza*
  472 F.3d 645 (9th Cir. 2006) ....................................................................................... 4

*Victorino v. FCA US LLC*
  2018 WL 2551192 (S.D. Cal. June 4, 2018) .............................................................. 10

**Statutes**

Cal. Penal Code § 631(a) .................................................................................................. 1

**Rules**

Fed. R. Evid. 702 ............................................................................................................... 3

Fed. R. Evid. 704(a) ................................................................................................................. 14

## I.      SUMMARY OF ARGUMENT

Dr. Zubair Shafiq, a computer science expert, offers opinions in support of Plaintiffs' opposition to Defendants' Motion for Summary Judgment based on his substantial experience and a thorough review of code for TrustedForm and other relevant evidence. His opinions are helpful to the Court and the jury in explaining how TrustedForm works and determining whether ActiveProspect has the independent capability to use the information it gathers from TrustedForm for purposes of liability under Penal Code section 631(a). Defendants do not dispute his qualifications, but seek to exclude the opinions in their entirety based on a host of arguments that at most, go to the weight, rather than admissibility, of his testimony.

Defendants' critiques also fail, as they turn on mischaracterizations of his opinions and the record. For instance, Defendants question the integrity of Dr. Shafiq's analysis, claiming that he disregarded contrary evidence showing that 70% of the TrustedForm certificates do not contain "event" information with the contents of class members' communications. But Defendants' own documents show that this data is collected and saved for every certificate, as Dr. Shafiq accurately describes in his report. Defendants also take issue with Dr. Shafiq's opinion that ActiveProspect can use the information it gathers from TrustedForm because the information is stored in a readily accessible and comprehensible format, claiming that his examples of ways to easily extract the data are based only on his own say so. Dr. Shafiq, however, cites to his unchallenged qualifications and background and experience performing similar work to explain why ActiveProspect can access users' communications using relatively straightforward software coding tasks.

The other challenges to Dr. Shafiq's opinions are also meritless. Defendants present two screenshots of code and accuse him of manipulating his analysis of the information ActiveProspect intercepts by using a program that is "nothing like" how TrustedForm actually works. The differences between the screenshots just show that Dr. Shafiq used a standard decoding script to demonstrate the contents of what was transmitted. That Dr. Shafiq uses the terms "intercepts" and "real time"—which have a technical computer science definition but no specialized legal meaning— to accurately describe how TrustedForm functions does not transform his opinions into inadmissible legal conclusions. Finally, and paradoxically, Defendants argue that while some of Dr. Shafiq's

1  opinions are accurate, they should still be excluded because Defendants do not dispute that he

2  correctly explains how TrustedForm works. That does not take away from the fact Dr. Shafiq's

3  explanations of the technical workings of TrustedForm are helpful to the Court and jury.

4      The motion should be denied.

## II.    BACKGROUND

6      Dr. Shafiq is a professor of computer science at the University of California-Davis, where

7  he is widely published, and teaches and conducts research on Internet privacy, security, and online

8  advertising and tracking. Dkt. 105-7, January 17, 2025 Expert Report of Zubair Shafiq ("Shafiq

9  Rpt.") ¶¶ 1-6. His report in support of Plaintiffs' opposition to Defendants' motion for summary

10 judgment offers four opinions, summarized below.

11     **Opinion 1**. Based on his testing and analysis, Dr. Shafiq first provides a description of how

12 the TrustedForm software works, and how it functioned on Prudential's webform in this case. Dr.

13 Shafiq opines "that Prudential and Assurance IQ installed ActiveProspect's source code on its

14 website to intercept in real time data that users input into Prudential's webform (e.g., name, email

15 address, phone number, zip code, gender, marital status, date of birth, height, weight, medical

16 history, medication status) and sent it to ActiveProspect." *Id.* ¶ 13a.

17     **Opinion 2**. Next, Dr. Shafiq opines that his "testing and analysis show that data in

18 possession of Prudential, Assurance IQ, and ActiveProspect can be used to identify natural persons

19 whose form input data was intercepted by ActiveProspect when they filled out a webform to request

20 a life insurance quote on Prudential's website during the Class Period." *Id.* ¶¶ 13b, 56-79. He

21 discusses potential submissions by non-class members and provides an overview of type of

22 information Defendants collected for each class member, which includes the contact information

23 inputted on the webform itself. *Id.*

24     **Opinion 3**. Third, Dr. Shafiq opines that his "testing and analysis show that ActiveProspect

25 can use the form input data intercepted by TrustedForm source code on Prudential's webform during

26 the Class Period." *Id.* ¶¶ 13c, 80-110. To arrive at this conclusion, Dr. Shafiq conducted an

27 inspection of ActiveProspect's databases and related documents, and he describes in detail the

28 different types of data that ActiveProspect collects and how and where it keeps the data. *Id.* ¶¶ 80-

1  102. In particular, he describes that for each TrustedForm certificate, the content of the information

2  provided by a user is fundamentally accessible and comprehensible to ActiveProspect because ████

3  ████████████████████████████████████████████████████████████

4  ████████████████████████████████████████████████████████████

5  ████████████████████████ *Id.* ¶¶ 86, 89, 93-96, 104.

