# EXHIBIT B

## REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL

# Deposition Transcript

Case Number: 3:22-cv-07465-CRB
Date: January 9, 2025

In the matter of:

# TORRES, et al., v PRUDENTIAL FINANCIAL, INC., et al.

# Nathaniel Polish, Ph.D.

## Highly Confidential

**CERTIFIED COPY**

Reported by:
MARK W. BANTA



Steno
Official Reporters

315 West 9th Street
Suite 807
Los Angeles, CA 90015
concierge@steno.com
(310) 573-8380
NV: Firm #108F

 1  BY MS. GLIOZZO:

 2     Q.   Are you offering the opinion that the only way

 3  ActiveProspect would be capable of using the

 4  user-submitted data would be if they created the ability

 5  to locate a certificate for a particular session in the

 6  way that you describe would be extraordinarily difficult

 7  to accomplish?

 8          MS. DAVIS FISHER:  Objection.  Misstates

 9  Dr. Polish's declaration and misstates his prior

10  testimony.

11          THE WITNESS:  What I've said is that locate --

12  in this section anyway, what I'm saying is that locating

13  a particular certificate for a particular session without

14  the associated URL would be extraordinarily difficult.

15  They would have to create new software, new capability,

16  and that would be extraordinarily difficult, if not

17  practically impossible.  That's what I'm saying.

18  BY MS. GLIOZZO:

19     Q.   Is there anything other than that that

20  ActiveProspect could do that would be developing a

21  technological capability to use the data in some other

22  way than providing the service?

23          MS. DAVIS FISHER:  Objection.  Vague.  And calls

24  for speculation.

25          THE WITNESS:  I mean what usage are you -- it

1  sounds like in your question you're saying that they

2  might have a use besides locating a particular

3  certificate.  That sounds very speculative to me as to

4  what you're asking, so maybe you could narrow it a little

5  bit.

6  BY MS. GLIOZZO:

7      Q.   What I'm trying to understand is you say they're

8  not currently capable, and then when I'm asking you

9  questions about developing the capability to use, the

10 responses you've offered me are specific to developing

11 the technology to locate a particular certificate for a

12 particular session.  What I'm trying to understand is are

13 you saying that that is a necessary first step for any

14 use, that you be able to locate a particular session and

15 a particular URL?

16         MS. DAVIS FISHER:  Objection.  That misstates

17 Dr. Polish's prior testimony and misstates his expert

18 declaration.  And it's vague.

19         THE WITNESS:  Yeah, my understanding from

20 looking at the system and looking at testimony and

21 documentation is that the system is built to provide a

22 particular way to access this information, these events,

23 and that they've gone to great lengths to make sure that

24 there's no really other way to do it.  I can't really

25 speculate about future events.

```
 1            I did try to explore a little bit a few
 2  particular examples like being able to locate a
 3  particular certificate without the URL.  But beyond that,
 4  it's all just rank speculation.
 5  BY MS. GLIOZZO:
 6     Q.   That's helpful.  Thank you.
 7            So I'm going to pull your report back up again.
 8            Looking at opinion 1, your first opinion, I want
 9  to ask about some things that we maybe agree on.
10            Do you agree with me that on the webform during
11  the class period ActiveProspect did collect
12  user-submitted data through the TrustedForm software?
13            MS. DAVIS FISHER:  Objection.  Calls for a legal
14  conclusion and vague.  And assumes facts not in evidence.
15            THE WITNESS:  So I -- as a first matter, I don't
16  agree, and what I'll say is that TrustedForm software is
17  collecting user event information, batching it, and
18  sending it to TrustedForm servers.  It's not trying to
19  interpret any of the data, any of the events, it's not
20  trying to extract information.  It's just providing event
21  information for key presses and mouse movements and the
22  like and sending those to the TrustedForm servers.
23  BY MS. GLIOZZO:
24     Q.   And how is that data different than
25  user-submitted data?
```

1              MS. DAVIS FISHER:  Objection.  Vague and assumes

2    facts not in evidence.

3              THE WITNESS:  So user -- when the user submits

4    data, they're typing something into a form and sending it

5    to, say, Assurance IQ or Prudential.  That is not what's

6    being sent to TrustedForm.  TrustedForm is getting event

7    information, and it's getting it in a form that's --

8    that's batched and compressed and encrypted, and none of

9    that's accessible on TrustedForm's servers certainly

10   until -- nothing happens with it until the session's done

11   and somebody makes a request for that certificate.

12             So what the -- how the user interacts with the

13   site, the events, that's sent to TrustedForm.  The data

14   that the user is sending as part of a webform to the

15   website owner is a different matter and is not sent to

16   TrustedForm.

17   BY MS. GLIOZZO:

18      Q.   All of the information that a class member typed

19   on the webform during the class period was keystroke by

20   keystroke sent to ActiveProspect's servers through

21   operation of the TrustedForm software.  That's true,

22   isn't it?

23             MS. DAVIS FISHER:  Objection.  Vague and assumes

24   facts not in evidence.  And asked and answered.