6  **Opinion 4.** Lastly, Dr. Shafiq opines that his "testing and analysis show that

7  ActiveProspect's TrustedForm source code analyzes the substance of the form input data as it

8  intercepts that data from Prudential's webform and while it is in transit during the Class Period." *Id.*

9  ¶¶ 13d, 111-121. He explains that the software ████████████████████

10 ████████████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████████████

12 ████████████████████████████████████████████████████████████

13 ████████████████████████ *Id.* ¶¶ 111-12, 116-120.

14 Dr. Shafiq also explains that TrustedForm ████████████████████████

15 ████████████████████████████████████████████████████████████

16 ████████████████████ *Id.* ¶ 113.

17 **III.    LEGAL STANDARD**

18 An expert witness must be "qualified . . . by knowledge, skill, experience, training, or

19 education[.]" Fed. R. Evid. 702. Testimony is admissible if it "will help the trier of fact to understand

20 the evidence or to determine a fact in issue," "is based upon sufficient facts or data," and is

21 sufficiently reliable. *Id.*; *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). Expert

22 opinion testimony "is reliable if the knowledge underlying it has a reliable basis in the knowledge

23 and experience of the relevant discipline." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738

24 F.3d 960, 969 (9th Cir. 2013).

25 "[R]ejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702

26 advisory committee's note (2000). "Only if the expert's opinion is so fundamentally unsupported

27 that it can offer no assistance to the jury must such testimony be excluded." *In re High-Tech Emp.*

28 *Antitrust Litig.*, 2014 WL 1351040, at *22 (N.D. Cal. Apr. 4, 2014) (citation omitted). "*Daubert*

1   makes the district court a gatekeeper, not a fact finder." *United States v. Sandoval-Mendoza*, 472

2   F.3d 645, 654 (9th Cir. 2006). "Courts reviewing *Daubert* motions focus on the principles and

3   methodology employed by the expert, not the conclusions the expert ultimately reaches." *In re*

4   *Xyrem (Sodium Oxybate) Antitrust Litig.*, 2023 WL 3440399, at *3 (N.D. Cal. May 12, 2023).

## IV.    ARGUMENT

### A.    Defendants' Credibility Attacks Go to the Weight, Not Admissibility

7        Defendants try to undermine Dr. Shafiq's credibility based on arguments that are wholly

8   unrelated to the opinions he offers in this case, including that he is a "repeat player for plaintiffs in

9   privacy cases" (Mot. at 4) and that another court faulted some of his opinions in a different case

10  involving a different type of tracking technology. *See Griffith v. TikTok, Inc.*, 2024 WL 4874556, at

11  *2 (C.D. Cal. Oct 22, 2024). These attacks are not grounds for exclusion and are substantively

12  misplaced. *See City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014).

13       Defendants do not dispute that Dr. Shafiq is qualified to offer his opinions. His expertise

14  and research include studying privacy enhancing technologies and "uncover[ing] personal data

15  collection, sharing, and usage in the online advertising ecosystem." Shafiq Rpt. ¶¶ 1-6. That this

16  work is of interest to parties seeking to vindicate the public's online privacy rights is not a basis for

17  exclusion. *See United States v. Northrop Grumman Corp.*, 2003 WL 27366881, at *5 (C.D. Cal.

18  Jan. 6, 2003) (rejecting argument that expert should be excluded as a "professional witness").

19       Relying on *Griffith*, Defendants characterize Dr. Shafiq's work as inherently suspect. Mot.

20  at 1, 4. But he was not excluded under *Daubert* in *Griffith*, and in any case, "[w]hether a particular

21  expert was excluded in another case is not relevant to whether that expert is qualified or suited to

22  testify in *this* case." *Fitzhenry-Russell v. Keurig Dr. Pepper Inc.*, 2018 WL 10476581, at *4 (N.D.

23  Cal. Dec. 10, 2018). Whether Dr. Shafiq's "testimony in this case should be admitted or excluded

24  on its own merits, not based on those of another case not before this court." *Myers for Myers v.*

25  *United States*, 2005 WL 8147424, at *25 (S.D. Cal. Apr. 22, 2005), *R&R adopted*, 2005 WL

26  8147422 (S.D. Cal. Sept. 19, 2005).