25             THE WITNESS:  Yeah, I mean keystrokes and mouse

1  movements are -- are sent, and that's what's stored at

2  the ActiveProspect's TrustedForm server.

3            In order to -- in order to understand that, they

4  would have to do something that they don't do.  They

5  don't analyze them, they don't do anything further with

6  it to get data from it.

7            So for example, if a user was typing something

8  into a form and then hit backspace a few times and then

9  collected themselves, all of those keyboard actions were

10  being -- all of those events were being sent to

11  TrustedForm.  What the website owner gets is the

12  completed field.  So they're getting different things,

13  and it would require different capabilities on

14  TrustedForm's side to see that as user data.

15     Q.   I feel you're going to opinion 2 but I'm only on

16  opinion 1 right now, and my question wasn't about

17  understanding it or reading it.  It was simply about

18  collecting it.  So I'm going to ask it again.

19     A.   Okay.

20     Q.   Isn't it true that on the webform during the

21  class period ActiveProspect did collect user-submitted

22  data through the TrustedForm software?

23            MS. DAVIS FISHER:  Objection.  Calls for legal

24  conclusion.  Vague.  Assumes facts not in evidence and

25  asked and answered.

NATHANIEL POLISH, PH.D.                                        JOB NO. 1334529
JANUARY 09, 2025              Highly Confidential

 1          You may answer, Dr. Polish.

 2          THE WITNESS:  Yeah.  No, they're not collecting

 3  user data.  They're collecting -- they're collecting user

 4  interaction events.  Those are different things.  They're

 5  not collecting the user data.

 6  BY MS. GLIOZZO:

 7     Q.   Do we agree that using data collected from the

 8  webform during the class period through the TrustedForm

 9  software, that ActiveProspect does use that data to

10  provide the TrustedForm service to Prudential and

11  Assurance?  Do we agree on that?

12          MS. DAVIS FISHER:  Objection.  Vague and assumes

13  facts not in evidence.  And outside the scope of

14  Dr. Polish's expert declaration.

15          THE WITNESS:  So TrustedForm collects user

16  events, user interaction -- user website interaction

17  events, and it uses those collected events to create a

18  certificate which is then used for playback if it's been

19  claimed and can be provided to the website owner.  It's

20  not using user data, it's using user interaction events

21  to do that.

22  BY MS. GLIOZZO:

23     Q.   And when we watch the playback, we can see the

24  data that the user submitted on the webform represented

25  in the replay; right?



NATHANIEL  POLISH, PH.D.
JANUARY 09, 2025                    Highly Confidential                    JOB NO. 1334529



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18     Q.    Your opinion that you offer about reading the

19  contents of the communications, you said it's your

20  opinion that ActiveProspect neither reads nor attempts to

21  read; is that right?

22         MS. DAVIS FISHER:  Objection.  Vague.

23  BY MS. GLIOZZO:

24     Q.    Let me pull up the report if we need to.

25     A.    Yeah.

1    Q.    Okay.  Let's pull up Exhibit 162, paragraph

2  5b(ii).  Do you see that?

3    A.    Yeah.

4    Q.    Quote:  I conclude neither TrustedForm nor

5  ActiveProspect reads or attempts to read or to learn the

6  contents or meaning of any information the user inputs.

7  Do you see that?

8    A.    Yes.

9    Q.    We talked about how, in your opinion, because

10  the information is bundled and encoded and encrypted it

11  can't be read; is that right?

12         MS. DAVIS FISHER:  Objection.  Vague and

13  misstates the witness' prior testimony.

14         THE WITNESS:  Yeah, I think what I -- what I

15  said was that TrustedForm doesn't attempt to read or read

16  the contents or meaning, and that I further say, I talked

17  about what some of the difficulties would be if they

18  would be trying to do that.  But my main point here is

19  that they don't do it and they don't have the current

20  capability, current technical capability to do it.

21  BY MS. GLIOZZO:

22    Q.    As it is used in your report, what does it mean

23  to attempt to read the information that the user input on

24  the web forms?  What is an attempt?

25         MS. DAVIS FISHER:  Objection.  Compound and

 1  vague.

 2          THE WITNESS:  So I think where I use "read" or

 3  "attempt to read," what I mean is that it's not even just

 4  that they're not successfully reading it, they're not

 5  trying to read it.  I've seen no code or evidence, and

 6  I've seen, if anything, testimony to the contrary, that

 7  they don't try to read the contents.  They don't try to

 8  put together the events into a piece of content.  So I'm

 9  not even making the -- so I'm trying to not require that

10  they be successful at it.  They don't even try to do it.

11  BY MS. GLIOZZO:

12      Q.  So as you use the word "attempt" in your

13  opinions, attempt means to try.  Is that fair?

14          MS. DAVIS FISHER:  Objection.  Misstates the

15  witness' prior testimony.

16          THE WITNESS:  Yeah, I think what I mean is that

17  TrustedForm doesn't -- doesn't try to put together the

18  meaning of what is -- of what the user is doing.  They're

19  only collecting event information.  So they don't even

20  try to put together the events into content.