27       Dr. Shafiq's work in *Griffith* is very different from the work he performed here because it

28  involved tracking "pixels" used by TikTok to collect information about users' from their internet

traffic and analyzing things like whether URLs in the captured browsing history are categorized as "sensitive" by the Interactive Advertising Bureau (rather than Dr. Shafiq's own analysis).[1] Given the dissimilarity, the *Griffith* court's conclusions are no reason to exclude his analysis in this case. *See Blue Bottle Coffee, LLC v. Liao*, 2023 WL 6850573, at *5 (N.D. Cal. Oct. 16, 2023) (declining to exclude expert simply because she was excluded in another case where she was offering "very different testimony") (Breyer, J.); *see also In re Univ. of S. California Tuition & Fees COVID-19 Refund Litig.*, 695 F. Supp. 3d 1128, 1150 (C.D. Cal. 2023) (similar); *Lytle v. Nutramax Lab'ys, Inc.*, 2022 WL 1600047, at *5 (C.D. Cal. May 6, 2022) (similar), *aff'd*, 99 F.4th 557 (9th Cir. 2024).

## B.    Defendants' Substantive Criticisms of Dr. Shafiq's Report Lack Merit

### 1.    Dr. Shafiq Did Not Cherry-Pick Evidence in Forming His Third and Fourth Opinions

Defendants first argue that Dr. Shafiq's third and fourth opinions are unreliable because he supposedly cherry-picked evidence to support them. Mot. at 6. Arguments that an expert's analysis is "based on skewed, cherry-picked data" are the kind "more appropriately probed through cross-examination and rebuttal expert evidence." *In re MacBook Keyboard Litig.*, 2022 WL 1604753, at *3 (N.D. Cal. Jan. 25, 2022) (citing *City of Pomona*, 750 F.3d at 1049); *In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936, 967 (N.D. Cal. 2018) ("It traditionally falls upon cross-examination to negate the facts or factual assumptions underlying an expert's opinion."); *In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. 334, 364 (N.D. Cal. 2018) (similar). The Court should also reject the argument because Dr. Shafiq did not disregard contrary evidence.

Dr. Shafiq inspected ActiveProspect's database in December 2024. Defendants claim that although he viewed ten TrustedForm certificates for class members during his visit, seven of the certificates did not include ████████████. Mot. at 6-7. ████████████████████████

████████████████████████████████████████████

█████ Shafiq Rpt. ¶¶ 92-93. According to Defendants, ████████████████████████

████████████████████████████████████████████

---

[1] As Dr. Shafiq pointed out in his deposition, it is difficult to provide detail on the portions of his report that were criticized in *Griffith*, because the relevant analysis remains under seal. Gliozzo Decl. Ex. 1, February 4, 2025 Shafiq Deposition ("Shafiq Dep.") at 248:12-18; *see Griffith v. TikTok*, 5:23-cv-00964-SB-E, Dkt. 252-2 (C.D. Cal. Sept. 23, 2024) (redacted report at issue).

1    ████████████████████, and omitting this data renders his report misleading and inadmissible.

2    Mot. at 6, 8. This argument mischaracterizes both the basis for the opinions and the record.

3         As Dr. Shafiq's report makes clear, ████████████████████████████████████

4    ████████████████████████████████████████████████████████████████████████

5    ███████████████████████████████████████████████████████████ Shafiq Rpt. ¶¶

6    94-96; *see also* Ex. 1 (Shafiq Dep.) at 267:4-269:22 (explaining that his opinion is not based only

7    on the existence of an ██████████). Thus, whether most of the certificates defense counsel

8    presented to Dr. Shafiq during his deposition did not include ██████ (Mot. at 6-7) does not

9    undermine his opinions because ████████████████████████████████████████

10   █████████████████████████.

11        Defendants do not dispute Dr. Shafiq's conclusion that ████████████████████

12   ████████████████████████████ because it is amply supported.[2] He

13   conducted an inspection of Defendants' databases (Shafiq Rpt. ¶¶ 81, 92), and his personal

14   observations confirmed that █████████████████████████████████████████████

15   ████████████████████████████████████████████████████████████████████

16   ██████████, *id.* ¶ 94. *See In re Juul Labs, Inc. Mktg., Sales Pracs. & Prods. Liab. Litig.*,

17   2022 WL 1814440, at *3 (N.D. Cal. June 2, 2022) (support for assumptions may be found in

18   defendant's "own documents"). As the third and fourth opinions are not "indisputably wrong," but

19   consistent with the record, the cherry-picking argument should be rejected for this reason alone. *In*

20   *re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936, 973-74 (N.D. Cal. 2018).