21  BY MS. GLIOZZO:

22      Q.  And let me ask you, if the POST requests or the

23  last letter typed in a webform includes everything that

24  was typed before it, if that's true, could that be

25  considered an attempt to understand what was typed into

1  that form field?

2          MS. DAVIS FISHER:  Objection.  Vague.

3  Incomplete hypothetical, and assumes facts not in

4  evidence.

5          THE WITNESS:  No.  I'll just say no and you can

6  ask a follow-up.

7  BY MS. GLIOZZO:

8      Q.   Please tell me why.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

 1  meanings in the contexts of particular cases, and so I

 2  look to particular situations to understand what those

 3  words mean and how to use them.

 4  BY MS. DAVIS FISHER:

 5      Q.   You also testified earlier that ActiveProspect,

 6  you said, does not have the certificate URL; right?

 7      A.   I don't remember the exact context of that.

 8  It's possible.  I don't remember the exact context of the

 9  question.

10

11

12

13

14

15

16

17

18  BY MS. DAVIS FISHER:

19      Q.   You also testified earlier that in certain

20  circumstances it might be the case that some information

21  that would be specific to a particular visit to a

22  particular website might qualify as, quote, content or,

23  quote, data; right?

24          MS. GLIOZZO:  Object to form.

25          THE WITNESS:  Are you talking about in the

 1  context of the court website or the UC Davis websites?

 2  BY MS. DAVIS FISHER:

 3      Q.   Yes.

 4      A.   Yeah, I remember saying something like that.

 5      Q.   Okay.  Does content, as you use that term, mean

 6  the same thing as the contents of what the user types

 7  into a webform?

 8           MS. GLIOZZO:  Object to form.

 9           THE WITNESS:  No.  I was referring there to some

10  particular information about the use of the website.

11  BY MS. DAVIS FISHER:

12      Q.   And does data, as you use that term, mean the

13  same thing as the contents of what a user types into a

14  particular webform?

15      A.   No.  In general --

16           MS. GLIOZZO:  Object to form.

17           THE WITNESS:  No.

18  BY MS. DAVIS FISHER:

19      Q.   You can answer.

20      A.   Yeah.  No, in general, not.

21      Q.   So I guess to put it differently, is "content"

22  or "data," as you used those terms, the same thing as the

23  contents of the user's communications?

24      A.   Are we talking about in the context of the

25  TrustedForm site or in the context of the UC Davis site

1   or something like that?  What's the context here?

2   BY MS. DAVIS FISHER:

3       Q.   I'm just trying to understand, when you use the

4   terms "content" or "data" in the context of the UC Davis

5   and Google Analytics pages, you were talking about the

6   contents of what a user types on a page; right?

7           MS. GLIOZZO:  Object to form.

8           THE WITNESS:  That's right.  I was talking that

9   Google Analytics could be used to provide that

10  information if you set it up that way.

11  BY MS. DAVIS FISHER:

12

13

14

15

16

17

18

19

20

21

22

23

24

25

21    Q.   Dr. Polish, you also testified earlier you think

22  people are "well aware" that they're being surveilled in

23  all kinds of ways, right, just generally?

24          MS. GLIOZZO:  Object to form.

25          THE WITNESS:  Yes.

```
 1  BY MS. DAVIS FISHER:

 2      Q.   Okay.  Would you characterize the use of

 3  TrustedForm as a type of surveil?

 4      A.   No.  I don't think of it as surveillance.  I

 5  think of it as, you know, it's documenting activity.  I

 6  think people -- I think of surveillance as sort of a more

 7  general kind of thing, like having cameras on streets

 8  and, you know, cameras in airports and things like that.

 9          MS. DAVIS FISHER:  No further questions.  I pass

10  the witness back to you, Nina.

11          MS. GLIOZZO:  A few quick follow-ups.

12                          EXAMINATION

13  BY MS. GLIOZZO:

14

15

16

17

18

19

20

21

22

23

24

25
```

NATHANIEL  POLISH, PH.D.                                         JOB NO. 1334529
JANUARY 09, 2025                    Highly Confidential



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    //

1                     CERTIFICATE OF REPORTER

2        I, MARK W. BANTA, a Certified Shorthand Reporter,

3    licensed by the State of California, being empowered to

4    administer oaths remotely pursuant to Section 2093(b) of

5    the Code of Civil Procedure, do hereby certify:

6        That the foregoing proceedings were taken remotely

7    before me at the time and place herein set forth; that

8    any witnesses in the foregoing proceedings, prior to

9    testifying, were placed under oath; that a verbatim

10   record of the proceedings was made by me using machine

11   shorthand and thereafter transcribed under my direction;

12   further, that the foregoing is an accurate transcription

13   thereof.

14       I further certify that I am neither financially

15   interested in the action nor a relative or employee of

16   any attorney or any of the parties.

17       Further, that if the foregoing pertains to the

18   original transcript of a deposition in a Federal Case,

19   before completion of the proceedings, review of the

20   transcript was requested.

21       IN WITNESS WHEREOF, I have this date subscribed my

22   name.

23   DATED:  January 13, 2025

24

25                         MARK W. BANTA, CSR No. 6034