21        Defendants also claim that "70% of the data sample [Dr. Shafiq] analyzed undermined his

22   claims," suggesting that 70% of all certificates do not have ██████████ necessary for

23   ActiveProspect to understand the contents of class members' communications with Prudential. Mot.

24   at 6, 10 (arguing that "if the 70% figure holds, the majority do not have" ██████████). This is

25   _____

26   [2] Although Dr. Shafiq was not permitted to take screenshots or recordings reflecting what he saw
     at the database inspection, defense counsel did surreptitiously take screenshots during the

27   inspection. If the authenticity of those screenshots were established and proper foundation could
     be laid, they would confirm that Dr. Shafiq's description is accurate. *See e.g.*, Gliozzo Decl. Ex. 2

28   (AP0001081) █████████████████████████████████.

1  demonstrably false and distorts the record, Dr. Shafiq's report, and his deposition testimony.

2      Not only is all the event data represented in the session replay for each certificate, but there

3  is no dispute that ActiveProspect created an event log like ████████████ *for every single*

4  *certificate*. During each user's session, ActiveProspect collected event data (*i.e.*, the keystrokes and

5  clicks of a class member filling out the webform) in a JSON or javascript object format. Shafiq Rpt.

6  ¶ 30. ActiveProspect acknowledges █████████████████████████████████████████

7  ████████████████████████████████████████████████████████████████

8  ███████████████████████████████████████████ Dkt. 93-29, Wolfe

9  Decl. ¶¶ 24, 29; Shafiq Rpt. ¶¶ 82-92; Ex. 1 (Shafiq Dep.) at 141:2-6 ███████████

10  ████████████████████████████████████████████████████████████████

11  ████████████████████████████████████████████████████████████████

12  ██████████████████████████████████████ Shafiq Dep. at 264:13-

13  266:10; Dkt. 122-5, Mot. Ex. D (AP0000866); Mot. at 6 n.2 (acknowledging change in June 2022).

14  Because it was never in doubt that Defendants ████████████████████████████████

15  ████ Dr. Shafiq did not conduct a "sampling" of the files during his inspection in the way

16  Defendants suggest. Ex. 1 (Shafiq Dep.) at 268:15-269:8.[3] Thus, the fact that Dr. Shafiq viewed

17  seven certificates that did not have ████████████████ in no way suggests that the event data

18  was not collected and saved for 70% of TrustedForm certificates.

19      To be clear, Dr. Shafiq's opinion that ActiveProspect collected event data for all

20  TrustedForm certificates hold for the entire class period, not just when ActiveProspect began

21  ████████████████████████. None of the deposition excerpts Defendants cite suggest that

22  Dr. Shafiq "attempted to shift his position" during his deposition. Mot. at 7. Defendants identified

23  an ambiguity in Dr. Shafiq's report at his deposition, because he refers to the event data using the

24  ████████████ name, but some certificates in the class period were created before ActiveProspect

25  ████████████████████████. That ████████ is one file—but not the only

26  one—that reflects the full set of "events" recorded for each session is consistent with what Dr. Shafiq

27  ───────────────────
28  [3] Defendants' suggestion that 70% of all certificates lack ████████████████ is also
    misleading because, according to Defendants' own files, 20,906 of 42,592, or 49% of the
    certificate files in the class period were created before June 9, 2022. Gliozzo Decl. ¶ 3.

1    testified during his deposition, where he repeatedly clarified that his opinions are not limited to

2    certificates with a separately saved ███████████████; rather it is his opinion that event data for every

3    certificate is collected in a format that is accessible to Defendants. Ex. 1 (Shafiq Dep.) at 130:15-

4    131:11 ████████████████████████████████████████████████████████████████

5    ███████████████████████████████████████████████████████████████; *id*. at 156:18-

6    158:12 ████████████████████████████████████████████████████████████████████████

7    ███████████████████████████████████████████; *id*. at 266:1-7 ████████████

8    ████████████████████████████████████████████████████████████████████████

9    ████████████████████████████████████████.

10    This data *must* be included in Defendants' files in some form, because it is used to create

11    the session replay that is a part of every certificate. *Id*. at 267:4-18 ████████████████

12    ██████████████████████████████████████. Subsequent inspections of Defendants' files

13    confirmed that ████████████████████████████████████████████████████████

14    ████████████████████████████████████████████████████████████████████████

15    ████████████████████. Gliozzo Decl. Ex. 3 (March 19, 2025 Merits Expert Report of Zubair

16    Shafiq) ¶ 94. ███████████████████████████████████████████████████████████

17    ████████████████████.[4] *Id*. In other words, ActiveProspect always collected and saved the

18    event log data in its files, just as Dr. Shafiq described, but not always under the same file name.

19    In sum, Defendants' accusations of cherry-picking are not supported by the record.

20    **2.    Dr. Shafiq's Opinion 3 That ActiveProspect "Can Use" The Data It Intercepts For Its Own Purposes is Reliable.**

21    Dr. Shafiq's third opinion that ActiveProspect can use the data it gathers from TrustedForm

22    is relevant to the CIPA inquiry and is reliable because it is based on supporting evidence as well as

23    Dr. Shafiq's experience. In Opinion 3, he describes that ███████████████████████████

24    ████████████████████████████████████████████████████████████████████████

---

25    [4] Defendants also point out that Dr. Shafiq did not perfectly recall the number of certificates that
26    did or did not have ███████████, but that is no basis to exclude his opinions. Mot. at
    7. An expert "deposition is not a memory test." *Hsingching Hsu v. Puma Biotechnology, Inc.*,
27    2018 WL 3078589, at *9 (C.D. Cal. June 20, 2018); *see also Kamradt v. Esurance Ins. Co.*, 2024
    WL 5356886, at *5 (W.D. Wash. Nov. 1, 2024) (admonishing defendant's "'gotcha' memory test"
28    during expert deposition). This is particularly true here, where Dr. Shafiq was not allowed to
    create any screenshots or recordings that would have shown all the contents of each of the
    approximately ten certificates he reviewed during the inspection.

1

2

3             Shafiq Rpt. ¶¶ 86, 89, 93-96, 104.

4 In addition, Dr. Shafiq explains that

5                                                                                       5

6             *Id.* ¶¶ 94-95. He states

7 that "[b]ased on my experience, the amount of effort needed to complete these tasks is trivial." *Id.*

8 Dr. Shafiq also explains how—contrary to ActiveProspect and its expert's assertions—

9 ActiveProspect can

10             *See id.* ¶¶ 105-07.

11        Defendants' arguments for why this opinion should be excluded lack merit. First,

12 Defendants argue that Dr. Shafiq addressed the wrong question because he "does not opine that

13 ActiveProspect has the *existing* capability to use TrustedForm data for its own purposes, which is

14 the relevant inquiry under § 631." Mot. at 8 (emphasis in original). The parties dispute over the

15 parameters of the "capability to use" test is ultimately for the Court to decide and is no reason to

16 exclude Dr. Shafiq's testimony. *Cf. Hoctor v. Kittitas Cnty.*, 2021 WL 6139625, at *3 (E.D. Wash.

17 Oct. 19, 2021) (whether expert applied the correct legal standard irrelevant when "not being

18 proffered to testify about the law").

19        Next, Defendants insist that this opinion describing three ways ActiveProspect could use

20 TrustedForm data by

21

22                   should be excluded as based only on Dr. Shafiq's speculation or *ipse dixit*,

23 because Dr. Shafiq did not actually                    Mot. at 9-

24 11. But the "Supreme Court has distinguished between cases where expert testimony will rest upon

25 scientific foundations and in other cases where expert testimony is based on personal knowledge or

26 experience." *Victorino v. FCA US LLC*, 2018 WL 2551192, at *4 (S.D. Cal. June 4, 2018) (citing

27 ─────────────

28    5

*Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999)). This is the latter type of case. As such, criticism that Dr. Shafiq did not test his methods is a question of weight. *Cf. In re Pac. Fertility Ctr. Litig.*, 2021 WL 1054374, at *4 (N.D. Cal. Mar. 19, 2021) (absence of independent root cause testing went to credibility); *Maldonado v. Apple, Inc*, 2021 WL 1947512, at *11 (N.D. Cal. May 14, 2021) (lack of testing was not grounds for exclusion).

An expert's testimony based on experience is sufficiently reliable when he articulates how his experience provides a sufficient basis for his opinions. *See United States v. Kelly*, 2023 WL 4032011, at *2 (N.D. Cal. June 14, 2023). Here, Dr. Shafiq explains how his knowledge and experience applied to the evidence support his opinions that the above tasks could be easily completed. Regarding ███████████████████████████████████████████ Dr. Shafiq explained, ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ Ex. 1 (Shafiq Dep.) at 125:3-6; *id.* at 126:1-23 ██████████████████████████ ██████████████████████████████████████████████████████████████. Regarding ██████████████████████████████████████████████████ ████████████████████████████████████████████████████████ *Id.* at 138:4-139:5; 139:6-141:18 ██████████████████████ █████████████[6]██████████████████████████████████████ *Id.* at 136:3-5 ████████████████████████████████████ ████████████████████████████████. Finally, regarding the creation of an index, Dr. Shafiq explained: ██████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████ *Id.* at 230:16-25. While Defendants are free to disagree that these tasks are straightforward, it merely goes to the weight of his testimony. *JH Kelly, LLC v. AECOM Tech. Servs., Inc.*, 605 F. Supp. 3d 1295, 1318 (N.D. Cal. 2022) (allegedly flawed conclusions "plainly bear on the weight of his testimony, not its admissibility").

---

[6] Defendants also rehash their arguments about ████████████████, which should be rejected for the reasons stated above. *Supra*, IV.B.1, & n.3.

In sum, Dr. Shafiq's Opinion 3 that ActiveProspect can readily use the information it collects through TrustedForm is permissibly based on his examination of how ActiveProspect stores the data, combined with his personal knowledge, experience, and expertise. *See Fed. Trade Comm'n v. Qualcomm Inc.*, 2018 WL 6460573, at *2 (N.D. Cal. Dec. 10, 2018) (holding an expert "may rely upon his own knowledge, experience, training and education to form opinions . . . .").

### 3. Opinion 4 That TrustedForm "Analyzes the Substance of the Form Input Data" is Both Relevant and Reliable.

#### a. Dr. Shafiq's Fourth Opinion is Relevant to the "Read or Attempts to Read" Standard

Defendants insist that Opinion 4—ActiveProspect "analyzes the substance of the form input data"—is irrelevant because it does not address "attempt[ing] to interpret the substantive meaning of Plaintiffs' communications." Mot. at 12. Not so. Dr. Shafiq defines "the form input data" to mean "the information that users input into Prudential's webform" like their name, medical history, contact information, and more. Shafiq Rpt. ¶ 13a. In other words, "form input data" is the substantive contents of the communications sent to Prudential on its webform. *See Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1092–93 (N.D. Cal. 2022) (Breyer, J.) (information such as a person's name and address is "contents when it is part of the substance of the message conveyed to the recipient"). As such, Dr. Shafiq's Opinion 4 does "logically advance[] a material aspect of the proposing party's case." *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995).[7]

#### b. Dr. Shafiq's Script Does Reliably Translate What Data TrustedForm Collects

Defendants next argue that Opinion 4 is unreliable because the program Dr. Shafiq used to analyze how TrustedForm transmits information operates in a completely different manner from TrustedForm. Mot. at 12. Setting aside that this again goes to weight, the assertion that "Dr. Shafiq created a program he called the 'Translate TrustedForm Python Script' to collect his keystrokes and mouse clicks, decode those collected events, and then print the decoded events in a special format"

---

[7] Defendants appear to suggest—without supporting authority—that there is some legal distinction between Dr. Shafiq's description of the "TrustedForm source code" performing this analysis, as opposed to ActiveProspect. Mot. at 12. But ActiveProspect is a corporation that acts through its software—a point Defendants seemingly acknowledge in the same sentence of their brief, describing "the only relevant question" as whether "ActiveProspect *or TrustedForm* ever attempt to interpret the substantive meaning of Plaintiffs' communications?" *See id.* (emphasis added).

1    (Mot. at 12), badly misunderstands the work Dr. Shafiq performed for his fourth opinion.

2         In Opinion 1, Dr. Shafiq describes the various types of network transmissions sent to

3    ActiveProspect from the user's browser by TrustedForm during a user's session on the webform.

4    Shafiq Rpt. ¶¶ 14-55. In his forensic testing, ██████████████████████████████████████

5    ██████████████████████████████████████████████████████████████████████████████████

6    ██████████████████████████████████████████████████████████████████████████████████

7    ██████████████████    Ex. 1 (Shafiq Dep.) at 22:9-23:24. ████████████████████

8    ██████████████████████████████████████████████████████████████████████████████████

9    ████████████████████████████████████████████    *Id.* at 19:17-20:4.

10        Contrary to Defendants' assertions, the "Translate TrustedForm Python Script" he wrote to

11   produce the "Translated Events Payload" document does nothing to manipulate the event data sent

12   to ActiveProspect from his browser; rather it "was obtained by simply decoding the [transmissions]

13   sent by TrustedForm's source code to TrustedForm's server during my testing on

14   term.prudential.com." Shafiq Rpt. ¶ 117. More specifically, Dr. Shafiq explained at his deposition

15   that his script does three things: ████████████████████████████████████████████████

16   ██████████████████████████████████████████████████████████████████████████████████

17   ██████████████████████████████████████████████████████████████████████████████████

18   ████████████████████████    Ex. 1 (Shafiq Dep.) at 27:3-29:12. ActiveProspect

19   acknowledges that, ████████████████████████████████████████████████████████████████

20   ██████████████████████████████████████████████████████████████████████████████████

21   Wolfe Decl. ¶ 24. In fact, ActiveProspect's own files show the same data is collected. *See* Shafiq

22   Rpt. ¶ 118 ████████████████████████████████████████████████████████████████████████

23   ██████████████████████████████████████████████████.

24        Thus, Dr. Shafiq's "Translated Events Payload" document is reliable because it shows

25   precisely what ActiveProspect intercepted. Although Defendants present screenshots claiming they

26   show that "what Dr. Shafiq created looks nothing like what ActiveProspect receives from the

27   TrustedForm software" (Mot. at 13), there is nothing nefarious going on. The figures in Defendants'

28   brief simply reflect the difference between ████████████████████████    *See* Shafiq Rpt.

1    ¶ 84 ("I decoded [the Wolfe] example using the 'Translate TrustedForm Python Script.' The decoded

2    'event data' aligns with the POST request data intercepted by TrustedForm in real time, described

3    in Section IV (Translated Events Payload)."). As Dr. Shafiq explained, ██████████████████████

4    ████████████████████████████████████████████████████████████████████████████████

5    ████████████████████████████████████████████████████████████████████████████████

6    ████████████████████████████████ Ex. 1 (Shafiq Dep.) at 75:21-76:19. Dr. Shafiq openly

7    acknowledges that this data is at certain times encoded, but his report explains that the decoded

8    versions "necessarily show what TrustedForm's client-side source code intercepts before any

9    encoding or encryption is employed by TrustedForm's client-side source code and while the user

10   form input data is 'in transit' to TrustedForm's server." Shafiq Rpt. ¶ 115. Notably, Defendants do

11   not point to any substantive differences between what the Translated Events Payload includes and

12   what ActiveProspect intercepts, because there are none.

13         The Court should not exclude Opinion 4.

14         **4.    Defendants Provide No Basis to Exclude Dr. Shafiq's Opinions 1 and 2.**

15             **a.    Opinion 1 is Not a Legal Conclusion and is Helpful**

16         Defendants next challenge Dr. Shafiq's first opinion describing how TrustedForm worked

17   on the Prudential website, arguing it should be excluded for two reasons: (1) Dr. Shafiq's description

18   that the software "intercepted in real time" class member's communications on the webform is a

19   legal conclusion, and (2) the opinion is not helpful because it describes undisputed facts about how

20   the software functions. Mot. at 13-15. Neither argument has merit.

21         In Opinion 1, Dr. Shafiq explains that TrustedForm uses "event listeners" to capture all of

22   the user's interactions with the webform, where each mouse click and keystroke is an "event" that

23   is captured contemporaneously as the event occurs. Shafiq Rpt. ¶¶ 30-37, 54. The data that

24   ActiveProspect captured contains the question asked and the answer provided or selected by the

25   user. *Id.* ¶¶ 40-41. These events and other data are used to "create a video recording of a user

26   responding to each question posed by the webform on Prudential's website" called a "session

27   replay." *Id.* ¶ 49. Dr. Shafiq also explains that TrustedForm's operation on the webform aligns with

28   ActiveProspect's descriptions of how TrustedForm is designed to work. *Id.* ¶¶ 17-18. Based on this,

1   he concludes that "Prudential and Assurance IQ installed ActiveProspect's source code on its

2   website to intercept in real time data that users input into Prudential's webform (e.g., name, email

3   address, phone number, zip code, gender, marital status, date of birth, height, weight, medical

4   history, medication status) and sent it to ActiveProspect." *Id.* ¶ 13a.

5       This is not an improper legal conclusion. "An opinion is not objectionable just because it

6   embraces an ultimate issue." *Karla Terraza v. Safeway Inc.*, 2019 WL 1059688, at *3 (N.D. Cal.

7   Mar. 6, 2019) (citing Fed. R. Evid. 704(a)). An expert can "employ[] phrases that also appear in the

8   elements" of the statute where they do not have "specialized legal significance apart from common

9   parlance[.]" *United States v. Diaz*, 876 F.3d 1194, 1199 (9th Cir. 2017) (quotation marks and citation

10   omitted); *Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 318 (6th Cir. 2019) (an expert

11   states a legal conclusion "only when the witness explicitly testifies, in 'specialized' legal

12   terminology, that a defendant violated (or did not violate) the law.") (emphasis and citation omitted).

13   Dr. Shafiq does not affirmatively opine that Defendants have violated CIPA. That Plaintiffs use the

14   term "real time" in their complaint does not mean it has specialized legal meaning. Dr. Shafiq

15   explained in an earlier deposition that "interception" has a technical meaning used by computer

16   scientists, which he uses in his report. *See, e.g.*, Gliozzo Decl. Ex. 4, August 30, 2024 Shafiq Dep.

17   at 124:4-16 ████████████████████████████████████████

18   ████████████████████████████████████████████████████

19   ████████████████████; *id.* at 119:12-14 ████████████████

20   ████████████████████████████████████████████████. No

21   form of "intercept" or "real time" appear in section 631 and Dr. Shafiq's opinion that ActiveProspect

22   "intercepted" the data "in real time" describes what happened to class members' communications

23   intended for Prudential, and when. The phrase "intercept in real time" is "not so specialized as to

24   render the expert's testimony inadmissible, especially since there are only so many ways of

25   conveying, in plain language," the relevant concept. *Diaz*, 876 F.3d at 1198 (citing *United States v.*

26   *McIver*, 470 F.3d 550, 560, 562 (4th Cir. 2006)).

27       Nor is Dr. Shafiq's usage of the term "intercept in real time" a legal conclusion simply

28   because it tends to support Plaintiffs' position that TrustedForm violates section 631. Mot. at 14. An

expert can "give the [fact finder] all the information from which it can draw inferences as to the ultimate issue." *United States v. Northrop Grumman Corp.*, 2003 WL 27366881, at *13 (C.D. Cal. Jan. 6, 2003) (citation omitted); *see Grundfor v. Bouffard*, 2017 WL 10541445, at *3 (C.D. Cal. Aug. 7, 2017) (an expert's opinion does not become a legal conclusion "merely on the basis that the testimony may support an inference relevant to the ultimate legal issues"); *Leeds LP v. United States*, 2010 WL 3911429, at *2 (S.D. Cal. Oct. 5, 2010) (similar).

Defendants also suggest that Dr. Shafiq's analysis is not helpful because the fact that Prudential installed TrustedForm and ActiveProspect stores TrustedForm data is undisputed. Mot. at 14-15. But this case turns on the precise workings of TrustedForm, and Dr. Shafiq's analysis is helpful to the Court and jury in explaining how it works. *See In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. 334, 364 (N.D. Cal. 2018) (expert's testimony was useful to the court and jury in understanding the defendant and third party's "technical data"). Defendants do not render that helpful explanation inadmissible simply by conceding that Dr. Shafiq accurately describes the technical details. *See e.g.* Mot. at 13-14 ("The technical operation of the software (e.g., its use of event listeners and encrypted POST requests) is also undisputed"). Further, Opinion 1 includes a description of his forensic testing, and Defendants *do* dispute in their motion that his record of the event transmissions reflects the same data ActiveProspect receives. Mot. at 12-13.

### b.    Opinion 2 Provides Useful Context

Finally, Defendants identify no real basis to exclude Opinion 2, that "data in possession of Prudential, Assurance IQ, and ActiveProspect can be used to identify natural persons" in the Class. They argue only that the opinion is irrelevant because it is undisputed. Mot. at 15. Opinion 2 was first offered in support of class certification, but Dr. Shafiq's report incorporates all his opinions in this case for the sake of completeness. Shafiq Rpt. ¶ 8. There is no reason to exclude the opinion at summary judgment, as it still provides context for the functionality of the software as a whole. *See In re Arris Cable*, 327 F.R.D. at 364.

### V.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Exclude the Expert Report of Dr. Shafiq should be denied.

1    Dated: March 19, 2025          Respectfully submitted,

2

3                                         **GIRARD SHARP LLP**

                                        */s/    Nina R. Gliozzo*

4                                         Dena C. Sharp (State Bar No. 245869)

                                        dsharp@girardsharp.com

5                                         Simon S. Grille (State Bar No. 294914)

                                        sgrille@girardsharp.com

6                                         Nina R. Gliozzo (State Bar No. 333569)

                                        ngliozzo@girardsharp.com

7                                         Jordan Isern (State Bar No. 343159)

                                        jisern@girardsharp.com

8                                         601 California Street, Suite 1400

9                                         San Francisco, CA 94108

                                        Telephone: (415) 981-4800

10                                         Facsimile: (415) 981-4846

11                                         *Class Counsel*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**<u>CERTIFICATE OF SERVICE</u>**

2    I hereby certify that on March 19, 2025, I electronically filed the foregoing document with

3 the Clerk of the Court using the CM/ECF system, which will automatically send notification of

4 the filing to all counsel of record. I also caused a copy of the under-seal documents to be served

5 via electronic mail on defense counsel.

6             By: _/s/ Nina R. Gliozzo_____

7               Nina R. Gliozzo

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28